JUDGE CARTER

25 CV 02581

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------X

LINDA A. SETLECH,

                             Plaintiff,                           Case No: _____

        -against-

Interim Special Master August E. Flentje and Special
Master Allison Turkel, in their former capacities as
Administrators of SEPTEMBER 11TH VICTIM
COMPENSATION FUND, an Administrative Agency
of U.S. Department of Justice, and Merrick B. Garland
in his former capacity as U.S. Attorney General,
U.S. Department of Justice,

> U.S. DISTRICT COURT
> FILED
> MAR 2 8 2025
> SOUTHERN DISTRICT OF
> NEW YORK

                           Defendants.

---------------------------------------------------------------------------X

## COMPLAINT WITH NO JURY DEMAND

      NOW COMES LINDA A. SETLECH, Plaintiff, and complains of Interim Special

Master August E. Flentje, hereinafter referred to as ISM Flentje, and Special Master Allison

Turkel, hereinafter referred to as SM Turkel, in their former capacities as Administrators of

Defendant September 11TH Victim Compensation Fund ("VCF"), an Administrative agency of

U.S. Department of Justice ("DOJ"), and Merrick B. Garland, in his former capacity as U.S.

Attorney General, U.S. DOJ, as follows:

## STATEMENT OF FACTS

    1.     Former U.S. Attorney General **Merrick B. Garland** appointed former ISM Flentje

on May 2, 2022 and former SM Turkel on March 10, 2023 as Administrators of Defendant VCF.

1

2.      Prior to Congress establishing Defendant VCF in 2001 to compensate victims from acts of terrorism on 9/11, absolute immunity was extended to all federal employees by Congress pursuant to Federal Employees Liability Reform and Tort Compensation Act of 1988 (FELRTCA), 28 U.S.C. § 2679(b)(1), regardless of whether the conduct was deemed discretionary, see *United States v. Smith,* 499 U.S. 160 (1991), and conferred such immunity by making the Federal Tort Claims Act the exclusive remedy for all common law torts committed by federal employees while acting within the scope of their office or employment, 28 U.S.C. § 2679(b)(1).  However, absolute immunity was not extended or applied to suits against federal employees for violation of the Constitution or federal statutes, but when sued for constitutional torts, federal employees were protected by qualified immunity.  28 U.S.C. § 2679(b)(2). See *Harlow v. Fitzgerald,* 457 U.S. 800, 807 (1982); *Butz v. Economou,* 438 U.S. 478 (1978); *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985).  In the case at bar, absolute and qualified immunity are not relevant because the federal employees referred to herein are former Administrators of Defendant VCF and former Attorney General due to the change in political administrations on January 20, 2025.  Although Congress made no exceptions to absolute or qualified immunity of federal employees, save that of constitutional torts, the Supreme Court's 2022 ruling in *West Virginia v. EPA,*[1] does make an exception under the major questions doctrine that federal agents, servants, and/or employees of administrative agencies must be able to point to 'clear congressional authorization' when they claim the power to make decisions of vast 'economic and political significance''', and former Administrators ISM Flentje and SM Turkel overstepped their authorities and abused their discretion in denying Plaintiff's Claim and alleged

---

[1] *West Virginia v. Environmental Protection Agency,* 597 U.S. 697 (2022); tracking *Moody,* Id,

2

Hearing on appeal by violating Plaintiff's right for inclusion to due process of law absent clear congressional authorization for their denials of Plaintiff's eligibility to victim compensation from acts of terrorism at 1 WTC on 9/11.

3.      On February 9, 2023, ISM Flentje denied Plaintiff's Claim # 0202283 to victim compensation (Ex. A) and deprived Plaintiff the right for inclusion to due process of law[2] and victim compensation by stating:

"The evidence does not establish that you were present at a 9/11 crash site between September 11, 2001 and May 30, 2002.  To be eligible for compensation, individuals must establish that they were present at a 9/11 crash site at the time of, or in the immediate aftermath of, the September 11, 2001 terrorist-related aircraft crashes…"



September 11, 2001[4]   "8:46 a.m. ...American Airlines Flight 11 strikes North Tower [a/k/a 1 WTC] … …"

3.      ISM Flentje overstepped his authority and abused his discretion in denying Plaintiff's Claim for failure to establish tangible proof of presence at the crash site--Floors 93 through 99 at 1 World Trade Center ("WTC") -- when he knew or should have known that office workers at such crash site perished as evidenced by ID of permanent employee (Ex. A-1) (public domain) with name of permanent employer, Marsh.

---

[2] U.S. Const., Amendment V;

[3] The North Tower of New York City's World Trade Center, The History of the World Trade Center 9/11 1973-2001, p. 7; second act of terrorism;

[4] Michael Stallone; Updated September 11, 2024 7:01 am EDT New York City Fox 5 NY.

4.    Plaintiff's 9:00 a.m. arrival as a temporary office worker with ID (Ex. **A-2**) for Port Authority of NY&NJ ("PA"), Law Dept., 1 WTC, Fl. 66--27 floors below crash site--was delayed due to voter participation in New York State primary[5] at Brooklyn, NY election site, but Plaintiff established presence in the Exposure Zone (Ex. **B**) at Broadway and Fulton St., New York, NY.

5.    ISM Flentje overstepped his authority and abused his discretion by denying Plaintiff's Claim to victim compensation based on Plaintiff's absence at such disaster crash site in violation of Plaintiff's right to due process of law, and failed to comport with the intent of Congress to provide victim compensation to responders and survivors from acts of terrorism at WTC on 9/11.

6.    Plaintiff sues Defendants pursuant to U.S. Constitution, Amendment V, 28 U.S.C. §1331, for ISM Flentje's denial of Claim and SM Turkel's denial of alleged Hearing on appeal which fraudulently functioned as a deposition, artificially exhausted all administrative remedies, and for arbitrary and capricious acts to frustrate Plaintiff's challenges to Defendants' denials for eligibility to victim compensation from acts of terrorism at WTC on 9/11.

7.    Plaintiff seeks Three Million Dollars for Defendants' bad faith actions to deceive, delay, deprive and defraud victim compensation to Plaintiff from acts of terrorism at WTC on 9/11.

**PARTIES**

8.    Plaintiff, Linda A. Setlech, is a United States citizen[6] domiciled in Kings County, Brooklyn, New York, and at all times herein mentioned has been and continues to be a resident

---

[5]https://www.nytimes.com/2001/09/14/us/after-attacks-election-primary-rescheduled-for-sept-25-with-runoff-if-necessary.html

[6] 9th Generation, Daughter of the American Revolution.

4

of 305 89th Street, #D5, Brooklyn, New York 11209, and files this Complaint in her capacity as a Pro Se litigant.

9.    The addresses of Defendant VCF and U.S. Attorney General, U.S. Dept. of Justice, are as follows:

> September 11th Victim Compensation Fund
> Claims Processing Center
> 1220 L Street NW Suite 100-Box 408
> Washington, DC 20005-4018
> VCF Helpline 1-855-885-1555
>
> Office of U.S. Attorney General
> U.S. Department of Justice
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530-0001
> DOJ Main Switchboard: 202-514-2000

## JURISDICTION AND VENUE

10.    U.S. District Court, Southern District of New York, has exclusive subject matter jurisdiction based upon the following:

- Re: VCF:  Title IV of Public Law 107-42 (Sept. 22, 2001), Air Transportation Safety and System Stabilization Act, 49 U.S.C. § 40101; as periodically amended (Nov. 19, 2001); (Jan. 2, 2011); (Dec. 18, 2015); and (July 29, 2019);

- U.S. Constitution, Amdt. V, 28 U.S. Code § 1331;

- Administrative Procedure Act ("APA") updated 9/16/24[7], 28 U.S.C. § 2401(a); and

- Federal Tort Claims Acts, 28 U.S.C. § 2675(a).

