UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LINDA SETLECH,

Plaintiff,

*v.*

Interim Special Master August E. Flentje, Special Master Allison Turkel, in their capacities as Administrators of SEPTEMBER 11th VICTIM COMPENSATION FUND, an Administrative Agency of U.S. Department of Justice, and Pamela J. Bondi in her capacity as U.S. Attorney General, U.S. Department of Justice,

Defendants.

No. 25 Civ. 2581 (ALC)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

JAY CLAYTON
United States Attorney
for the Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2734
E-mail: adam.gitlin@usdoj.gov

ADAM GITLIN
Assistant United States Attorney
– Of Counsel –

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 3

I. Statutory Background ..... 3

II. Factual Background ..... 4

A. Plaintiff's Alleged Presence in the Exposure Zone ..... 4

B. Plaintiff's VCF Claim ..... 5

C. Allegations in the Instant Lawsuit ..... 6

LEGAL STANDARDS ..... 8

ARGUMENT ..... 9

I. The Government Has Not Waived Sovereign Immunity ..... 9

II. Plaintiff Waived Her Right to Sue the Government Related to September 11 Benefits .. 10

III. Plaintiff's APA Claims Cannot Proceed ..... 13

A. Agency Action is Not Subject to Judicial Review ..... 13

B. The APA Does Not Allow for Suits for Monetary Damages ..... 16

IV. Plaintiff's Due Process Claim Should Be Dismissed ..... 16

V. Plaintiff's Equal Protection Claim Should Be Dismissed ..... 18

VI. Plaintiff's Civil Rights Act Claim Should Be Dismissed ..... 19

VII. Plaintiff's Claims Against Interim Special Master Flentje and Special Master Turkel in Their Individual Capacities Should Be Dismissed ..... 20

CONCLUSION ..... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 8

*Bell Atlantic Corp v. Twombly*,
550 U.S. 544 (2007) .......... 8, 9

*Bhatia v. Yale Sch. Of Med.*,
347 F. App'x 663 (2d Cir. 2009) .......... 20

*Bivens v. Six Unknown Named Agents*,
403 U.S. 388 (1971) .......... 22

*Block v. Community Nutrition Institute*,
467 U.S. 340, (1984) .......... 14

*Bowen v. Michigan Acad. of Family Physicians*,
476 U.S. 667 (1986) .......... 13, 14

*Buday v. N.Y. Yankees P'ship*,
486 F. App'x 894 (2d Cir. 2012) .......... 8

*Burgin v. Cash*,
No. 15 Civ. 201, 2018 WL 6803763 (W.D.N.Y. Dec. 27, 2018) .......... 21

*Chounlamontry v. Shortall*,
784 F. Supp. 3d 517 (D. Conn. 2024) .......... 21

*Colaio v. Feinberg*,
262 F. Supp. 2d 273 (S.D.N.Y. 2003) .......... 15, 18, 19

*Cooke v. United States*,
918 F.3d 77 (2d Cir. 2019) .......... 8, 9

*Daly v. Citigroup Inc.*,
939 F.3d 415 (2d Cir. 2019) .......... 8

*DeMasi v. Benefico*,
567 F. Supp. 2d 449 (S.D.N.Y. 2008) .......... 17

*Ewers v. Empire State Recovery Fund*,
No. 19 Civ. 4599 (CM), 2019 WL 13498511 (S.D.N.Y. Aug. 7, 2019)....11, 12

*FAA v. Cooper*,
566 U.S. 284 (2012).... 9

*FDIC v. Meyer*,
510 U.S. 471 (1994).... 9

*Friends of Falun Gong v. Pac. Cultural Enterprise, Inc.*,
288 F. Supp. 2d 273 (E.D.N.Y. 2003).... 20

*Graybill v. City of New York*,
247 F. Supp. 2d 345 (S.D.N.Y. 2002)....11

*Halebian v. Berv*,
644 F.3d 122 (2d Cir. 2011).... 9

*Harris v. Mills*,
572 F.3d 66 (2d Cir. 2009).... 9

*Heckler v. Chaney,*
470 U.S. 821 (1985).... 14

*Hobbs v. County of Westchester*,
397 F.3d 133 (2d Cir. 2005).... 6

*In re Sept. 11th Litig.*,
No. 21 Mc. 97 (AKH), 2007 WL 1965559 (S.D.N.Y. July 5, 2007)....11

*Jones v. Nat'l Commc'n & Surveillance Networks*,
409 F. Supp. 2d 456 (S.D.N.Y. 2006).... 19

*Larson v. United States*,
No. 16 Civ. 245 (VEC), 2016 WL 7471338 (S.D.N.Y. Dec. 28, 2016).... 16

*Libertarian Party of Erie Cty. v. Cuomo*,
970 F.3d 106 (2d Cir. 2020).... 8

*Lipsman v. Cortes-Vazquez*,
No. 21 Civ. 4631 (JMF), 2021 WL 5827129 (S.D.N.Y. Dec. 7, 2021).... 19

*Louis Vuitton S.A. v. Spencer Handbags Corp.*,
765 F.2d 966 (2d Cir. 1985).... 6

*Lunney v. United States*,
319 F.3d 550 (2d Cir. 2003).... 13, 15

*Makarova v. United States*,
201 F. 3d 110 (2d Cir. 2000) ........................................ 8

*Martinez v. D'Agata*,
No. 16 CV 44 (VB), 2019 WL 6895436 (S.D.N.Y. Dec. 18, 2019) ........................................ 22

*Mathews v. Eldridge*,
424 U.S. 319 (1976)........................................ 17

*McGowan v. United States*,
825 F.3d 118 (2d Cir. 2016) ........................................ 8

*McIntosh v. United States*,
No. 15 Civ 2442 (KMK), 2018 WL 1275119 (S.D.N.Y. Mar. 7, 2018)........................................ 19

*Mid-New York Env't & Sustainability Promotion Comm., Inc. v. Dragon Springs Buddhist, Inc.*,
647 F. Supp. 3d 286 (S.D.N.Y. 2022) ........................................ 8

*Munn v. U.S. Dep't of Lab.*,
714 F. App'x 387 (5th Cir. 2018) ........................................ 22

*Munn v. U.S. Dep't of Lab.*,
No. 16 Civ. 151 (LG) (RHW), 2017 WL 627433 (S.D. Miss. Feb. 15, 2017)........................................ 22