---

[7] https://crsreports.congess.gov/product/pdf/LSB/LSB10558

11.     This District Court is the proper Venue because a substantial part of the events giving rise to the claims herein occurred at WTC in New York County, Borough of Manhattan, City and State of New York.  28 U.S.C. § 1391(b)(2), (e)(1) 28 U.S.C. § 1391(b)(2), (e)(1).

## FEDERAL QUESTIONS

12.     Was it the intent of Congress that Administrators of federal agencies discriminate between man-made disasters, i.e., terrorism, and natural disasters for eligibility to victim compensation?

13.     Was it the intent of Congress that Administrators of Defendant VCF discriminate between permanent and temporary employees for eligibility to victim compensation as evidenced by the exclusion of references to temporary workers as employees from its Claim Form, but prejudicially includes firemen, police officers, rescue workers, sanitation workers, construction workers, first responders, visitors, utility workers, contract workers, and volunteers? Claim Form, pp. 6-9, ¶¶9-12.

14.     In theory, the Court's review of agency denials is the Administrative Procedure Act ("APA") 28 U.S.C. § 2401(a).  In practice, 28 U.S.C. §1331 bestows upon the Federal District Court original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

15.     ISM Flentje erroneously overstepped his authority and abused his discretion when he denied Plaintiff's Claim on February 9, 2023 because Plaintiff was present in the Exposure Zone at Broadway and Fulton Street when 2 WTC collapsed at 9:59 a.m.[8], and was harmed by walking in

---

[8] The North Tower of New York City's World Trade Center, The History of the World Trade Center 9/11 1973-2001, p. 14;

the contaminated environment from Lower Manhattan, across Brooklyn Bridge, through Brooklyn, and exposed for hours to toxic air[9] without a mask, exposed for hours to sunlight and 80° temperature without a hat or sunglasses, arrived at Bay Ridge residence approximately 4:00 p.m., and drove the next week past WTC debris in Fresh Kills Landfill, Staten Island, NY, to PA's satellite office in Newark, NJ, until termination in mid-October because of illness, without unemployment compensation due to temporary employment status.  Plaintiff was hired in 2000 with an expiration date of 12/31/2001 per ID card, without prior disclosure of 1 WTC's first act of terrorism on February 26, 1993.

16.    ISM Flentje demanded tangible proof of Plaintiff's presence at the crash site and/or Exposure Zone, but rejected proofs submitted because it was more expedient for him to deny and exclude Plaintiff's Claim for victim compensation rather than admit Plaintiff had a right to due process of law and was eligible for victim compensation from acts of terrorism at WTC on 9/11.

17.    In bad faith, on October 18, 2023, SM Turkel scheduled Plaintiff's "Hearing" which was falsely presented to Plaintiff as a Hearing on Appeal of ISM Flentje's denial of Claim, but functioned in form and substance as a deposition and, without prior notice or Court Order, demanded Plaintiff surrender her cell phone to prevent recordation.

18.    In bad faith, SM Turkel failed to offer remote testimonies of three witnesses located in New Jersey and North Carolina to enlarge Plaintiff's tangible proof of presence in Exposure Zone in lieu of Affidavits (Ex. **C**), two of which SM Turkel received, but the third affidavit was reportedly damaged without written notice or request to Plaintiff for correction,

---

[9] New York Post, Thursday, January 30, 2025, p.27, "9/11 air probe stall 'stinks'", NYC Dept. of Investigation Commissioner Strauber testified that staffing issue is preventing it from investigating what past administrations knew about 9/11 air toxins at … Ground Zero."

7

and such bad faith acts deprived Plaintiff the right to due process of law and victim compensation from acts of terrorism at WTC on 9/11.

19.    In bad faith, SM Turkel maliciously scheduled a deposition on October 18, 2023, to fraudulently function as a Hearing on appeal of ISM Flentje's denial of Plaintiff's Claim, the purpose of which was to deprive Plaintiff a true Hearing on Appeal to reverse ISM Flentje's denial of Claim in violation of Plaintiff's right to due process of law and victim compensation from acts of terrorism at WTC on 9/11 as statutorily provided.

20.    In violation of F.R.C.P. 30(b)(5)(A)(i)–(iii) and (5) *Officer's Duties,* SM Turkel prejudicially weaponized vague and abstract Transcript of October 18, 2023 Hearing by unknown "3rd Party Information, Job No.: 132731" as evidenced by excerpts (Ex. **D**) Cover Top right, p. 1; Top right, p. 2, Bottom right p. 3; pp. 4-7; Final pp. 54-55, and unnumbered page with time of conclusion.  In bad faith, SM Turkel maliciously ordered that participants' names and contact information be redacted, that such Transcript be uncertified, unsigned, undated and unnotarized by the court reporter and omitted an Errata Sheet for correction of errors and omissions, thereby ensuring the Transcript was of no force and effect and did not enlarge Plaintiff's testimony or remote testimonies of others as proof of Plaintiff's presence in the Exposure Zone, all of which denied and deprived Plaintiff the right for inclusion to due process of law and victim compensation from acts of terrorism at WTC on 9/11.

21.    In bad faith, SM Turkel stated in November 5, 2024 (Ex. **E**) via email, denying Hearing, "…You then appealed and a hearing was held…".  On the contrary, a Deposition, which is a discovery device, was fraudulently held on October 18, 2023--not a Hearing on Appeal of ISM Flentje's denial of Claim--the purpose of which was to record SM Turkel's denial of alleged Hearing to concur with ISM Flentje's denial of Plaintiff's Claim, and exhaust all of

8

Plaintiff's administrative remedies. SM Turkel knew or should have known such proceeding was not a Hearing on Appeal of ISM Flentje's denial, but functioned as a deposition to exploit Plaintiff's right to due process of law and victim compensation from acts of terrorism at WTC on 9/11.

22.    Pursuant to F.R.C.P. 30(b)(5)(A)(i)–(iii) and (5), Plaintiff seeks sanctions against SM Turkel for arbitrary and capricious acts to interfere in legal proceedings, to falsely schedule a deposition to function as a Hearing on Appeal, and to exclude Plaintiff from the right to due process of law and victim compensation from acts of terrorism at WTC on 9/11.

23.    In bad faith, ISM Flentje denied Plaintiff's Claim on February 9, 2023, in spite of health conditions certified in 2022 as 9/11-related by World Trade Center Health Program ("WTCHP"), and a total of four health conditions certified as 9/11- related on 4/23/2024 (Ex. **F**). ISM Flentje's arbitrary and capricious denial of Plaintiff's Claim deprived Plaintiff the right to due process of law and victim compensation from acts of terrorism at WTC on 9/11.

24.    Pursuant to GAO July 2014 Report to the Ranking Member, Committee on Homeland Security and Governmental Affairs, U.S. Senate, World Trade Center Health Program, "Approach Used to Add Cancers to List of Covered Conditions Was Reasonable, But Could Be Improved". GAO did the study because: "WTCHP provides health benefits to eligible responders and survivors of the September 11, 2001 attacks. In September 2012, WTCHP added 60 types of cancer to the list of covered conditions. The VCF—which provides financial compensation to eligible individuals—uses the WTCHP list as a basis for eligibility."