*Rodriguez v. United States*,
No. 21 Civ. 10679 (LTS), 2022 WL 280891 n.3 (S.D.N.Y. Jan. 31, 2022) ........................................ 10

*Schneider v. Feinberg*,
345 F.3d 135 (2d Cir. 2003) ........................................ 12, 14, 15

*Trudeau v. FTC*,
456 F.3d 178 (D.C. Cir. 2006)........................................ 22

*United States v. Mitchell*,
463 U.S. 206 (1983)........................................ 9

*Vela-Estrada v. Lynch*,
817 F.3d 69 (2d Cir. 2016) ........................................ 13, 14

*Virgilio v. City of New York*,
407 F.3d 105 (2d Cir. 2005) ........................................11

*Ward v. Brown*,
22 F.3d 516 (2d Cir. 1994) ........................................ 16

*Watson v. O'Brien*,
No. 23 Civ. 8958 (LTS), 2023 WL 8236990 (S.D.N.Y. Nov. 27, 2023) ........................................ 12

*Watson v. UAL Corp.*,
No. 24 Civ. 6967 (LTS), 2025 WL 2391483 (S.D.N.Y. Aug. 18, 2025) ....11

*Weinberger v. Salfi*,
422 U.S. 749 (1975) .... 18

*Wewe v. Mt. Sinai Hosp.*,
518 F. Supp. 3d 643 (E.D.N.Y. 2021) .... 10

*Whiteside v. Hover-Davis, Inc.*,
995 F.3d 315 (2d Cir. 2021) .... 8

*Wickes v. Westfair Elec. Co.*,
19 Civ. 10673 (PMH), 2021 WL 217318 n.4 (S.D.N.Y. Jan. 20, 2021) .... 9

*Yale New Haven Hosp. v. Becerra*,
56 F.4th 9 (2d Cir. 2022) .... 14

*Ziglar v. Abbasi*,
582 U.S. 120 (2017) .... 22

Statutes

5 U.S.C. §701(a) .... 13

5 U.S.C. § 702 .... 16

42 U.S.C. § 1985 .... 2, 19, 20

Rules

Federal Rule of Civil Procedure 12(b)(1) .... 1, 8

Federal Rule of Civil Procedure 12(b)(6) .... 1

Federal Rule of Civil Procedure 25(d) .... 1, 20

Defendants Special Master Allison Turkel, in her official capacity as Special Master of the September 11th Victim Compensation Fund ("VCF"), and Pamela Bondi, in her official capacity as the United States Attorney General (collectively, the "Government")[1] by their attorney, Jay Clayton, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint, *see* ECF No. 16 ("Am. Compl."), for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

This lawsuit arises out of Plaintiff's application for benefits to the VCF in 2023, which the VCF denied. Plaintiff challenges the VCF's determination that Plaintiff was not entitled to benefits from the VCF because the VCF could not verify that she was present in the New York City Exposure Zone ("Exposure Zone") on September 11, 2001 ("September 11").[2] Plaintiff also appears to challenge VCF's procedures and standards for making such determination. Plaintiff's Amended Complaint asserts that the VCF acted arbitrarily and capriciously in violation of the

---

[1] As the Government previously explained (*see* ECF No. 6, at 1 n.1), Plaintiff also names as a defendant former VCF Interim Special Master August E. Flentje in his official capacity. However, pursuant to Federal Rule of Civil Procedure 25(d), Mr. Flentje should be removed from the caption of the case because the current VCF Special Master, Allison Turkel, is a named defendant. See Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."). In addition, in Plaintiff's Amended Complaint, Plaintiff now attempts to name Mr. Flentje as well as Special Master Turkel as defendants in their individual capacities. *See, e.g.*, Am. Compl. ¶ 14 ("[Interim Special Master] Flentje . . . abused his authority in his individual capacity by denying Plaintiff's Claim to victim compensation."); *id.* ¶ 17 ("ISM Flentje and SM Turkel, in their individual and official capacities . . ."). For the reasons stated below, such claims should be dismissed.

[2] To be eligible for benefits from the VCF, a claimant must be able to show, among other things, that he or she was present at an eligible location during a specified period of time on or shortly after September 11, 2001. *See* VCF, *Section 1: Eligibility Criteria and Deadlines*, https://www.vcf.gov/policy/eligibility-criteria-and-deadlines (effective Dec. 9, 2025) (last visited January 7, 2026). One such eligible location, the New York City Exposure Zone, "consists of the area in Manhattan that runs south of Canal Street, river to river, and from the Hudson River to the intersection of Canal Street and East Broadway, north on East Broadway to Clinton Street, and east on Clinton Street to the East River." *Id.*

Administrative Procedure Act. Plaintiff's Amended Complaint could also be read as asserting that VCF's procedures and denial of Plaintiff's claim resulted in a violation of Plaintiff's right to procedural due process, as well as her right to equal protection under the Fourteenth Amendment. Finally, Plaintiff asserts a claim against the Government under 42 U.S.C. § 1985, which prohibits conspiracies to interfere with civil rights.

Plaintiff's lawsuit should be dismissed in its entirety for several reasons. First, Plaintiff's claims should be dismissed for lack of subject matter jurisdiction because the United States has not waived sovereign immunity in connection with Plaintiff's claims. Second, the Court lacks subject matter jurisdiction because when Plaintiff filed her administrative claim with the VCF, she waived her right to bring a lawsuit in federal court in connection with her alleged injuries.

Third, Plaintiff's claims are not cognizable under the APA because the statute governing the VCF, and its determinations regarding claimants' eligibility for 9/11 benefits, expressly precludes judicial review and commits agency action to the sole discretion of the Special Master. Likewise, the APA also does not permit suits for monetary damages, and Plaintiff's lawsuit is plainly and only for such damages.

Fourth, Plaintiff fails to state a procedural due process claim because the Government has a strong interest in the proper and accurate payment of VCF benefits, and VCF provided Plaintiff with sufficient process in connection with the adjudication of her claim.

Fifth, Plaintiff fails to state an equal protection claim because Plaintiff does not have a fundamental right to 9/11 benefits, and the VCF's procedures for determining whether Plaintiff, or any claimant, is eligible for 9/11 benefits is rationally related to a legitimate government interest.

Finally, Plaintiff's section 1985 claim should be dismissed because it is barred by sovereign immunity and because Plaintiff has failed to allege a plausible claim for relief. For these reasons, and those discussed below, the Court should dismiss Plaintiff's Amended Complaint in its entirety.