25.    Clearly, ISM Flentje rejected WTCHP's certification of Plaintiff's health conditions as 9/11-related as eligibility to victim compensation, and overstepped his authority and abused his discretion by denying Plaintiff's Claim to victim compensation and failed to comport with the intent

9

of Congress to provide victim compensation to responders and survivors from acts of terrorism at WTC on 9/11.

26.     In bad faith, former SM Turkel conspired with ISM Flentje to postpone Plaintiff's time to file the within Complaint by unreasonably delaying decision of denial of Plaintiff's October 18, 2023 "Hearing" until November 5, 2024, the date of National elections, when former SM Turkel knew or should have known that she and ISM Flentje as former Administrators of Defendant VCF would not be available to respond to the within Complaint in their official capacities due to the change in political administrations by the date of filing Plaintiff's Complaint, to wit, after January 20, 2025, and with malice and intentional harm, delayed denial of Hearing to deprive Plaintiff's right to due process of law and victim compensation from acts of terrorism at WTC on 9/11.

27.     In bad faith, ISM Flentje and SM Turkel arbitrarily and capriciously denied and deprived Plaintiff victim compensation for physical harm, economic loss (lost wages) and non-economic loss (pain and suffering) from acts of terrorism at 1 WTC on 9/11 as statutorily provided in violation of Plaintiff's right to due process.

28.     Arguably, it was not the intent of Congress that Federal agencies employ inequitable and discriminate strategies for economic relief from disasters.  ISM Flentje demanded and SM Turkel concurred that tangible proof of presence at the crash site and/or exposure zone from acts of terrorism on 9/11 at WTC was necessary for Plaintiff's eligibility to victim compensation, including number of hours present per day (VCF Claim Form, p.9, ¶14), while victims of natural disasters, hurricanes, tornadoes, floods and fires, are not

required by FEMA or HUD to provide proof of presence at natural disaster sites with number of hours present per day for eligibility to economic relief.

29.     Defendant VCF's Program Statistics[10] (Ex. **G**) as of December 31, 2024, confirmed 16,253 procedural denials and 1,916 substantive denials, but failed to differentiate between the two categories, failed to identify the number of temporary and permanent employees whose Claims were procedurally and substantively denied, and failed to provide reasons for denials, such as failure to establish proof of presence at the crash site and/or exposure zone, in violation of Plaintiff's right to due process of law and victim compensation from acts of terrorism at WTC on 9/11.

30.     ISM Flentje and SM Turkel targeted discrimination of Plaintiff, a temporary employee, with harsher demands for eligibility to victim compensation from terrorism, such as proof of presence at crash site and/or exposure zone, together with number of hours per day in the immediate vicinity (Claim Form, p. 9, ¶14), then FEMA or HUD's demand of claimants seeking economic relief from natural disasters--hurricanes, floods, tornadoes and fires.

31.     In bad faith, Special Master Turkel knew or should have known that by arbitrarily and capriciously concurring with Interim Special Master Flentje's denial of Plaintiff's Claim to victim compensation without provision for a bona fide Hearing on Appeal, she prejudicially deprived, denied and excluded Plaintiff's right to due process of law for physical harm, economic loss (lost wages) and non-economic loss (pain and suffering) from acts of terrorism at 1 WTC on 9/11 as statutorily provided in violation of Plaintiff's right to due process.

---

[10] https://www.vcf.gov/vcf/sites/files/media/document/2025-01/VCFMonthlyReportDecember2024

32.    In bad faith, former SM Turkel conspired with ISM Flentje to postpone Plaintiff's time to file the within Complaint by unreasonably delaying decision of Plaintiff's October 18, 2023 alleged Hearing on appeal of ISM Flentje's denial of Plaintiff's Claim, until November 5, 2024, when SM Turkel knew or should have known that she and ISM Flentje would not be available to respond to the within Complaint in their official capacities due to the change in political administrations by the date Plaintiff's Complaint was filed, to wit, after January 20, 2025, and with malice and intentional harm, conspired to interfere with legal proceedings to deprive Plaintiff the right to due process of law and victim compensation from acts of terrorism at WTC on 9/11.

33.    It was not the intent of Congress that administrators of Federal agencies employ inequitable and discriminate strategies for victim compensation, that Plaintiff establish tangible proof of presence at a man-made disaster crash site and/or exposure zone, including the number of hours present per day (Claim Form, p.9, ¶14), while victims of natural disasters, hurricanes, tornadoes, floods and fires, are not required by FEMA or HUD to provide proof of presence at the disaster sites with number of hours per day present for eligibility to economic relief.

## BACKGROUND
### Factual Background

37.    On September 22, 2001, eleven days following multiple acts of terrorism on 9/11 at 1 WTC and 2 WTC, New York, NY, the Pentagon, Washington, D.C., and rural Shanksville, PA (trajectory U.S. Capitol), Congress hastily enacted the Air Transportation Safety and System Stabilization Act which established Defendant VCF as an administrative agency of the U.S. Dept. of Justice with Special Masters to serve as Administrators appointed by U.S. Attorney General. The purpose of Administrators of Defendant VCF was to compensate persons injured

12

or killed on 9/11, with the original program concluding in 2003 and periodic amendments to correct errors and omissions.

38.    Defendant VCF is a fundamentally flawed agency of the U.S. Dept. of Justice because its structure is loosely bifurcated with WTCHP to certify health conditions as 9/11-related prior to Defendant VCF's determination of a claimant's eligibility for victim compensation, but harmed Plaintiff by denials of Claim on February 9, 2023 and of alleged Hearing on November 5, 2024.

39.    Defendant VCF's periodic updates, as amended, corrected errors and omissions, except erroneously assumed all workers at WTC were permanent employees, contractors, or volunteers and targeted discrimination of temporary office workers (a/k/a probationary workers) by omitting references thereto in its Claim Form, an "unintentional" error, but not harmless when denials of Plaintiff's Claim and alleged Hearing occurred by Administrators who abused their discretion, overstepped their authority, and deprived Plaintiff 's right to due process for inclusion to victim compensation.

40.    ISM August E. Flentje and SM Allison Turkel denied Plaintiff's Claim and Hearing when they knew or should have known that they did not possess Congressional authorization to make such arbitrary and capricious decisions of vast " 'economic and political significance'" abhorrent to the purpose for which Defendant VCF was established, namely, to compensate those who died or were injured from acts of terrorism at WTC on 9/11, but overstepped and abused their discretion and authority by demanding tangible proofs of presence at the crash site and/or exposure zone, together with the number of hours present for eligibility to victim compensation and due process.

41.    Federal Emergency Management Agency ("FEMA"), established 1979, is an administrative agency of U.S. Department of Homeland Security ("DHS"), but delayed its response 01/19/2003 to Plaintiff's FEMA Application No. 930252130 for economic assistance re Disaster No. 1391 (Ex. **H**), due to illness, termination of employment, lost wages, denial of unemployment compensation as a temporary employee, all of which resulted in an eviction proceeding of Plaintiff, Filed 5/22/02, No. 75117, in Landlord/Tenant Court.

42.    In *Moody v. Criswell et al.*[11], claimants to FEMA for compensation from natural disasters Hurricanes Helene and Milton in 2024 allegedly were not required to provide tangible proof of presence at the sites with the number of hours per day as a condition for eligibility to economic relief and exposed inequitable differences between federal agencies and distribution of compensation to victims of man-made disasters, i.e., terrorism, and natural disasters.

43.    In *Moody, id.,* FEMA's Administrator targeted discrimination of property owners who exhibited tangible proof of political support for 2024 Republican candidate Trump to be denied economic relief from Hurricanes Helene and Milton.