## BACKGROUND

### I. Statutory Background

On September 11, New York City was attacked in what became known as the 9/11 Terror Attacks ("9/11 Attacks"). As part of the effort to provide relief to victims of the attack and their families, Congress created the VCF through the Air Transportation Safety and System Stabilization Act (the "Air Safety Act"), Pub. L. 107–42, 115 Stat. 230, § 401 (Sept. 22, 2001).[3] The VCF consolidated claims for those killed or injured in the 9/11 Attacks while limiting liability for entities, by requiring claimants, if they opted to apply for benefits from the VCF, to "waive[] the right to file a civil action (or to be a party to an action) in any Federal or State court for damages sustained as a result" of the 9/11 Attacks. Air Safety Act § 405(c)(3)(B)(i).

The Air Safety Act authorizes the Attorney General, and a designated Special Master, to issue rules governing eligibility, set the claims process, and determine compensation awards. *See* id. §§ 404(a)(1); 405(b)(1). These rules include the discretion to demarcate the areas of lower Manhattan and northern Brooklyn that would constitute the Exposure Zone, maintaining a list of eligible illnesses and conditions, as well as structuring the process by which claimants may submit their claims. *Id.* In addition, compensation awards are individually assessed and, depending on the claim submitted and the victims' certified 9/11-related illnesses, a claimant may be awarded noneconomic loss, and/or economic loss including lost earnings which are computed based on, among other things, work-life expectancy, dependents, household size, and required offsets. *See*

[3] Later amendments to the Act, among other things, extended the time during which individuals could file VCF claims.

VCF, *Calculation of Loss (Compensation)* (effective Dec. 17, 2025), www.vcf.gov/policy/calculation-loss (last visited January 7, 2026).

Along with these broad responsibilities, Congress granted the Special Master considerable discretion in connection with its ability to decide VCF claims, with its determinations "final and not subject to judicial review." Air Safety Act § 405(b)(3). To initiate the claims process, claimants must file a claim through VCF's website and include, among other things, proof of presence and certified conditions. *See* VCF, *How to File a Claim* (last visited January 7, 2026), https://www.vcf.gov/how-file-claim. Those found ineligible may appeal, but the VCF urges applicants to secure additional documentation before doing so. *See* VCF, *Appeals & Hearings* (effective Dec. 9, 2024), www.vcf.gov/policy/appeals-and-hearings (last visited January 9, 2026). Hearings may be in-person or remote, allow witnesses, and produce final, non-appealable determinations. *See id.*

## II. <u>Factual Background</u>

### A. Plaintiff's Alleged Presence in the Exposure Zone

Plaintiff alleges that she was present in the Exposure Zone on September 11. Plaintiff claims that she worked through an employment agency as a temporary employee with the Port Authority of New York and New Jersey's ("Port Authority's") law department on the 66th floor of One World Trade Center building ("1 WTC"). Am. Compl. ¶ 16. Although Plaintiff does not allege that she arrived at her office in 1 WTC On September 11, Plaintiff claims that she was within the Exposure Zone in lower Manhattan on September 11 and watched as Two World Trade Center fell just before 10:00 a.m. from the intersection of Broadway and Fulton streets *Id.* ¶ 10. Plaintiff alleges that she then began walking across the Brooklyn Bridge. *Id.*

### B. Plaintiff's VCF Claim

In 2023, Plaintiff filed a claim with the VCF, initiating the process to receive compensation for illnesses that she alleged resulted from the 9/11 Attacks. Am. Compl. ¶ 6. The VCF denied Plaintiff's claim. *See id*. In a letter dated February 9, 2023 (the "February 9 Letter"), then-Special Master Flentje explained that "after a thorough review" of Plaintiff's claim, the VCF determined that Plaintiff was "not eligible to receive compensation." ECF No. 1 ("Compl."), at 20.[4] According to the February 9 Letter, the VCF's decision was based on the following:

> The evidence does not establish that you were present at a 9/11 crash site between September 11, 2001 and May 30, 2002. To be eligible for compensation, individuals must establish that they were present at a 9/11 crash site at the time of, or in the immediate aftermath of, the September 11, 2001 terrorist-related aircraft crashes. Please see the www.vcf.gov website for the definition of "immediate aftermath" and the 9/11 crash sites as defined by the final regulations.

*Id.*

The February 9 Letter also explained that Plaintiff could appeal the VCF's denial of Plaintiff's claim, *id.*, and Plaintiff subsequently did so. The appeal panel hearing was held on October 18, 2023, wherein Plaintiff was provided an opportunity to explain the basis for her claim for benefits, including her alleged presence in the Exposure Zone on September 11. Am. Compl. ¶¶ 6–7. Plaintiff was also offered the opportunity to provide supporting documentation. Among the documentation provided by Plaintiff were affidavits from her son, daughter-in-law, and niece, testifying to her presence in the Exposure Zone on September 11. Compl. at 30–32. In June 2024, the VCF appeals panel agreed with the VCF's initial denial of Plaintiff's claim, concluding that she did not satisfy the standard for presence in the Exposure Zone. *Id.* at 45. The decision of the

---

[4] Plaintiff's original Complaint included exhibits, such as the February 9 Letter, but Plaintiff failed to re-attach them to her Amended Complaint. Plaintiff has since filed the Amended Complaint. To the extent an attachment is relevant to Plaintiff's Amended Complaint, the Government refers to the attachments in the original Complaint for reference.

panel to affirm the denial of Plaintiff's eligibility was approved by Special Master Turkel. Am. Compl. ¶¶ 6–7. Plaintiff initiated this action in March of 2025. *See* Compl.

**C. Allegations in the Instant Lawsuit**

The crux of Plaintiff's allegations is that the Government denied Plaintiff's claim for September 11 benefits. *See* Am. Compl. ¶ 15 ("ISM Flentje and SM Turkel, overstepped their individual and official capacities and authority in denying Plaintiff's Claim."); *id.* ¶ 16 (same); *id.* ¶ 18 ("ISM Flentje . . . denied Plaintiff's [c]laim by applying four methods for deducing eligibility."). In addition, the relief that Plaintiff seeks is plainly money damages related to the Government's denial of her claim: according to Plaintiff, she "seeks damages . . . for the parties that conspired to deny Plaintiff's Claim to victim compensation." *Id.* ¶ 21.