44.    In the instant case, former Administrators of Defendant VCF targeted discrimination of Plaintiff, a temporary office worker, and exceeded their jurisdiction and authority to deny Plaintiff's Claim for victim compensation from acts of terrorism by rejecting proofs submitted in support of Plaintiff's presence in the exposure zone, by fraudulently portraying the October 18, 2023 Deposition as a Hearing on Appeal, the Transcript of which is rife with errors, omissions and heavy redactions to support former SM Turkel's concurrence with

---

[11] U.S.D.C.-S.D. Florida, Fort Pierce Division, Case 2:24-cv-14365, *Moody v. Criswell et al.*, entered in FLSD Docket 11/13/2024

ISM Flentje's denial of Plaintiff's Claim, and wholly deprive Plaintiff the right to due process of law from acts of terrorism at WTC on 9/11.

45.    On January 7, 2025, Adrianne Todman of U.S. Department of Housing and Urban Development ("HUD"), reported North Carolina will receive $1.43B and the City of Asheville $225M from natural disaster Hurricane Helene[12], but allegedly recipients did not have to provide tangible proof of presence at the hurricane site and/or exposure zone, together with the number of hours per day for eligibility to economic relief, contrary to what former ISM Flentje and SM Turkel demanded of Plaintiff from acts of terrorism as a man-made disaster, and thereby targeted discrimination of Plaintiff as a victim of terrorism with harsher conditions for eligibility to victim compensation and deprived Plaintiff's right for inclusion to due process of law at WTC on 9/11.

46.    ISM Flentje and SM Turkel, as former agents, servants, employees and/or administrators, denied Plaintiff's Claim and Hearing on appeal which violated the Supreme Court's 2022 ruling in *West Virginia v. EPA.*[13] "Under the major questions doctrine, administrative agencies must be able to point to 'clear congressional authorization' when they claim the power to make decisions of vast 'economic and political significance'", and former ISM Flentje and SM Turkel overstepped their authority and abused their discretion in denying Plaintiff's Claim and Hearing on appeal in violation of Plaintiff's right to due process of law when they failed to provide clear congressional authorization for their denials of Plaintiff's Claim and alleged Hearing on appeal to victim compensation from acts of terrorism on 9/11 at 1 WTC.

---

[12] Associated Press Asheville Updated 9:56 PM ET 1/7/25

[13] *West Virginia v. Environmental Protection Agency*, 597 U.S. 697 (2022); tracking *Moody*, Id,

47.    Defendant VCF's Claim Form, page 18, included a Waiver to file lawsuits for harm, economic loss (lost wages) and non-economic loss (pain and suffering), which Plaintiff signed in protest and objection to waiving any such right to file lawsuits, such as the within complaint, to ensure Plaintiff's right to due process of law from acts of terrorism at WTC on 9/11 and victim compensation, which is an attempt to curtail access to relief without explanation therefor, save that to preserve the airline industry.

**Legal Background**

48.    Eleven days after multiple acts of terrorism on September 11, 2001 at: 1WTC, 2WTC, New York, NY; Pentagon, Washington, D.C.; rural Shanksville, PA (trajectory, U.S. Capitol), Congress established September 11th Victim Compensation Fund on September 22, 2001 by Title IV of Public Law 107-42, Air Transportation Safety and System Stabilization Act, 49 U.S.C. § 40101, an administrative agency of U.S. Dept. of Justice, with Administrators appointed by U.S. Atty. General of U.S. Dept. of Justice, to compensate persons injured or killed from acts of terrorism, periodically amended to correct errors and omissions.

49.    On December 30, 2024, U.S. Military Appeals Court applied guilt beyond a reasonable doubt in three criminal proceedings in 9/11 terrorist attacks[14] to avert death penalties. In the instant civil proceeding, ISM Flentje and SM Turkel overstepped their authority and abused their discretion by failing to give Plaintiff the benefit of the doubt of being present in the Exposure Zone and eligibility for victim compensation, in violation of Plaintiff's

---

[14] Pentagon Chief loses bid to reject 9/11 plea deals AP, Ellen Knickmeyer, Updated 12/31/24;

16

right for inclusion to due process of law from acts of terrorism and victim compensation at 1WTC on 9/11.

50.    ISM Flentje and SM Turkel denied Plaintiff's Claim and Hearing on appeal allegedly due to lack of tangible proof of presence at the crash site and/or exposure zone, but CRS Report R45808 dated July 15, 2019[15] suggested Defendant VCF's appropriated funds were depleted and "announced that all future VCF awards would be reduced to prevent the VCF from running out of appropriated funds.  The Special Master cites increases in death claims, cancer claims, and claims from non-responders as drivers of the increase in VCF benefit costs", but smacks of the agency's attempt to deny and deprive compensation regardless of the intent of Congress on September 22, 2001 to appropriate funds with periodic amendments to correct errors and omissions including replenishment of depleted funds.

51.    Finally, NYS introduced Legislation (S. 2946B/A. 75-B) a/k/a 9/11 Notice Act, on Sept. 11, 2024 to ensure individuals, i.e., employees, in Lower Manhattan and northern Brooklyn exposure zones between Sept. 2001 and May 30, 2002, are made aware by employers of their rights to register for 9/11 VCF and WTCHP, but, arguably, such Notice excludes temporary workers and is evidence of targeted discrimination in the workplace of temporary employees to victim compensation and health benefits from acts of terrorism at WTC on 9/11.

PRAYER FOR RELIEF

For the reasons complained herein, Plaintiff respectfully requests the Court to:

---

[15] http://sgp.fas.org/crs/misc/R5808.pdf/ https://crsreports.congress.gov R45808 .

17

a)      Award Plaintiff Victim Compensation in the sum of Three Million Dollars

($3,000,000.00) representing four health conditions certified as 9/11 related, eight (8) years of

lost wages, damages from Defendant's attempt to substitute a Deposition for a Hearing on

Appeal; costs of filing and serving the within Complaint; and

b)      For such other and further relief as to this Court deems just and proper.

DATED: March 28, 2025

Respectfully submitted,

Linda A. Setlech
Plaintiff, Pro Se
305 89th Street, Apt. D5
Brooklyn, NY 11209
718-745-3833  Cell 347-633-5075
LASetlech@aol.com

TO:   September 11th Victim Compensation Fund
      Claims Processing Center
      1220 L Street NW Suite 100-Box 408
      Washington, DC 20005-4018
      VCF Helpline 1-855-885-1555

      U.S. Attorney General
      U.S. Department of Justice
      950 Pennsylvania Avenue, NW
      Washington, DC 20530-0001
      DOJ Main Switchboard: 202-514-2000

**EXHIBIT A**



**September 11th
Victim Compensation Fund**

February 9, 2023

LINDA SETLECH
305 89TH ST. APT. D5
BROOKLYN NY  11209

### Re: CLAIM NUMBER: VCF0202283

Dear LINDA SETLECH:

The September 11th Victim Compensation Fund ("VCF") has reviewed your claim for eligibility.

## The Decision on your Claim

After a thorough review of your claim, the VCF has determined that you are not eligible to receive compensation.  This decision is based upon the following:

- The evidence does not establish that you were present at a 9/11 crash site between September 11, 2001 and May 30, 2002.  To be eligible for compensation, individuals must establish that they were present at a 9/11 crash site at the time of, or in the immediate aftermath of, the September 11, 2001 terrorist-related aircraft crashes. Please see the www.vcf.gov website for the definition of "immediate aftermath" and the 9/11 crash sites as defined by the final regulations.

To receive compensation from the VCF, you must satisfy the specific requirements that Congress set forth in the statute and regulations.