Plaintiff also appears to allege that the Government acted in an arbitrary and capricious manner. *Id.* ¶ 7 (denial of Plaintiff's claim "arbitrarily and capriciously harmed Plaintiff by denying the right to due process"), *id.* ¶ 12 (denial of Plaintiff's claim "[a]rbitrarily and capriciously deprived Plaintiff the right to due process and victim compensation"). Plaintiff alleges that the VCF's requirement that Plaintiff provide "tangible proof of presence in the Exposure Zone" in connection with the VCF's consideration of Plaintiff's claim was arbitrary and capricious because "absolute proof of presence in the Exposure Zone was an unfair and unreasonable burden." *Id.* ¶¶ 8–10.[5]

[5] Plaintiff also appears to bring a claim that the VCF's "demand[] for tangible proof of presence at the crash site or Exposure Zone" violated the Ex Post Facto Clause of the United States Constitution. Am. Compl. ¶ 9. Under the Ex Post Facto Clause, the Government may not "enact a law that punishes an act that was innocent prior to the enactment." *Hobbs v. County of Westchester*, 397 F.3d 133, 157 (2d Cir. 2005). But the Clause is inapplicable here because it applies only to criminal punishments and in civil cases "where the civil disabilities disguise criminal penalties." *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 972 (2d Cir. 1985). Plaintiff does not allege that she was subject to a criminal penalty or that she was subject to any seemingly equivalent civil disability—for example, that she had to pay anything to the Government. On the contrary, the crux of Plaintiff's complaint is that the Government did not approve Plaintiff's claim for benefits.

Plaintiff also alleges that she was denied procedural due process in connection with the Government's consideration of her claim. *Id.* ¶¶ 4–5, 9–10. Plaintiff alleges that in lieu of holding a hearing relating to Plaintiff's appeal of the VCF's denial of Plaintiff's claim, the Government conducted a "deposition" of Plaintiff. *Id.* ¶¶ 6–7, 15 (alleging an "artificial Hearing on Appeal, and depriving Plaintiff's right to due process"); *id.* ¶ 16 (alleging that the Government "conspired to substitute a deposition for a hearing on appeal"); *id.* ¶ 24 ("SM Turkel conspired to interfere with Plaintiff's . . . due process by substituting a deposition . . . for . . . Hearing on Appeal."). Plaintiff also appears to claim that her due process rights were violated when the Government delayed providing Plaintiff with its decision to uphold the VCF's denial of Plaintiff's claim. *Id.* ¶ 25. And Plaintiff argues that the Government did not provide her with due process when it "appl[ied] Calculation of Loss to Work Life Expectancy to deny Plaintiff's eligibility to victim compensation." *Id.* ¶ 15.

Plaintiff also appears to bring equal protection claims under the Fourteenth Amendment based on her age and status as a temporary worker on September 11. Plaintiff alleges that the Government denied Plaintiff's claim "according to age and prejudicial and other discriminatory factors." *Id.* ¶ 4. Plaintiff also asserts that "VCF's claim form . . . prejudicially omits temporary office workers from categories of firemen, police officers, rescue workers . . . [and] discriminated against Plaintiff as a temporary office worker to have equal access to victim compensation." *Id.* ¶ 17; *see also id.* ¶ 24 (taking issue with the VCF "[c]laim form's omission of temporary office workers as a class and category of persons killed or injured").

Finally, Plaintiff also alleges that the Government violated section 1985 based on the Government's alleged conspiracy to deny Plaintiff's claim. *Id.* ¶¶ 5, 7, 10, 14–17, 23.

**LEGAL STANDARDS**

Defendants move for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Rule 12(b)(1) governs a motion to dismiss for lack of subject matter jurisdiction. A case is properly dismissed under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Daly v. Citigroup Inc.*, 939 F.3d 415, 425 (2d Cir. 2019) (quoting *Makarova v. United States*, 201 F. 3d 110, 113 (2d Cir. 2000)). To withstand dismissal under Rule 12(b)(1), a plaintiff "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Cooke v. United States*, 918 F.3d 77, 80 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 125 (2d Cir. 2016)). While Rule 12(b)(1) requires a court to accept all material factual allegations in the complaint as true, the court may not draw "argumentative inferences favorable to the party asserting jurisdiction." *Mid-New York Env't & Sustainability Promotion Comm., Inc. v. Dragon Springs Buddhist, Inc.*, 647 F. Supp. 3d 286, 290 (S.D.N.Y. 2022) (quoting *Buday v. N.Y. Yankees P'ship*, 486 F. App'x 894, 895 (2d Cir. 2012)). Furthermore, the Court may extend its purview to consider evidence outside the pleadings. *See Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106, 121 (2d Cir. 2020) (abrogated on other grounds).

To withstand dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)). The assumption of truth, however, does not apply to "allegations that amount to mere 'legal conclusions.'" *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021) (citation omitted). While "detailed factual allegations" are not necessary, a pleading must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*,

556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). While pleadings by *pro se* plaintiffs are construed liberally, even a *pro se* plaintiff may not rely on conclusory allegations. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (holding that the plausibility standard in *Twombly* and *Iqbal* applies to *pro se* complaints, even though courts still must construe *pro se* complaints liberally).

In deciding a motion to dismiss under Rule 12(b)(6), the Court may consider documents incorporated by reference or integral to the complaint, documents capable of judicial notice, and documents "either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Halebian v. Berv*, 644 F.3d 122, n.7 (2d Cir. 2011); *see also Wickes v. Westfair Elec. Co.*, 19 Civ. 10673 (PMH), 2021 WL 217318, at *3 n.4 (S.D.N.Y. Jan. 20, 2021).

## ARGUMENT

### I. The Government Has Not Waived Sovereign Immunity

Although Plaintiff's Amended Complaint references due process, the APA, and other causes of action, Plaintiff brought the instant lawsuit to challenge—and overturn—the VCF's denial of Plaintiff's claim for September 11 benefits, and to seek money damages from the Government. Plaintiff's claims are barred by sovereign immunity.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). This immunity extends not only to the United States, but also its federal agencies and officers in their official capacities. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Further, courts have routinely held that any waiver of this immunity "must be unequivocally expressed in the statutory text," *Cooke v. United States*, 918 F.3d 77, 81 (2d Cir. 2019), and that "[a]ny ambiguities in the statutory language are to be construed in favor of immunity, *FAA v. Cooper*, 566 U.S. 284, 290 (2012).