## What Happens Next

- **Appealing the Decision**: If you believe this decision has been made in error or if you have documents establishing that the eligibility requirements have been met, you may appeal this determination.  To appeal the eligibility decision, you must complete two steps by the required deadlines:

    1. Complete and return the enclosed **Eligibility Appeal Request Form** within **30 days from the date of this letter**.  Follow the instructions on the form and upload it to your claim or mail it to the VCF by the required deadline.  If you do not submit your completed Eligibility Appeal Request Form within 30 days of the date of this letter, *you will have waived your right to an appeal*.

    2. Complete and submit your **Eligibility Appeal Package** (Pre-Hearing Questionnaire, Eligibility Explanation of Appeal, and all applicable supporting documents) no later than **60 days from the date of this letter**.  It is important that you carefully review the information enclosed with this letter and follow the instructions if you intend to appeal.  Additional



September 11th
Victim Compensation Fund

instructions on the appeals process can be found on the VCF website under "Frequently Asked Questions" and in Policies and Procedures available under "Forms and Resources."

Once your complete Eligibility Appeal Package is submitted, the VCF will review the information to confirm you have a valid appeal, and will notify you of the next steps specific to your appeal and the scheduling of your hearing.

If you have questions about the information in this letter or the claims process in general, please call our toll-free Helpline at 1-855-885-1555. Please have your claim number ready when you call: **VCF0202283**. For the hearing impaired, please call 1-855-885-1558 (TDD). If you are calling from outside the United States, please call 1-202-514-1100.

Sincerely,

August E. Flentje
Special Master
September 11th Victim Compensation Fund

EXHIBIT A-1

# Features: WTC Identification Cards

BACK



Photo credit: Michael Hnatov

## Identification Card, Recovered

### Keywords

Recovered Property

Victims

### Description

Recovered World Trade Center identification card issued to Paul Joseph Simon at Marsh & McLennan. The card shows significant damage with puncture marks and scratches. The card has a red background and a large white "V" in the center.

**Source:** Shelley M. Simon

**Credit Line:** *Gift of Shelley Simon, in loving memory of Paul Simon*

**Accession Number:** C.20



EXHIBIT B

NYC Disaster Area
(WTC Health Program Survivor Eligibility)

Responder Eligibility Area
(WTC Health Program)

NYC Exposure Zone (VCF)

World Trade Center site

For illustrative purposes only
Mapping support courtesy of CDC-ATSDR/GRASP
Sources: ESRI, TomTom, OpenStreetMap, VCF
WTCHP 09-2023

September 11th
Victim Compensation Fund

**Victim Presence Statement Instructions**

## Information about the Geographic Area in New York City Covered by the VCF

The Presence Statement asks about the specific area of New York City in Manhattan that is south of the line that runs along Canal Street from the Hudson River to the intersection of Canal Street and East Broadway, north on East Broadway to Clinton Street, and east on Clinton Street to the East River (the map below shows this area); and any area related to or along the routes of debris removal, such as barges and the Fresh Kills landfill in Staten Island.



EXHIBIT C

STATE OF NEW JERSEY      )

COUNTY OF _SOMERSET_     )

## PERSONAL STATEMENT

I, MARK A. BEST, make this personal statement on behalf of Linda A. Setlech, Applicant, to the 911 Victim Compensation Fund ("VCF").

1. Applicant is my mother who resides at 305 89th Street, Apt. D5, Brooklyn, New York 11209, and was a resident at such address on September 11, 2001, with a date of birth, ~~████████~~

2. I reside at ~~████████████████████~~, and have resided at such address for more than twenty (20) years, cell number ~~████████████~~

3. At all times herein mentioned regarding September 11, 2001, my mother was a temporary employee and worked in the Law Department at 1 World Trade Center, 66th Floor, New York, NY, for the Port Authority of New York and New Jersey, in the capacity of a legal secretary during its hiring freeze, and had been employed in such capacity since on or about June 2000.

4. As soon as I learned early Tuesday morning on September 11, 2001 that the World Trade Center had been a site of terrorism, I called my mother at home, ~~████████████~~, received no answer, and left a voice mail message for a return call.

5. I did not receive a response from my mother on September 11, 2001 until approximately 3:30 p.m. -- after the collapse of 2 World Trade Center -- and learned that she had walked from Broadway and Fulton Streets, Park Row, over the Brooklyn Bridge, and continued walking at the age of 58, without a hat covering, until she arrived at 305 89th Street, Apt. D5, Brooklyn, NY 11209, Bay Ridge, near the Verrazzano-Narrows Bridge to Staten Island, New York.

6. Applicant advised that she would drive to New Jersey through Staten Island to visit me and my family to destress from the day's events.

7. When Applicant arrived at my family home in New Jersey on September 11, 2001, I saw that her face was sunburned from the 3-1/2 plus hour long walk home.

8. On July 18, 2019, Applicant arrived at Memorial Sloan Kettering Cancer Center ("MSK") for surgery as a result of melanoma to her left hand.

9. Upon Applicant's discharge, I appeared at MSK on July 18, 2019 to transport Applicant to my family's home to begin recovery.

10. I am ready, willing and able to provide testimony in connection with the contents of this personal statement upon request.

_____
MARK A. BEST

Subscribed and sworn to
before me this _13th_ day of
_October_, 2021.

_____
Notary Public
MARIE CHENG
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES APRIL 12, 2022

STATE OF NEW JERSEY          )
                             :
COUNTY OF _SOMERSET_____  )

## PERSONAL STATEMENT

I, KAREN A. BEST, make this personal statement on behalf of Linda A. Setlech, Applicant, to the 911 Victim Compensation Fund ("VCF").

1.      Applicant is my mother-in-law who resides at 305 89th Street, Apt. D5, Brooklyn, New York 11209, and was a resident at such address on September 11, 2001, with a date of birth, ▓▓▓▓▓▓▓.

2.      I reside at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and have resided at such address for more than twenty (20) years, cell number ▓▓▓▓▓▓▓.

3.      At all times herein mentioned regarding September 11, 2001, my mother-in-law was a temporary employee and worked in the Law Department at 1 World Trade Center, 66th Floor, New York, NY, for the Port Authority of New York and New Jersey, in the capacity of a legal secretary during its hiring freeze, and had been employed in such capacity since on or about June 2000.

4.      As soon as my husband, Mark A. Best, and I learned early Tuesday morning on September 11, 2001 that the World Trade Center had been a site of terrorism, my husband called my mother-in-law at home, ▓▓▓▓▓▓▓, received no answer, and left a voice mail message for a return call.

5.      We did not receive a response from my mother-in-law on September 11, 2001 until approximately 3:30 p.m. -- after the collapse of 2 World Trade Center -- and learned that she had walked from Broadway and Fulton Streets, Park Row, over the Brooklyn Bridge, and continued walking at the age of 58, without a hat covering, until she arrived at 305 89th Street, Apt. D5, Brooklyn, NY 11209, Bay Ridge, near the Verrazzano-Narrows Bridge to Staten Island, New York.

6.      Applicant advised us that she would drive to New Jersey through Staten Island to visit our family to destress from the day's events.

7.      When Applicant arrived at my family home in New Jersey on September 11, 2001, I saw that her face was sunburned from the 3-1/2 plus hour long walk home.

8.      On July 18, 2019, Applicant arrived at Memorial Sloan Kettering Cancer Center ("MSK") for surgery as a result of melanoma to her left hand.

9.      Upon Applicant's discharge, my husband, Mark A. Best, appeared at MSK on July 18, 2019 to transport Applicant to our family's home to begin recovery.