Here, the Air Safety Act does "not waive sovereign immunity, but instead explicitly preclude[s] judicial review" of Plaintiff's claims. *Rodriguez v. United States*, No. 21 Civ. 10679 (LTS), 2022 WL 280891, at *5 n.3 (S.D.N.Y. Jan. 31, 2022) (citation and internal quotation marks omitted). Specifically, Plaintiff brings the instant action against officials of the United States to dispute her adverse VCF decision and denial of compensation. *See* Am. Compl. ¶¶ 15–16, 18, 21 (allegations referencing the Government's denial of Plaintiff's claim). But the plain language of the Air Safety Act makes clear that Congress has not waived sovereign immunity with respect to challenges to VCF determinations. *See Wewe v. Mt. Sinai Hosp.*, 518 F. Supp. 3d 643, 649 (E.D.N.Y. 2021) (Air Safety Act "make[s] clear that sovereign immunity has not been waived; thus, this court lacks subject matter jurisdiction to review plaintiff's challenges to his VCF award"). Had Congress intended to permit suits against the Special Master, Congress would not have expressly provided that the determinations of the "VCF Special Master shall be final and not subject to judicial review." Air Safety Act, § 405(b)(3). And without an explicit waiver of sovereign immunity to authorize a suit against government officials, the Court lacks jurisdiction over Plaintiff's claims against the Government. *See Wewe*, 518 F. Supp. 3d at 649.

## II. <u>Plaintiff Waived Her Right to Sue the Government Related to September 11 Benefits</u>

The Court lacks jurisdiction for the additional reason that Plaintiff has waived her right to bring a lawsuit in federal court relating to alleged damages arising from September 11 because she previously sought relief from the VCF. Congress established the VCF to consolidate claims for compensatory relief by those affected by the terror attacks, while limiting the civil liability of actors such as air carriers, aircraft manufacturers, and the City of New York. *See* Air Safety Act § 408(a); Aviation Security Act § 201(b). To do so, the VCF's statutory scheme presents a choice to potential claimants: while litigation is initially available, the Air Safety Act provides that "[u]pon

the submission of a claim [to the VCF] . . . , the claimant waives the right to file a civil action . . . in any Federal or State court for damages sustained as a result of the terrorist-related aircraft crashes of September 11, 2001." Air Safety Act § 405(c)(3)(B)(i). By the operation of this waiver provision, VCF claimants choose "to forgo litigation in favor of a faster, easier and more definite remedy." *Graybill v. City of New York*, 247 F. Supp. 2d 345, 350 (S.D.N.Y. 2002). Accordingly, the VCF allows a claimant to "seek compensation either by filing administrative claims with the [VCF] or in the traditional manner by bringing lawsuits. . . . Suing the VCF or other administrative agency processing claims is not a means of obtaining benefits." *Ewers v. Empire State Recovery Fund*, No. 19 Civ. 4599 (CM), 2019 WL 13498511, at *1 (S.D.N.Y. Aug. 7, 2019).

The Second Circuit has made clear that the Air Safety Act's waiver provision is "unambiguous" and "plainly requires litigants to choose between risk-free compensation and civil litigation." *Virgilio v. City of New York*, 407 F.3d 105, 112–13 (2d Cir. 2005). In *Virgilio*, the Second Circuit affirmed the district court's dismissal of claims for damages against the defendant because the plaintiffs already made submissions to the VCF, thereby waiving their right to a civil action for damages arising out of the 9/11 Attacks. *See id.* at 112. By pursuing their claims through the VCF, the plaintiffs made their "election of remedies" offered by the Air Safety Act and were barred from pursuing compensatory damages in civil litigation. *Id.*; *see also Watson v. UAL Corp.*, No. 24 Civ. 6967 (LTS), 2025 WL 2391483, at *7 (S.D.N.Y. Aug. 18, 2025) ("Plaintiff filed a VCF claim. To the extent that he is dissatisfied with the administrative determination made with respect to that claim, he cannot seek judicial review of that denial in this court." (citations omitted)); *In re Sept. 11th Litig.*, No. 21 Mc. 97 (AKH), 2007 WL 1965559, at *1 (S.D.N.Y. July 5, 2007) ("Those who applied to the [VCF] gave up their right to bring claims in this Court.").

Here, the Court similarly lacks jurisdiction over Plaintiff's claims because she has waived her right to file suit in connection with injuries that allegedly resulted from the 9/11 Attacks. Plaintiff seeks compensatory damages for injuries allegedly resulting from the 9/11 Attacks, but by previously submitting a claim to the VCF, Plaintiff waived the "right to bring any claim for damages" in federal court for any such alleged harm. *Watson v. O'Brien*, No. 23 Civ. 8958 (LTS), 2023 WL 8236990, at *4 (S.D.N.Y. Nov. 27, 2023).

The Amended Complaint concedes that Plaintiff signed a waiver provision when she applied for VCF benefits, qualifying only that Plaintiff did so "in objection and in protest to such [w]aiver demand." Am. Compl. ¶ 19. But Plaintiff's post-hac justification does not overcome the fact that she applied for VCF benefits and, in fact, waived her right to bring a lawsuit: "eligibility for compensation from the Fund is conditioned upon a waiver by claimants of the right to file any civil action." *Schneider v. Feinberg*, 345 F.3d 135, 139 (2d Cir. 2003) (internal citation marks omitted). Plaintiff cannot circumvent the remedial structure set up by the Air Safety Act and pursue compensatory damages through both an application to the VCF and now, civil litigation.

Nor does the VCF's *denial* of Plaintiff's benefits impact Plaintiff's waiver. By pursuing relief through the VCF, an individual "has waived [her] right to file most types of lawsuits for [her] 9/11-related injuries, even if the VCF denied [her] claim." *Ewers*, 2019 WL 13498511, at *1. Here, is it no matter that the VCF denied Plaintiff's claim. Plaintiff has still waived her right to pursue relief in federal court for any damages for any injuries or harm resulting from her alleged injuries, and the Court should therefore dismiss Plaintiff's claims.[6]

[6] To be sure, Plaintiff also brings claims under the APA, due process, equal protection, and section 1985. But all of these claims are in essence seeking the same thing—money damages—*i.e.*, the Government's payment of September 11 benefits, based on Plaintiff's alleged injuries arising from September 11. *See* Am. Compl. ¶¶ 21, 27.