10.     On July 19, 2019, after Applicant showered, she shared her discovery with me that her left arm had been prepped for a skin graft in the event there was insufficient skin on the left hand to close the wound.

11.     I am ready, willing and able to provide testimony in connection with the contents of this personal statement upon request.

*Karen A. Best*
KAREN A. BEST

Subscribed and sworn to
before me this _13th_ day of
_October_, 2021.

_____
Notary Public        . MARIE CHENG
          NOTARY PUBLIC OF NEW JERSEY
          MY COMMISSION EXPIRES APRIL 12, 2022

**AFFIDAVIT**

STATE OF MARYLAND )
                                    : SS.:
COUNTY OF                 )

I, **DEBRA M. ANDERSON**, make this affidavit in support of an application and appeal by Linda A. Setlech to WORLD TRADE CENTER HEALTH PROGRAM ("WTC HP"), ID 911S31194, and to September 11th Victim Compensation Fund ("VCF"), ID 0202283.

1. I am the niece of said Applicant and reside at 2302 Fox Chase Court, Bel Air, Maryland 21015, cell number 443-987-3780, email dander96@jhu.edu.

2. On September 11, 2001, Applicant, Linda A. Setlech, resided and currently resides at 305 89th Street, Apt. D5, Brooklyn, NY 11209, telephone number 718-745-3833, email LASetlech@aol.com.

3. On September 11, 2001, I knew that Applicant worked at 1 World Trade Center ("WTC"), 66th Floor, as a legal secretary, from 9:00-5:00, more particularly, as a temporary office worker in the Law Department for the Port Authority of New York & New Jersey.

4. After acts of terrorism occurred at WTC on the morning of Tuesday, September 11, I made several attempts to call Applicant, but no one answered, so I left voice mail messages.

5. On September 11, 2001, I called my cousin, Mark A. Best, at his place of employment located at Central Park South and 32nd Street in New York City and learned that both towers had collapsed -- 2 WTC collapsed at 9:59 a.m. and 1 WTC collapsed at 10:28 a.m.

6. I asked my cousin, Mark A. Best, if he had spoken to his mother and Applicant and he said no, but he also had left voice mail messages.

7. I contacted the American Red Cross ("ARC") to learn the status of my Aunt and Applicant, but it had no information available.

8. Throughout the morning and afternoon no information was available to family members about the status of Applicant.

9. By late afternoon, I received a call from my cousin, Mark A. Best, who said Applicant had arrived at 1 WTC after 8:46 a.m. because she had voted in New York City's primary election, and by the time of her arrival, 1 WTC was on fire which prevented her from entering.

10. After 2 WTC collapsed at 9:59 a.m., my cousin said Applicant was directed by New York City Police Department to walk across the Brooklyn Bridge to safety.

11. Applicant continued to walk from the Brooklyn Bridge to her Brooklyn residence which is near the Verrazzano Bridge and Staten Island, but did not arrive home until approximately 4:00 p.m. on Tuesday, September 11, 2001.

I am ready, willing and able to discuss the contents hereof upon request.

SUBSCRIBED AND SWORN TO before me

this _____ day of _____, 2022.        _____

                                                                        **DEBRA M. ANDERSON**

_____
       Notary Public

1

*****DRAFT*****


HEARING FOR LINDA SETLECH

VCF NUMBER 0202283

Wednesday, October 18, 2023

New York, New York

2:30 p.m.


B E F O R E: 3rd Party Information , Hearing Officer


Also present:

3rd Party Information

3rd Party Information







Reported by:

3rd Party Information

Job No.: 132731

2

HEARING OFFICER [3rd Party Information]: Okay. Good afternoon, my name is [3rd Party Information] I'm Hearing Officer for the appeal Hearing Officer Linda Setlech, VCF claim 0202283.

We are here to discuss your presence in the New York City exposure zone between 9/11/2001 and May 30, 2002. I will have my colleagued introduce themselves and then I will go through some instructions and after I will have the court reporter swear you in.

HEARING OFFICER [3rd Party Information]: Hi, good afternoon, my name is [3rd Party Information], I'm an attorney and Hearing Officer with the fund.

HEARING OFFICER [3rd Party Information] I'm also an attorney and Hearing Officer with the fund.

HEARING OFFICER [3rd Party Information] I will have the court reporter swear you in now.

Whereupon, LINDA SETLECH, after being duly sworn testified as follows:

HEARING OFFICER [3rd Party Information] So, few instructions. First one is we need you to

3

confirm that your cellphone is off and that you are not recording the --

MS. SETLECH:  Oh, very good.  Very good.

HEARING OFFICER ███████  Are you recording now?

MS. SETLECH:  No, but I was thinking about it, about doing it because there was some issues about me, speaking to D.C. office, about getting a copy of the transcript.

HEARING OFFICER ██████  Okay.  Well, you can certainly submit a FOIA request after the hearing --

MS. SETLECH:  I did.

HEARING OFFICER ████████ -- or before for a copy of the transcript but before we get to that can you please confirm that your phone is off and you are not recording the hearing?

MS. SETLECH:  Yes.

HEARING OFFICER ██████  And the only quote unquote record of the hearing is the written transcript that court reporter taking down.

As you previously mention you have already

4

preemptively submitted a FOIA request --

MS. SETLECH: I think there was an issue on that so I told them in an email I would hand deliver a certification --

HEARING OFFICER ▮▮▮ Well, FOIA requests aren't through our office, so you can address that after the hearing with the appropriate office but our office does not handle FOIA requests, the Department of Justice their own department that will handle that question.

So, as I mentioned, we are here to talk about your presence during the relevant exposure zone which we previously discussed.

Would you like us to ask you questions or do you have a statement you prepared?

MS. SETLECH: Yeah, I prepared a statement and few other things.

HEARING OFFICER ▮▮▮ So, I want to help, since we have forty five minutes for this hearing we want to make most of that time. None of us will make the decision on this case, it's for the Special Master to decide, so I

5

want us to be able to focus on the most relevant, key information possible for the Special Master to consider for which we will really focus on your presence, what you were doing, there was some 9/11 presence involved and perhaps some presence after 9/11, so any kind of information you want to tell us about your experience, that's what we want to focus on for her.

MS. SETLECH:  Okay.  Then I can make another statement.

HEARING OFFICER ███████ If we have time, sure.

MS. SETLECH:  Well, because, I was employee for the Port Authority New York and New Jersey.  And I worked in the law department on the 66th floor of One World Trade Center. However, when you look at my identification card you will not find identified as Port Authority.  They omitted it on my identification card because I was a temporary employee.

6

HEARING OFFICER [3rd Party Inform]   So, were you employed by the Port Authority or you were employed by a temp agency?

MS. SETLECH:  A temp agency, but because Port Authority had its own relationship with Robert Cast they become cohost temp employer. But when it came to our identification card they omitted it.  Same thing with tax information, you are only omitted any kind of tax information so the only thing that appears is Robert Cast.

HEARING OFFICER [3rd Party Inform]   Just for the record, you're pointing to, wearing a badge, I want to describe this for the record.

So, can you tell me what this is?

MS. SETLECH:  This is the what Port Authority issued to me for access.

HEARING OFFICER [3rd Party Inform]   Okay.  So, this is a badge with Ms. Setlech's name on it and her picture and it says 12/31/2001, and it says Law Department.

MS. SETLECH:  Yes.

7

you hire me as a temporary worker?  What is this?  Then of course, when I found it much more difficult to get a job afterwards, but I was then very excited when I got a job in 2008 and that didn't terminate until 2020 and that was due Covid.

HEARING OFFICER ▮▮▮▮▮  Well, as Christa said, we are overtime --

MS. SETLECH:  Okay.  I'm sorry.