## III. Plaintiff's APA Claims Cannot Proceed

Plaintiff alleges in her Amended Complaint that the Government's denial of Plaintiff's claim for September 11 benefits was arbitrary and capricious and therefore violated the APA. *E.g.*, Am. Compl. ¶¶ 7, 12. Plaintiff also alleges that, in addition to the denial itself, the VCF's demand that Plaintiff provide "tangible proof of presence . . . in the Exposure Zone" in connection with the VCF's consideration of Plaintiff's claim was arbitrary and capricious because "absolute proof of presence in the Exposure Zone was an unfair and unreasonable burden." *Id.* ¶¶ 8–10.

Plaintiff's APA claims should be dismissed for several reasons. First, the Air Safety Act expressly precludes judicial review and commits agency action to the sole discretion of the Special Master. Second, Plaintiff only seeks compensatory damages, but the APA does not allow for the recovery of monetary relief.

### A. Agency Action is Not Subject to Judicial Review

Under 5 U.S.C. §701(a) of the APA, "judicial review is expressly foreclosed where '(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law.'" *Vela-Estrada v. Lynch*, 817 F.3d 69, 71 (2d Cir. 2016); *see also Lunney v. United States*, 319 F.3d 550, 558 (2d Cir. 2003). The Court lacks jurisdiction to decide Plaintiff's APA claims because both exceptions to judicial review under the APA apply here.

#### i. The Air Safety Act Precludes Judicial Review

Plaintiff's APA challenge to her denial of benefits cannot proceed because the Air Safety Act directly precludes judicial review. Although courts begin "with the strong presumption that Congress intends judicial review of administrative action," judicial review may be precluded where there is "clear and convincing evidence of a contrary legislative intent." *Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 670, 671 (1986). In the context of APA claims, judicial

review is foreclosed by statute when there is a "specific congressional intent to preclude judicial review that is 'fairly discernible' in the detail of the legislative scheme." *Id.* at 673; (quoting *Block v. Community Nutrition Institute*, 467 U.S. 340, 351, (1984)); *see also Yale New Haven Hosp. v. Becerra*, 56 F.4th 9, 17 (2d Cir. 2022) (consistent emphasis of the caselaw applying the presumption has been that the court must find "clear and convincing evidence" of "congressional intent to preclude judicial review").

Plaintiff asks this Court to review an adverse VCF decision under the APA. *See generally* Am. Compl. But judicial review is "expressly foreclosed" under the Air Safety Act. *Vela-Estrada*, 817 F.3d at 71. The Act provides that the Special Master's determinations over claims "shall be final and *not subject to judicial review*." Air Safety Act, § 405(b)(3) (emphasis added). Congress' intent is "clear and convincing" that VCF claim determinations are precluded from a judicial review. *Bowen*, 476 U.S. 667 at 671.

**ii. Administrative Action is Committed to Agency Discretion by Law**

The Act also commits administrative action over the VCF to the Special Master's discretion. *See* Air Safety Act, § 405(b)(3). Administrative action is committed to agency discretion "where the governing law is 'drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Vela-Estrada v. Lynch*, 817 F.3d 69, 71 (2d Cir. 2016) (quoting *Heckler v. Chaney,* 470 U.S. 821, 830 (1985)).

In *Schneider*, the Second Circuit addressed what aspects of the VCF's regulatory structure and claims process are committed to the VCF's discretion. The Second Circuit proceeded to analyze whether the Special Master's *interpretive regulations* were arbitrary and capricious. *See Schneider*, 345 F.3d at 145–48. Although the Second Circuit undertook an arbitrary and capricious analysis with respect to the VCF's interpretive regulations, the court ruled that the VCF's standard

for the calculation of losses for a certain class of claimants was *not* subject to review under the APA because it was committed to the agency's discretion. *Id.* at 148. According to the court, the Special Master's calculation of losses was committed to agency discretion because "there is no law to apply because no standard of review—other than the APA's 'arbitrary and capricious' standard itself—governs." *Id.* at 148–49. The Circuit explained that the Air Safety Act "does not guide or limit the Special Master's discretion on this point: it expressly allows the Attorney General and the Special Master to adopt all substantive and procedural regulations necessary to resolve claims, and places the resolution of claims beyond the reach of judicial review." *Id.* at 149.

Here, all of the conduct that Plaintiff alleges violates the APA is committed to the VCF's discretion. Plaintiff challenges the denial of her claim and the alleged standard of proof that VCF requires in connection with its claim determination process. Plaintiff does not challenge any interpretive regulations that VCF promulgated. As the Second Circuit explained in *Schneider*, the Air Safety Act "does not guide or limit" VCF's ability to "adopt all substantive and procedural regulations necessary to resolve claims"—for example, VCF's standard of proof. *Id*; *see also Colaio v. Feinberg*, 262 F. Supp. 2d 273, 297 (S.D.N.Y. 2003), *aff'd*, 345 F.3d 135 (2d Cir. 2003), ("[U]nder the [Air Safety] Act's delegation of authority, the defendants had wide discretion to establish substantive evidentiary burdens by which claimants would satisfy their entitlement to compensation from public funds."). And the Air Safety Act "places the resolution of claims beyond the reach of judicial review." *Schneider*, 345 F.3d at 149. Without a meaningful standard of review—or any standard of review—the decisions of the Special Master over Plaintiff's claim are beyond the scope of judicial review under the APA and must therefore be dismissed for lack of jurisdiction. *See also Lunney*, 319 F.3d at 559 n.5 (the "arbitrary and capricious standard . . . cannot

be sufficient by itself to provide the requisite 'meaningful standard' for courts to apply in evaluating the legality of agency action").

**B. The APA Does Not Allow for Suits for Monetary Damages**

Plaintiff's APA claims cannot proceed for the additional reason that the APA does not permit suits for monetary damages. The APA's waiver of sovereign immunity is limited to claims "seeking relief *other than money damages*," 5 U.S.C. § 702 (emphasis added). The APA waives this immunity for suits for other forms of relief, "such as declaratory and injunctive relief, but it does not waive sovereign immunity for money-damages claims." *Larson v. United States*, No. 16 Civ. 245 (VEC), 2016 WL 7471338, at *7 (S.D.N.Y. Dec. 28, 2016), *aff'd*, 888 F.3d 578 (2d Cir. 2018). Here, Plaintiff only seeks monetary damages. Am. Compl. ¶¶ 21, 27. Because the compensatory relief that Plaintiff desires "falls outside the scope of the APA" and is therefore not properly before this Court, her claims, to the extent they are brought pursuant to the APA, must be dismissed. *Ward v. Brown*, 22 F.3d 516, 520 (2d Cir. 1994).