HEARING OFFICER ▮▮▮▮▮Oh, nothing to apologize for.  It's helpful for us to hear all this information for the Special Master.  You did a good job.  Is there anything else that you would like to say?  We need to wrap up but I will give you a minute?

MS. SETLECH:  I calculate 72 point five hours totally.  That included presence on 9/11 at the site down there on Broadway and Fulton. Then presence on Brooklyn Bridge, and from Manhattan to Brooklyn, then presence through Brooklyn neighborhoods all the way down under the bridge through Park Slope, Sunset Park and

54

Bay Ridge as pedestrians without a hat or sunglasses.

I had to have iridotomy, it's when they go in with laser and pierce the pupil or something like that, to release pressure from behind the eye. I didn't have any sunglasses -- I didn't discuss with the doctor if that was by any chance 9/11 related.

HEARING OFFICER ▓▓▓▓: In terms of conditions, I know they are certified by the World Trade Center Health Program but we don't need to talk about that here.

MS. SETLECH: But that brings up another question for me, I found it very strange, frankly, that you can have 9/11 related issues --

HEARING OFFICER ▓▓▓▓ It's confusing. We get that question often, but thank you so much for coming in. We appreciate that you made the effort to come in in-person, that's great, and it was lovely to meet you. Thank you so much very much.

(Time noted:  3:31 p.m.)

**EXHIBIT E**



September 11th
Victim Compensation Fund

November 5, 2024

LINDA SETLECH
305 89TH ST. APT. D5
BROOKLYN NY  11209

**Re: CLAIM NUMBER: VCF0202283**

Dear LINDA SETLECH:

The September 11th Victim Compensation Fund ("VCF") sent you an Eligibility determination letter on February 09, 2023.

You then appealed the eligibility decision on your claim and a hearing was held.  The VCF has considered your appeal and has re-evaluated your claim.

Based on the information you provided in support of your appeal, the VCF has determined that the original eligibility decision is correct and you are not eligible to receive compensation from the VCF.  This is the final decision on your appeal and is based upon the following:

- The evidence does not establish that you were present at a 9/11 crash site between September 11, 2001 and May 30, 2002.  To be eligible for compensation, individuals must establish that they were present at a 9/11 crash site at the time of, or in the immediate aftermath of, the September 11, 2001 terrorist-related aircraft crashes. Please see the www.vcf.gov website for the definition of "immediate aftermath" and the 9/11 crash sites as defined by the final regulations.

To receive compensation from the VCF, you must satisfy the specific requirements that Congress set forth in the VCF Permanent Authorization Act and the original statute.

If you have questions about the information in this letter or the claims process in general, please call our toll-free Helpline at 1-855-885-1555.  Please have your claim number ready when you call: **VCF0202283**.  For the hearing impaired, please call 1-855-885-1558 (TDD).  If you are calling from outside the United States, please call 1-202-514-1100.

Sincerely,

Allison Turkel
Special Master
September 11th Victim Compensation Fund

**EXHIBIT F**

WTC Health Program
PO Box 7002
Rensselear, NY 12144



Linda Setlech
305 89th St Apt D5
Brooklyn, New York 11209

**Re: 911S31194**

**04/03/2024**

**Dear Linda Setlech:**

This letter is to inform you that after reviewing medical information provided by the LHI - Williams Street Clinic (LHIWSC), the World Trade Center (WTC) Health Program has certified the following health condition(s) as covered for treatment benefits:

| Date of Certification | Condition Category on List of WTC-Related Health Conditions* | Certification Category or Injury |
|---|---|---|
| 3/13/2024 | Cancer | Basal Cell Carcinoma Of Skin Of Nose |

\* As listed in the James Zadroga 9/11 Health and Compensation Act of 2010 and/or 42 C.F.R. § 88.15

Our records also indicate that you are currently certified for the following health condition(s) as covered for treatment benefits:

| Date of Certification | Condition Category on List of WTC-Related Health Conditions* | Certification Category or Injury |
|---|---|---|
| 4/7/2022 | Asthma | Obstructive Airway Disease Please Contact your WTC Physician for Specific Information |
| 4/7/2022 | Cancer | Malignant Melanoma Left Up Limb Incl Shoulder |
| 4/7/2022 | Gastroesophageal Reflux Disease (Gerd) | Gastroesophageal Reflux Disease Please Contact your WTC Physician for Specific Information |

\* As listed in the James Zadroga 9/11 Health and Compensation Act of 2010 and/or 42 C.F.R. § 88.15

**The WTC Health Program will only provide payment for medically necessary treatment(s) authorized by your WTC Health Program physician for your certified health condition(s) by a WTC Health Program participating provider.**

If you would like more info  a    ı or believe that a health condition ıᴜ ʒing, incorrect, or should be removed, please discuss this with the LHI - Williams Street Clinic (LHIWSC) at 800-714-7426. If the information in this letter is correct, no further action is necessary.

If you have any other questions, you may contact the WTC Health Program at 1-888-982-4748 Monday through Friday, 9 AM to 5 PM (Eastern Time Zone).

Sincerely,

John Howard, M.D.,
Administrator, World Trade Center Health Program
Copy to: Director, Clinical Center of Excellence

**EXHIBIT G**

Case 1:25-cv-02581-ALC-OTW    Document 1    Filed 03/28/25    Page 50 of 56

**VCF Program Statistics**
**As of December 31, 2024**

Eligibility



- Approved Eligibility Determinations
- Procedural Denials
- Procedural Denials Returned for Review
- Substantive Denials
- Substantive Denials Returned for Review

| | 2024 Jan | 2024 Feb | 2024 Mar | 2024 Apr | 2024 May | 2024 Jun | 2024 Jul | 2024 Aug | 2024 Sep | 2024 Oct | 2024 Nov | 2024 Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Approved Eligibility Determinations | 59,461 | 59,857 | 60,401 | 60,908 | 61,526 | 62,014 | 62,596 | 63,281 | 63,887 | 64,582 | 65,081 | 65,659 |
| Procedural Denials | 15,119 | 15,227 | 15,282 | 15,567 | 15,708 | 15,825 | 15,917 | 16,008 | 16,102 | 16,254 | 16,423 | 16,572 |
| Procedural Denials Returned for Review | 901 | 969 | 989 | 1,188 | 1,360 | 1,556 | 1,670 | 1,736 | 1,770 | 1,843 | 1,907 | 1,952 |
| Substantive Denials | 1,626 | 1,643 | 1,668 | 1,695 | 1,737 | 1,770 | 1,796 | 1,821 | 1,834 | 1,886 | 1,929 | 2,005 |
| Substantive Denials Returned for Review | 656 | 734 | 797 | 852 | 914 | 981 | 1,055 | 1,115 | 1,125 | 1,225 | 1,265 | 1,292 |

**EXHIBIT H**

Federal Emergency Management Agency
REGION II
P.O. Box 10055
Hyattsville, MD 20782-7055

FEMA Application No.: 930252130

Disaster No.: 1391
01/19/2003

MS LINDA A SETLECH
305 89TH ST APT D5
BROOKLYN, NY 11209-5615

Dear Ms. Setlech:

The Federal Emergency Management Agency (FEMA) and the STATE OF NEW YORK have received the following documentation:

Request for Recertification

We will review the document(s) as soon as possible.