## IV. <u>Plaintiff's Due Process Claim Should Be Dismissed</u>

Plaintiff also brings procedural due process claims in her Amended Complaint. *See* Am. Compl. ¶¶ 7, 10, 15–16, 24. Plaintiff alleges generally that she was denied procedural due process in connection with the Government's consideration of her claim. *Id.* ¶¶ 4–5, 9–10. Plaintiff also alleges that in lieu of holding a hearing relating to Plaintiff's appeal of the VCF's denial of Plaintiff's claim, the Government conducted a "deposition" of Plaintiff. *Id.* ¶¶ 6–7, 15–16, 24. Plaintiff also asserts that the Government did not provide her with due process when it "appl[ied] Calculation of Loss to Work Life Expectancy to deny Plaintiff's eligibility to victim compensation." *Id.* ¶ 15. Plaintiff's due process claims should be dismissed.

The framework for determining whether a particular administrative procedure provides adequate process is established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). In *Mathews*, the Court identified a balancing test which considers the following factors: (1) the private interest affected by the official action; (2) the government interest, including the function involved and the fiscal and administrative burdens that substitute or additional procedural requirements would entail; and (3) the risk of an erroneous deprivation and the benefit of alternative or additional safeguards. *See id*. at 335.

Plaintiff's procedural due process claim should be dismissed. The second *Mathews* factor weighs against a due process claim. The Government has a strong interest in the proper and accurate payment of VCF benefits. In addition, the third factor—risk of erroneous deprivation—also militates against a due process claim, as the Amended Complaint concedes that Plaintiff received ample process in connection with her VCF claim. For example, Plaintiff alleges, or the documents attached to Plaintiff's original Complaint indicate, among other things, that VCF undertook a "thorough" review of Plaintiff's claim, Plaintiff had the opportunity to appeal the denial of her claim and submit additional documentation in support of her claim, *see* Compl. at 20, Plaintiff submitted affidavits from family members in support of her claim, *id.* at 30–33, VCF provided Plaintiff with a hearing in connection with Plaintiff's appeal, *see* Am. Compl. ¶ 15, and VCF "re-evaluated" Plaintiff's claim in connection with plaintiff's appeal, *see* Compl. at 45. In sum, the Amended Complaint asserts only conclusory allegations that Plaintiff failed to receive due process and instead confirms that VCF provided Plaintiff with due process in connection with her claim. *Cf. DeMasi v. Benefico*, 567 F. Supp. 2d 449, 456 (S.D.N.Y. 2008) (holding plaintiff was afforded due process because he received adequate notice of the reason his benefits were terminated and was given an opportunity to provide evidence to the contrary).

## V. **Plaintiff's Equal Protection Claim Should Be Dismissed**

Plaintiff also appears to bring an equal protection claim in her Amended Complaint under the Fourteenth Amendment based on her age and status as a temporary worker. Plaintiff alleges that the Government denied Plaintiff's claim "according to age and other prejudicial and discriminatory factors." Am. Compl. ¶ 4. Plaintiff also asserts that "VCF's claim form . . . prejudicially omits temporary office workers from categories of firemen, police officers, rescue workers . . . [and] discriminated against Plaintiff as a temporary office worker to have equal access to victim compensation." *Id.* ¶ 17; *see also id.* ¶ 24 (taking issue with the VCF "[c]laim [f]orm's omission of temporary office workers as a class and category of persons killed or injured").

Plaintiff's equal protection claim should be dismissed. In *Colaio*, the court analyzed whether VCF's guidelines with respect to claimants who had annual incomes above a certain threshold violated the plaintiffs' equal protection rights. *Colaio*, 262 F. Supp. 2d at 300. The Court explained that the Special Master's methodology of presumptive awards was to be reviewed according to the "rational basis" standard rather than the "strict scrutiny" standard "applicable to cases involving fundamental rights or suspect classifications." *Id.* According to the court, the "rational basis" standard applied because "[p]otential fund claimants enjoy no fundamental right to an award of compensation from the September 11th Victim Compensation Fund," and "[a] noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status." *Id.* (quoting *Weinberger v. Salfi,* 422 U.S. 749, 772 (1975); internal quotation marks omitted). The court explained further that under the "rational basis" standard, "the Special Master's methodology are presumed constitutional, and need only be rationally related to a legitimate governmental interest." *Id.* (citing *Weinberger*, 422 U.S. at 772). Rational basis review is "highly deferential," and "[i]t presumes that a law is constitutional, and the burden is on the challenger to

negative every conceivable basis which might support the law." *Lipsman v. Cortes-Vazquez*, No. 21 Civ. 4631 (JMF), 2021 WL 5827129, at *2 (S.D.N.Y. Dec. 7, 2021) (citations and internal quotation marks omitted).

Here, Plaintiff's equal protection claims should be dismissed. Neither temporary workers, nor age, are suspect classes for constitutional purposes—accordingly, VCF's alleged polices need only be "rationally related to a legitimate governmental interest." *Colaio*, 262 F. Supp. 2d at 300. Further, just as in *Colaio*, Plaintiff "enjoy[s] no fundamental right to an award of compensation" from the VCF. *Id.* And for the reasons stated above, the VCF's procedures for determining whether Plaintiff, or any claimant, is eligible for September 11 benefits is rationally related to a legitimate government interest—namely, the proper and accurate payment of VCF benefits.

## VI. Plaintiff's Civil Rights Act Claim Should Be Dismissed

Plaintiff also appears to bring a claim under section 1985 of the Civil Rights Act against the Government. But Plaintiff's section 1985 claim, like her other claims, is barred by sovereign immunity. The United States "has not waived its sovereign immunity for claims under Sections 1981 to 1986 of Title 42." *Jones v. Nat'l Commc'n & Surveillance Networks*, 409 F. Supp. 2d 456, 466 (S.D.N.Y. 2006). Accordingly, courts have routinely dismissed claims against the federal government for violations of section 1985 for lack of subject matter jurisdiction. *See, e.g.*, *McIntosh v. United States*, No. 15 Civ 2442 (KMK), 2018 WL 1275119, at *9 (S.D.N.Y. Mar. 7, 2018) (dismissing Section 1985 and 1986 claims on sovereign immunity grounds).