Sincerely,

Human Services Officer

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF **KINGS** HOUSING PART
-------------------------------------------------------------------------------X    L& T Index No.:    **75117**

**LARANN REALTY CORP.**,

                       Petitioner/Landlord,
     -against-

**LINDA SETLECH,**

                      Respondent/Tenant,
**305 89th Street, Apartment D5**
**Brooklyn, NY 11209,**

"JOHN and/or JANE DOE"
                      *Respondent/Undertenant
First name of Tenant and/or Undertenant being fictitious and unknown to petitioner,
Person intended being in possession of the premises herein described*
-------------------------------------------------------------------------------X

**NOTICE OF PETITION**
Non-Payment Dwelling

Petitioner's Residence:

Business Address:
8823 3rd Avenue
Brooklyn, NY 11209

     To the respondent(s) above named and described, in possession of the premises hereinafter described or claiming possession thereof:
     PLEASE TAKE NOTICE that the annexed petition of **LARANN REALTY CORP.**, by Anthony **Ursino, President**, verified **May 22, 2002** prays for a final judgment of eviction, awarding to the petitioner possession of premises described as follows: **305 89th Street, Apartment D5, Brooklyn, New York 11209** on the **Fourth Floor**, consisting of all rooms, in premises known as and located at **305 89th Street, Apartment D5, Brooklyn, New York 11209**, County of **KINGS** in the City of New York, as demanded in the petition.
     TAKE NOTICE also that demand is made in the petition for judgment against you for the sum of **$3,094.23** with interest from **February 1, 2002.**
     TAKE NOTICE also that WITHIN FIVE DAYS after service of this Notice of Petition upon you, you must answer, either orally before the Clerk of this Court at **141 Livingston Street.**, County of **Kings** City and State of New York, or in writing by serving a copy thereof upon the undersigned attorney for the petitioner, and by filing the original of such answer, with proof of service thereof, in the Office of the Clerk. Your answer may set forth any defense or counterclaim you may have against the petitioner. On receipt of your answer, the Clerk will fix and give notice of the date for trial or hearing which will be held not less than 3 nor more than 8 days thereafter, at which you must appear. If, after the trial or hearing, judgment is rendered against you, the issuance of a warrant dispossessing you may, in the discretion of the Court, be stayed for FIVE days from the date of such judgment.
     TAKE NOTICE also that if you fail to interpose and establish any defense that you may have to the allegations of the petition, you may be precluded from asserting such defense or the claim on which it is based in any other proceeding or action.
     In the event you fail to answer and appear, final judgment by default will be entered against you but a warrant dispossessing you will not be issued until the tenth day following the date of the service of this Notice of Petition upon you.

Dated: May 22, 2002

                                       S/JACK BAER
                                     _____
                                          Clerk

NADEL & ASSOCIATES, P.C.
Attorneys for the Petitioner
477 BAY RIDGE AVENUE
BROOKLYN, NY 11220    Phone: 718-921-9400

**IMPORTANT TO TENANT** - If you are dependent upon a person in the military service of the United States or the State of New York, advise the Clerk immediately, in order to protect your rights.
**Take notice** that under Section 745 of the Real Property Actions and Proceedings Law, you may be required by the Court to make a rent deposit or a rent payment to the petitioner, upon your second request for an adjournment or if the proceeding is not settled or a final determination has not be made by the court within 30 days of the first court appearance. Failure to comply with an initial rent deposit or payment order may result in the entry of a final judgment against you without a trial. Failure to make subsequent required deposits or payments may result in an immediate trial on the issues raised in your answer.

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS
------------------------------------------------------------------------------------X

LARANN REALTY CORP.,
                Petitioner/Landlord,

   -against-

LINDA SETLECH,
              Respondent/Tenant,

305 89th Street, Apartment D5,
Brooklyn, NY 11209,

"JOHN and/or JANE DOE"      *Respondent/Undertenant*

First name of Tenant and/or Undertenant being fictitious and unknown to petitioner,
Person intended being in possession of the premises herein described*
------------------------------------------------------------------------------------X

L & T Index No.:

**PETITION**
Non-Payment Dwelling

THE PETITION OF **LARANN REALTY CORP.,** by Anthony Ursino, President, owner and landlord of the premises shows that:

1.   The undersigned is the attorney of the Petitioner.
2.   Respondent **LINDA SETLECH,** is tenant of the premises, entered into possession under **written** rental agreement made on or about heretofore between respondent and landlord (landlord's predecessor). Pursuant to an agreement, which expired on February 28, 2002, respondent promised to pay to landlord as rent **$740.25** each month in advance on the 1st day of each month. Thereafter respondent entered into an a new written rental agreement, wherein respondent promised to pay to landlord as rent **$784.66** each month in advance on the 1st day of each month.
     Respondent " John and/or Jane Doe" is undertenant of the aforementioned respondent tenant.
3.   The premises are described as follows: **305 89th Street, Apartment D5, Brooklyn, NY 11209**, which is situated within the territorial jurisdiction of the Civil Court of the City of New York, County of **Kings**.
4.   Pursuant to said agreement there was due to landlord from respondent tenant rent as follows:
   **February Rent 2002 - $740.25**
   **March Rent 2002   - $784.66**
   **April Rent 2002    - $784.66**
   **May Rent 2002     - $784.66**

     Respondent tenant has defaulted in the payments thereof and the total rent in arrears is **$3,094.23.**
     Rent has been demanded **by written 5-Day Notice copy with proof of service annexed hereto.**
6.   Respondent holdover and continue in possession of premises without landlord's permission after said default.
7. [ ] **A.**   The apartment is subject to rent control and the rent demanded herein does not exceed the maximum rent prescribed by the New York State Division of Housing and Community Renewal (DHCR).

   **[X] B.**   The apartment is presently subject to the Rent Stabilization Law and pursuant to said law, the Owner has duly registered this unit with the New York State Division of Housing and Community Renewal and the past due rent, if any, sought herein, does not exceed the legal rental for the premises as registered.

   **[ ] C.**   **The apartment is not subject to any of the foregoing by reason of being located in a decontrolled dwelling under six families.   The subject premises is not subject to the rent control or rent stabilization laws by reason of being located in a decontrolled dwelling under six families that became vacant since June 30, 1974 and prior to the current tenant taking occupancy.**

8.   [ ] **A.** The premises **are not** a multiple dwelling.

   **[X] B.** The premises **are** a multiple dwelling and pursuant to the Administrative Code Article 41 there is a currently effective registration statement on file with the Office of Code Enforcement in which the

owner has designated the managing agent named below, a natural person over 21 years of age, to be in control of and responsible for the maintenance and operation of the dwelling.

Multiple Dwelling Registration No.:    **309483**

Registered Managing Agent's Name:  **Anthony Ursino**

Residence:  **8823 3rd Avenue, Brooklyn, New York 11209**

9.   That the property herein sought to be recovered is the residence of the tenant and undertenant's herein. Petitioner requests final judgment:  awarding possession of the premises to the petitioner-landlord; issuance of a warrant to remove respondents from possession thereof; judgment for rent in arrears against respondent-tenant for **$3,094.23** with interest from **February 1, 2002**; costs and disbursements herein.

Dated: **May 22, 2002**      Petitioner: **LARANN REALTY CORP.**

STATE OF NEW YORK, COUNTY OF **KINGS**        ss.:  The undersigned attorney for petitioner being duly sworn states that deponent has read the petition, the information stated above is from the books and records of the petitioner

Sworn to before me on *May 22, 2002,*

Notary Public

ANDREW DAVID ROOF
Notary Public, State of New York
No. 01RO6049270
Qualified in Kings County
Commission Expires Oct. 10, 2002

LORRAINE NADEL
Nadel & Associates, P.C.
477 Bay Ridge Avenue
Brooklyn, NY 11220
718-921-9400