Plaintiff has also failed to state a claim under section 1985 against the Government. As to the agency officials who Plaintiff has sued, Plaintiff has failed to allege sufficient facts to state a claim of conspiracy in violation of 42 U.S.C. § 1985(3). As an initial matter, Plaintiff fails to allege the existence of a conspiracy. To allege a conspiracy sufficient to sustain a section 1985 claim, "the

complaint must contain specific factual allegations. A complaint consisting of nothing more than conclusory or vague allegations of conspiracy is insufficient to survive a motion to dismiss." *Friends of Falun Gong v. Pac. Cultural Enterprise, Inc.*, 288 F. Supp. 2d 273, 279 (E.D.N.Y. 2003), *aff'd* 109 Fed. App'x 442 (2d Cir. 2004) (citations and internal quotation marks omitted)..

Here, the Amended Complaint "does not include any facts that could support an inference of a conspiracy among the various defendants." *Id.* Instead, Plaintiff simply states conclusory allegations—for example, that "ISM Flentje . . . and SM Turkel . . . conspired to arbitrarily and capriciously deprive Plaintiff's right to due process which creates an action under 42 U.S.C. § 1985." *Id.* ¶ 12. These barebones allegations are insufficient to sustain a section 1985 claim. *See Bhatia v. Yale Sch. Of Med.*, 347 F. App'x 663, 665 (2d Cir. 2009) (holding that a *pro se* plaintiff's "claims of a conspiracy to violate his civil rights were vague and conclusory, and insufficient to state a plausible claim under § 1985").

## VII. <u>Plaintiff's Claims Against Interim Special Master Flentje and Special Master Turkel in Their Individual Capacities Should Be Dismissed</u>

As the Government previously explained (*see* ECF No. 6, at 1 n.1), Plaintiff named as a defendant in this lawsuit former VCF Interim Special Master August E. Flentje in his official capacity. However, pursuant to Federal Rule of Civil Procedure 25(d), Mr. Flentje should be removed from the caption of the case in his official capacity because the current VCF Special Master, Allison Turkel, is a named defendant. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

In addition, Plaintiff's claims against former Interim Special Master Flentje and Special Master Turkel in their individual capacities should be dismissed.[7] *See, e.g.*, Am. Compl. ¶ 14 ("[Interim Special Master] Flentje . . . abused his authority in his individual capacity by denying Plaintiff's Claim to victim compensation."); *id.* ¶ 17 ("ISM Flentje and SM Turkel, in their individual and official capacities . . ."). All of Plaintiff's allegations against Mr. Flentje and Ms. Turkel relate to their work in their official capacities as the officials in charge of the VCF, and their consideration of Plaintiff's claim. *See id.* Accordingly, Plaintiff's lawsuit against them in their personal capacity is "futile." *See, e.g.*, *Burgin v. Cash*, No. 15 Civ. 201, 2018 WL 6803763, at *2 (W.D.N.Y. Dec. 27, 2018) (declining to permit claims against defendant in her personal capacity because the "only references to [the defendant] in the proposed third amended complaint consist of allegations concerning" her work as a superintendent of public schools, and the core of the plaintiff's allegations remained that "the institution of the Board of Education, made certain promises and did not follow through").

Plaintiff's claims against Interim Special Master Flentje and Special Master Turkel in their individual capacities would be futile for the additional reason that Plaintiff cannot state an APA or constitutional claim against them in their individual capacities. To the extent Plaintiff seeks to bring APA claims against Interim Special Master Flentje and Special Master Turkel in their individual capacities, they must be dismissed because the APA does not provide a cause of action against private individuals. *See Chounlamontry v. Shortall*, 784 F. Supp. 3d 517, 529 (D. Conn. 2024), *report and recommendation adopted* (Apr. 30, 2025) ("[T]he APA only provides a 'limited cause of action for parties adversely affected by *agency action*.' Because the APA does not provide

[7] This Office does not currently represent Interim Special Master Flentje and Special Master Turkel in their individual capacities—only in their official capacities—and the Office is not aware that either were served personally with Plaintiff's Amended Complaint. However, for efficiency, the Office is raising these issues with the Court in the present motion.

a cause of action against judges, such as Judge Shortall, or private individuals, such as Moskowitz, the Complaint fails to state a cause of action under the APA." (quoting *Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006); emphasis in original); *see also Munn v. U.S. Dep't of Lab.*, No. 16 Civ. 151 (LG) (RHW), 2017 WL 627433, at *5 (S.D. Miss. Feb. 15, 2017) ("[T]he APA does not provide for individual-capacity claims." (citation and internal quotation marks omitted)), *aff'd sub nom. Munn v. U.S. Dep't of Lab.*, 714 F. App'x 387 (5th Cir. 2018).

To the extent Plaintiff seeks to bring constitutional claims against Interim Special Master Flentje and Special Master Turkel in their individual capacities—for example, under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), which Plaintiff does not cite—those claims would also be subject to dismissal because there is a "meaningful difference" between Plaintiff's allegations in the instant lawsuit and the "three cases—*Bivens*, *Davis*, and *Carlson*—[which] represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017); *see also, e.g.*, *Martinez v. D'Agata*, No. 16 CV 44 (VB), 2019 WL 6895436, at *7 (S.D.N.Y. Dec. 18, 2019) (discussing "meaningful difference" from three narrow cases that are cognizable under *Bivens*).

Accordingly, Plaintiff's claims against former Interim Special Master Flentje and Special Master Turkel in their individual capacities should be dismissed.

## CONCLUSION

For all of these reasons, the Court should dismiss the Amended Complaint.

Dated: January 9, 2026
New York, New York

Respectfully submitted,

JAY CLAYTON
United States Attorney
Southern District of New York

By: *_/s/ Adam Gitlin_*

ADAM GITLIN
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2734
E-mail: Adam.Gitlin@usdoj.gov

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies that excluding the caption, table of authorities, signature block, and this certification, this memorandum contains 7307 words calculated using Microsoft Word, which complies with Local Civil Rule 7.1(c).

*/s/ Adam Gitlin*
Assistant United States Attorney