Linda A. Setlech, 305 89th St., #D5, Brooklyn, NY 11209 347-633-5075 CASE 25-CV-02581 (ALC) (OTW)

RECEIVED
SDNY PRO SE OFFICE
2026 FEB 13 AM 10: 14

Pro Se Intake Unit
U.S. District Court, Southern District of New York
500 Pearl Street-Room 250
New York, NY 10007

LINDA A. SETLECH.

Plaintiff,

-against-

August E. Flentje, Interim Special Master, Allison L. Turkel, Special Master, in their official and individual capacities as Administrators of the SEPTEMBER 11th VICTIM COMPENSATION FUND, a federal agency of the U.S. Department of Justice, and U.S. Attorney General Pamela J. Bondi, Department of Justice,

Defendants.

Case No. 25-CV-2581
(A.L. Carter, Jr.) (O.T. Wang)

TO: HON. A. L. CARTER, JR.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

TO: JAY CLAYTON, United States Attorney
for the Southern District of New York
86 Chambers Street, 3rd Floor
New York, N.Y. 10007
212-637-2734
Email adam.gitlin@usdoj.gov

ADAM GITLIN, Assistant United States Attorney
Of Counsel
for the Southern District of New York
86 Chambers Street, 3rd Floor
New York, N.Y. 10007
212-637-2734
Email adam.gitlin@usdoj.gov

## I. INTRODUCTION

On 18 September 1787, at Philadelphia's Independence Hall, Mrs. Elizabeth Willing Powel asked Dr. Benjamin Franklin a question: "Well, Doctor," she began, "what have we got—a Republic or a monarchy?" Franklin answered, "A Republic, if you can keep it." [1]

On January 11, 2026, New York City law firm Barasch & McGarry advertised that billions of dollars remain unclaimed from the appropriated sum of $10 Billion for victims and survivors of 9/11 at World Trade Center ("WTC"), New York, NY; Pentagon, Arlington, VA; and Shanksville, PA, with $90,000 for asthma, $340,000 for skin cancer, but queried, "Why have so few people claimed funds?"

Short answer: Most Claims are denied.

Long answer: H.R. 2926, The Air Transportation Safety and System Stabilization Act of 2001 ("Act"), Title I: No. 107-42, 115 Stat. 230 (2001) (codified at 49 U.S.C. § 40101). Title IV, captioned "Victim Compensation," created the September 11th Victim Compensation Fund of 2001 ("Fund") to provide compensation to any individual (or relatives of a deceased individual) who was physically injured or killed as a result of the terrorists-related aircraft crashes of September 11, 2001, but if victims or survivors pursued litigation, the amounts they potentially may recover are limited by Sec. 408 to the insurance coverage of airlines, aircraft manufacturers, airport sponsors, or persons with a

---

[1] Faria, Miguel A., 2/10/2025; Our Government: A Constitutional Republic https://www.realclearhistory.com/authors/miguel_a_faria/

real estate interest in the World Trade Center ("WTC"). Thus, the Act's primary purpose as set forth in Title I. Aviation Disaster Relief is to stabilize the airline industry—not the life or property of individuals as victims and survivors from acts of terrorism on 9/11 as statutorily provided by Title IV.

## II. BACKGROUND

Plaintiff opposes Defendant's motion to dismiss Plaintiff's Amended Complaint. On 9/11, Plaintiff voted in New York primary which delayed the 9:00 a.m. arrival as a temporary legal secretary for Port Authority of NY&NJ ("PA"), 1WTC, 66th Floor, Law Department, from April 17, 2000, until termination in mid-October 2001 due to illness, without unemployment compensation and with adverse circumstances: L/T eviction proceeding in 2002, 8 years lost wages, 4 health conditions certified as 9/11-related, debt, anticipated bankruptcy and relocation.

After 2 WTC collapsed from UA Flight #175 crash, Plaintiff interacted with an unknown Black man on the Brooklyn Bridge who stopped his climb over the wrought iron fence to ask, "Is this safe?" "We don't have any choice." He let go of the fence and disappeared before Plaintiff received his name and contact information.

Plaintiff had no prior interactions who could provide *Proof of Presence* in the Exposure Zone at Broadway and Fulton Street after AA Flight # 11 crashed into 1WTC floors 93-99 at 8:46 a.m. By 4:00 p.m. via telephone, PA's Human Resource manager confirmed Plaintiff's status. Plaintiff later learned a third plane crashed in Shanksville, PA and 1WTC had collapsed. The following

weeks Plaintiff was reassigned to PA's satellite office in Newark, NJ and drove past Fresh Kills Landfill of 911 debris.

Interim Special Master Flentje denied Plaintiff's Claim for lack of Proof of Presence at the crash site or exposure zone, without identifying what constituted as *Proof of Presence* for eligibility to victim compensation. 9/11 was the second act of terrorism at WTC and sufficient time existed between February 26, 1993 and September 11, 2001 to provide future Claimants with instructions for Proof of Presence as eligibility for victim compensation, although Title IV of the Act was not statutorily in effect until September 22, 2001, which rendered Defendant's demand for 9/11 Proof of Presence at a crime scene *Ex Post Facto*[2] in violation of U.S. Constitution, Article I, § 9, for legislating acts retroactively to control future conduct. Therefore, Defendant's demand for proof of presence is null and void and denial of claim should be reversed. The filing of Plaintiff's Claim #0202283 was delayed until after diagnosis of asthma, GERD, melanoma and other skin cancers. If Plaintiff had known on 9/11 what criteria Defendant would accept to satisfy *Proof of Presence* at the crime scene or exposure zone, Plaintiff would have approached pedestrians on the Street or the Bridge to request sharing contact information for compliance, rather than be subjected to denials and

---

[2] *Article I, § 9, U.S. Constitution,*

dismissals—unless that was not the intent. Since WTC collapsed, there was no reason to return to the crime crash site or exposure zone.

Plaintiff served Subpoenas on PA and MTA to quash Defendant's denials based on lack of Proof of Presence. PA accurately responded with commencement date of temporary assignment as 4/17/2000, but employment records prior to 9/11 were destroyed in WTC collapse and PA could not confirm Plaintiff's presence in the Exposure Zone, which Special Masters knew or should have known, but chose to act arbitrarily, capriciously and with prejudice to deny Claim and hearing on appeal. MTA failed to respond to subpoena for Plaintiff's metro card history on 9/11 and requires Motion to Compel.

Other prejudicial, discriminatory, arbitrary, and capricious acts occurred when PA omitted its identity as co-host temporary employer on Plaintiff's Identification Badge to access 1WTC and substituted Law Department therefor, and when Defendant omitted temporary office workers from the Claim Form's categories of employment status.

In theory, Title IV, Section 403, states that the primary purpose of the Fund is "to provide compensation to any individual (or relatives of a deceased individual) who was physically injured or killed…". In practice, brutal eligibility requirements to victim compensation, such as absurd Proof of Presence at the crime crash site or Exposure Zone from 9/11/01[3] to 5/30/02, with toxic air

---

[3] Environmental Protection Agency, Christine Todd Whitman, Administrator; Apologizes for saying the air around Ground Zero was Safe to Breathe; https://911families.org › former-epa-head-admits-she-was-wrong-to-tell-new-yorkers-post-911-air-was-safe

conditions designated by artificial “Maginot” lines contrary to reports[4] that proved poor air quality was of a longer duration, failed to influence decisions to approve Claim for victim compensation by Interim Special Master Flentje and hearing on appeal by Special Master Turkel.






23.7miles from 305 89th St. Brooklyn, NY11209, to Fresh Kills Landfill/Great Kills Park, Staten Island

In contrast, below is an excerpt on victim compensation by Associate Professor Jeremy R. Levine who authored the September 18, 2024 Report, “Inequality in Crime Victim Compensation”, from University of Michigan’s Center for Racial Justice and Poverty Solutions:

> “Crime victim compensation is a public benefit intended to cover financial costs associated with crime. Victim compensation benefits can be used to cover medical bills, counseling, relocation, funerals, crime scene cleanup and other related expenses after insurance and welfare benefits are accounted for. Such programs are managed by states with up to 75% of program costs paid for by a federal subsidy.
>
> Key findings show police discretion plays a pivotal role in determining victim eligibility, with subjective criteria, such as perceived misconduct or failure to cooperate, leading to biased outcomes.
>
> Black and Indigenous victims, especially Black men, are significantly less likely to receive compensation than victims from other social groups. In addition, women survivors of domestic

---

[4] New York Post, 9/11 Air Probe Stall ‘Stinks’, 1/30/25, p, 27. (*footnotes continued, p. 5*)

violence, sexual assault, stalking and human trafficking are less likely than victims of other crimes to be compensated.

'These eligibility requirements were created to incentivize victim cooperation with law enforcement," Levine said. 'But in the end, all they accomplish is punishing victims after their victimization while also failing to work as an incentive to cooperate.' Instead, as this report shows, police involvement in victim compensation decisions produces significant inequality – and with it, a challenge to racial and gender justice.

As governments consider legislative amendments and rule changes to victim compensation law, these results point to several avenues for reform. The report calls for urgent reforms, including:

removing racialized and gendered barriers to compensation, such as cooperation with law enforcement and misconduct criteria, expanding alternative procedures for proving victim status, and using medical or social service documentation rather than relying on police assessments.

The analysis, based on data from 18 states, points to ongoing legislative efforts in states like Illinois and New York that have successfully reformed their victim compensation criteria, significantly **reducing denials** (emphasis added) and prompting greater equity."[5]; [6]

Policymakers across the country have grown skeptical of these eligibility criteria and have started to consider eliminating unfair and burdensome restrictions.

## III. ARGUMENT

### 1. Special Masters as Administrators of Are Not Immune From Accountability for Denying Victim Compensation Based on *Ex Post Facto* laws, Prejudice and Discrimination.

Title IV of the Act explicitly established the Fund to compensate victims

---

[5] Levine, Jeremy R., Report; Endnote 2: "…some states do not count victims of police violence as crime victims, due to qualified immunity."

[6] Levine, Jeremy R., Report; Endnote 4: Meisner, J. (2021, July 9). Chicago Sun-Times. "Illinois created a program to compensate crime victims. Nearly 50 years later, it's failing." https://chicago.suntimes.com/2021/7/9/22566035/illinois-crime-victim-compensation-program-delays-failure-delays; Illinois Has a Program to Compensate Victims of Violent Crimes. *Few Applicants Receive Funds.*

and survivors from acts of terrorism, but the scope of Congress' implicit grant of authority to Special Masters of the Fund is unprecedented, tacitly permitting Special Masters[7] as administrators to regulate itself as sole decisionmakers, responsible for promulgating rules and regulations which conflict and compete with existing courts and laws, such as U.S. Court of Federal Claims and the Federal Tort Claims Act ("FTCA"). Government Defendant did not dictate the Agency's actions, but left actions to the discretion of Special Masters who must be held responsible for arbitrary and capricious conduct manifestly contrary to the statute when they denied Plaintiff's Claim and hearing on appeal to victim compensation from acts of terrorism[8], as described more fully below.

The cited article reviews the relationship between Government and accountability of independent contractors. Special Masters as political appointees serve as contracted employees of the Government with derivative-sovereign-immunity. Although the Special Masters' contractual relationship with government rises to the level of servant in agency terms as determined in

---

[7] Sablosky Elengold, Kate & D. Glater, Jonathan; "*The Sovereign Shield,*" 73 Stan. L. Rev. (2021), p.9

[8] Sablosky Elengold, Kate & Glater, Jonathan D.; "*The Sovereign Shield,*" Id., p.984., n.69; See *United States v. Mead Corp.*, 533 U.S. 218, 227-32 (2001) (recognizing the difference between agency actions taken to fill a gap that Congress explicitly or implicitly left the agency to fill, which are entitled to *Chevron* deference [*Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S., 837, 843-44 (1984)];

... federal sovereign immunity has been "described as a 'ghost[] . . . haunt[ing] the early **Republic,'** " but also because federal sovereign immunity is the least explored form of sovereign immunity and "one of 'the greatest mysteries' in American law." *Id.* at 776 (second and third alterations in original) (first quoting Christine A. Desan, *The Constitutional Commitment to Legislative Adjudication in the Early American Tradition*, 111 HARV. L. REV. 1381, 1383 (1998); and then quoting Guy I. Seidman, *The Origins of Accountability: Everything I Know About the Sovereign's Immunity, I Learned from King Henry III*, 49 ST. LOUIS U. L.J. 393, 395 (2005)), n. 69.

part by its payment structure, the Special Masters exceed their authority.

Congress designated Special Masters to administer the Fund, Act § 404(a), with compensation determinations deemed final, ..., based on prejudicial premise that Plaintiff as claimant enjoys no fundamental right to a compensation award from the Fund because allegedly a noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status. See *Colaio v. Feinberg,* 262 F.Supp.2d 273, SDNY 03 Civ. 0558.

2. <u>Conflict of Laws Create Confusion</u>

It is undisputed that the United States District Court for the Southern District of New York has exclusive jurisdiction over 9/11 lawsuits, Act § 408(b)(3), but Defendant's motion to dismiss, p. 9, disputes such claim "because the Government has not waived Sovereign Immunity" thereby asserting the federal government extended its sovereign immunity to the Fund and Special Masters by derivative sovereign immunity[9], which is not absolute.

Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680[10] allows individuals to sue the government for personal injury, death, or property damage caused by the negligent or wrongful acts of federal employees, such as Special Masters, acting within the scope of their employment, which makes the Act § 408(b)(3) erroneous and confusing by directing 9/11 claims to USDC-SDNY. The Act failed to state that a 9/11 claim for money damages is to be brought in the Court at the address noted below:

[9] Sablosky Elengold, Kate and D. Glater, Jonathan; *The Sovereign Shield,* 73 Stan. L. Rev. 969 (2021)
[10] https://www.google.com/search?sca_esv=89aaa52b873f06b6&sxsrf=ANbL-n49V1NSAR088e-mtotJDsYq0f07Ug%3A1770337557004&q=Federal+Tort+Claims+Act

**Contact the FTCA Section by U.S. Postal Service**

Federal Tort Claims Act Section
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, DC 20044

**Please address FedEx, UPS, courier, etc. deliveries to:**

Federal Tort Claims Act Section
Torts Branch, Civil Division
U.S. Department of Justice
175 N Street, NE
Washington, DC 20002

Telephone: (202) 616-4400
Fax: (202) 616-5200

FTCA functions as a waiver of Sovereign Immunity, making the U.S. liable similarly to a private individual. Plaintiff is willing to pursue this course of action if the parties cannot resolve the dispute before this Court. After months of litigation and Plaintiff's reliance upon statutory guidance of the Act[11], such innocent error has serious consequences for a Pro Se litigant.

3. Waiver Demand and Breach of Contract

Conversely, Defendant argues in Point II that Plaintiff waived her right to file a lawsuit, but a Waiver must meet the following legal standards[12] to be enforceable:

---

[11]Sablosky Elengold, Kate and Glater, Jonathan D., Id.; "The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." Morton v. Ruiz, 415 U.S. 199, 231, 94 S.Ct. 1055, 1072, 39 L.Ed.2d 270 (1974). If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight **unless they are arbitrary, capricious, or manifestly contrary to the statute,"** emphasis added.

[12] https://upcounsel.com/waiver-definition-law

- Voluntariness: The individual must agree to the waiver willingly, without coercion;
- Knowledge: The person must understand the right being waived and the consequences;
- Consideration: In contractual settings, there must usually be something of value exchanged;
- Clarity: The language of the waiver must be unambiguous and specific; and
- Public Policy Compliance: Waivers that attempt to avoid liability for gross negligence or intentional harm are typically unenforceable.

Plaintiff's Constitutional right to due process was violated when the Fund's Waiver demand was ambiguous, lacked counter-signatures, and in bad faith attempted to coerce signature for submission of Plaintiff's Claim with intent to deceive Plaintiff, a pro se litigant, that upon the signed Waiver to file a lawsuit, an award to victim compensation was guaranteed, which constitutes a plausible claim, with subject matter jurisdiction.

Plaintiff signed the Fund's Waiver in objection to, protest of, and with duress to forfeit the right to file a lawsuit, which the Fund breached by denying Plaintiff's Claim and Hearing on appeal for victim compensation from acts of terrorism as debt accrued in anticipation of such award. Defendant's denials harmed Plaintiff's reputation with a negative credit report, lack of economic resources for medical and dental attention to address facial skin cancers, periodontal issues, relocation and bankruptcy.

The Waiver lacked a counter-signature by the Special Masters to establish a contractual relationship in good faith consisting of four elements referred to above to guarantee Plaintiff a victim compensation award. Special

Masters as the Fund's Administrators are knowledgeable after 25 years of experience with the Claim process and knew or should have known that its omission of a countersignature of Waiver to file lawsuit violated Plaintiff's constitutionally protected civil rights and due process. Thus, no contractual relationship duly existed between the parties to support Plaintiff's Waiver of right to file a lawsuit, and "[A] noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status." *Weinberger v. Salfi*, 422 U.S. 749, 772 (1975). See also *Supreme Oil Co. v. Metropolitan Transp. Auth.*, 157 F.3d 148, 153 (2d Cir. 1998).

However, a contradiction exists with Plaintiff's execution of such Waiver to file lawsuit for submission of Claim, because Plaintiff's Claim and hearing on appeal were denied. Therefore, if as argued in its Motion to dismiss, Defendant affirms Plaintiff waived her right to file a lawsuit, Defendant breached the expressed or tacitly implied contractual relationship to provide for victim compensation in exchange therefor. Thus, monies can be procured from the public treasury pursuant to Title IV to Plaintiff representing an award for victim compensation without further delay due to the contractual relationship between the parties. "The Act, the regulations, and the Special Master's methodology are presumed constitutional, and need only be rationally related to a legitimate governmental interest, *Weinberger, Id.*, 422 U.S. at 772.

Due to deliberate, wanton and reckless acts by Special Masters as Government agents, servants and employees, Plaintiff was forced to waive all right, title and interest to file a lawsuit as a survivor from acts of terrorism to file

Claim # 0202283 pursuant to Title IV, and it is worth repeating, a conflict of laws exist. In *White v. US*, # 23-383C, 3/4/25, Judge Silfen denied Government's Motion to Dismiss. To establish jurisdiction, a plaintiff must allege the existence of a contract with the government. *Gould, Inc. v. United States*, 67 F.3d 925, 929-30 (Fed. Cir. 1995). In *White, Id.*, "to prove existence of a contractual relationship with the government, a plaintiff must plausibly allege four elements: (1) mutuality of intent to contract; (2) unambiguous offer and acceptance; (3) consideration; and (4) actual authority to contract. *Cincinnati v. United States,* 153 F.3d 1375, 1377 (Fed. Cir. 1998). An implied-in-fact contract has the same elements as an express contract, but is founded upon a 'meeting of minds' and 'the conduct of the parties showing in the light of the surrounding circumstances their tacit understanding,' that there is an agreement. *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003) (quoting *Baltimore & Ohio Railroad Co. v. United States*, 261 U.S. 592, 597 (1923), marks omitted)."

Plaintiff signed the Claim Form's Waiver of right to file a lawsuit in protest to and objection of the Fund's omission in bad faith of any expressed or implied intent to execute same in counterpart to guarantee Plaintiff a victim compensation award. Absent Defendant's countersignature, Defendant's Waiver is unenforceable and the lawsuit can proceed.

Plaintiff established a valid contractual relationship with Defendant, albeit, with Waiver signed in protest to and objection of, but Defendant breached the contractual relationship with denial of Claim by Interim Special

Master August E. Flentje and denial of Hearing on appeal by Special Master Allison L. Turkel.

4. Bait and Switch Tactics to Deny Hearing on Appeal.

Interim Special Master Flentje and Special Master Turkel conspired in bait and switch tactics to falsely guarantee Plaintiff a victim compensation award upon Plaintiff's execution of Waiver to file a lawsuit as a tacit contractual relationship. Plaintiff was betrayed by the Fund, the Act, and Special Masters as Administrators, when the contractual relationship between the parties was breached by Special Masters' denials of Claim and hearing on appeal. Act §§ 404(a)(2), 407.

Special Master Turkel scheduled the October 18, 2023 Hearing on Appeal of Interim Special Master Flentje's February 9, 2023 denial of Claim at: Ted Weiss Federal Building, 290 Broadway, Suite 1300, New York, NY 10007, 2:30 P.M., but substituted a deposition device therefor, as evidenced by the DRAFT transcript, heavily redacted as to contact information of persons in attendance, failed to date, sign and notarize Transcript and forward Certificate of Official Court Reporter, Form AO (03/10) with copy of tape recording to the Clerk of the Court, and failed to comply with 5 U.S. Code § 3105, Appointment of Administrative Law Judge: "Each agency shall appoint as many administrative law judges as are necessary for proceedings required to be conducted in accordance with sections 556 and 557 of this title". Such failures interfered with Plaintiff's Constitutionally protected right to procedural due process, victim compensation, and demonstrated explicit intent to harm Plaintiff

in an arbitrary and capricious manner by denials of Claim and hearing on appeal.

5. <u>The Fund's Bias and Discrimination Policies Based on Age and Employment Status.</u>

In addition to racial and gender disparities, the Fund's Claim Form omits references to Temporary employees and erroneously assumed all employees were permanent. Plaintiff's temporary employment status and age were prejudicial and discriminating factors Special Masters relied upon to selectively deny Plaintiff's Claim and hearing on appeal to victim compensation. Pursuant to 28 C.F.R. § 104.43, the Special Master's methodology for determining awards includes the following:

"Section 2: Calculation of Loss (Feb. 4, 2025)

4. Work life expectancy:

Determine a measure of the victim's expected remaining years of workforce participation using the tabulated work-life expectancies for the victim's age at the time of death or at the time the victim was unable to work, or had to reduce work, as a result of eligible condition",

in violation of Age Discrimination in Employment Act of 1967, codified at 29 U.S.C. §§ 621-634.

Plaintiff issued a subpoena on PA to confirm employment status and Presence on 9/11 to quash denial of Claim, but PA disavowed any employment relationship. In response, on August 15, 2025, Nancy Del Valle, Employee # LC00318, Payroll Accounting Specialist in the Comptroller's Payroll

Department, certified that PA "records which may have been responsive to the Subpoena, no longer exist because they have been disposed...", and ",,, any records prior to September 11, 2001 were destroyed upon the terror attack. .... The only information ... available is that the temporary position dates starting with 4/17/2000 ended 9/7/2001 as a 'Non Port Authority Assignment Completion'" which was false, because it failed to include Plaintiff's reassignment after 9/11 to PA's satellite office in Newark, NJ, where the first task was to prepare Affidavits confirming that permanent PA employees were missing and presumed dead for distribution to families to access death benefits which sums would have been offset from any compensation award, without affidavits prepared for any temporary employee. Plaintiff's temporary employment assignment ended in mid-October 2002 due to illness, without unemployment compensation and by 2023 with denials of Claim and Hearing on appeal.

## IV. CONCLUSION

Plaintiff respectfully prays this Court to deny Defendant's motion to dismiss Amended Complaint which challenges denials of Claim and hearing on appeal pursuant to Title IV of the Act. Alternatively, Plaintiff respectfully requests the Court to permit Plaintiff to pursue such action including Special Masters in their individual, official and/or personal capacities, in Federal Tort Claims Section, Washington, D.C., and for such other and further relief as to this Court deems just and proper.

Respectfully submitted,

Dated: February 13, 2026

Linda A. Setlech, Plaintiff Pro Se
305 89th St. Apt. D5
Bnrookln, NY 11209
718-745-3833 cell 347-633-5075
Email LASetlech@aol.com

TO: JAY CLAYTON, United States Attorney
for the Southern District of New York
86 Chambers Street, 3rPd Floor
New York, N.Y. 10007
212-637-2734
Email adam.gitlin@usdoj.gov

cc: ADAM GITLIN, Assistant United States Attorney
– Of Counsel –
for the Southern District of New York
86 Chambers Street, 3rd Floor
New York, N.Y. 10007
212-637-2734
Email adam.gitlin@usdoj.gov

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

NO. 25-CIV-2581 (ALC) (OTW)

---

**CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 17.1(c) of this Court, I, LINDA A. SETLECH, Plaintiff Pro Se, certify that the accompanying Brief (Memorandum of Law) In Opposition to Defendant's Motion to Dismiss Amended Complaint, which was prepared using Arial 12-point typeface, contains 10,416 words, excluding the parts of the document exempted by Rule 17.1(c), such as the caption, index: table of contents, table of authorities, the within required certification, and signature block. This Certificate was prepared in reliance on the word-count function of the word processing system (Microsoft Word) used to prepare the document.

DATED: February 13, 2026

Linda A. Setlech, Pro Se
305 89th Street, Apt. D5
Brooklyn, NY 11209
718-745-3833 Cell 347-633-5075
LASetlech@aol.com

## TABLE OF CONTENTS


| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 2-6 |
| III. | ARGUMENT | 6 |
| | 1. Special Masters as Administrators of Fund Are Not Immune From Accountability for Denying Victim Compensation Based on *Ex Post Facto* laws, Prejudice and Discrimination | 6-8 |
| | 2. Conflict of Laws Create Confusion | 8-9 |
| | 3. Waiver Demand and Breach of Contract | 9-13 |
| | 4. Bait and Switch Tactics to Deny Hearing on Appeal | 13-14 |
| | 5. The Fund's Bias and Discrimination Policies Based on Age and Employment Status | 14-15 |
| IV. | CONCLUSION | 16 |
| V. | CERTIFICATION OF WORD COUNT | |

## TABLE OF AUTHORITIES


**Page**

**CASES**

*Baltimore & Ohio Railroad Co. v. United States*,
261 U.S. 592, 597 (1923), marks omitted........................................ 12

*Colaio v. Feinberg*,
262 F.Supp.2d 273, SDNY 03 Civ. 0558. ........................................ 8

*Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S., 837, 843-44 (1984)........................................................ 7

*Cincinnati v. United States*,
153 F.3d 1375, 1377 (Fed. Cir. 1998)............................................... 12

*Gould, Inc. v. United States*,
67 F.3d 925, 929-30 (Fed. Cir. 1995)................................................ 12

*Hanlin v. United States*,
316 F.3d 1325, 1328 (Fed. Cir. 2003) ............................................... 12

*Supreme Oil Co. v. Metropolitan Transp. Auth.*,
157 F.3d 148, 153 (2nd Cir. 1998) .................................................... 11

*Weinberger v. Salfi*,
422 U.S. 749, 772 (1975)................................................................ 10,11

*White v. US*,
# 23-383C, 3/4/25.......................................................................... 11

**STATUTES**

Article I, § 9, U.S. Constitution.......................................................... 3, 6

28 C.F.R. § 104.43............................................................................ 14

5 U.S. Code § 3105............................................................................ 13

28 U.S.C. §§ 1346(b), 2671-2680
Federal Tort Claims Act (FTCA), ...................................................... 7-9

29 U.S.C.§§ 621-634........................................................................... 14

## TABLE OF AUTHORITIES
continued


**Page**

**STATUTES**

49 U.S.C. § 40101 .................................................................................... 1-8,13
H.R. 2926, The Air Transportation Safety and System Stabilization Act of 2001 ("Act"), Title I: No. 107-42, 115 Stat. 230 (2001); Title IV, captioned "Victim Compensation," created September 11th Victim Compensation Fund of 2001 ("Fund"); Sections 403, 404(a)(2), 407, 408 (b)(3)

**RULES AND REGULATIONS**

**OTHER**

https://911families.org › former-epa-head-admits-she-was-wrong-to-tell-new-yorkers-post-911-air-was-safe
"9/11 Air Probe Stall 'Stinks", New York Post, 1/30/25, p. 27 .............................. 4

Environmental Protection Agency, Christine Todd Whitman, Administrator; 2001-2003, Apologizes for saying the air around Ground Zero was Safe to Breathe.... 4

https://www.realclearhistory.com/authors/miguel_a_faria/
Faria, Miguel A., 2/10/2025; Our Government: A Constitutional Republic 1

https://chicago.suntimes.com/2021/7/9/22566035/
illinois-crime-victim-compensation-program-delays-failure-delays;
Levine, Jeremy R.; "Inequality in Crime Victim Compensation", 9/19/24.................... 5,6,
from University of Michigan's Center for Racial Justice and Poverty Solutions
Endnote 2; "...some states do not count victims of police violence as crime victims, due to qualified immunity." ........................................................................ 5,6
Levine, Jeremy R., Report, <u>*Id.*</u>; Endnote 4: Meisner, J. (2021, July 9) "Illinois created a program to compensate crime victims. Nearly 50 years later, it's failing." Illinois Has a Program to Compensate Victims of Violent Crimes. *Few Applicants Receive Funds.*

Sablosky Elengold, Kate & D. Glater, Jonathan; *The Sovereign Shield,* 73 Stan. L. Rev. (2021), p.992; p.984., n.69...................................................... 6-7
See *United States v. Mead Corp.*, 533 U.S. 218, 227-32 (2001) (recognizing the difference between agency actions taken to fill a gap that Congress explicitly or implicitly left the agency to fill, which are entitled to *Chevron* deference [*Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S., 837, 843-44 (1984)]; ... federal sovereign immunity has been "described as a 'ghost[] . . . haunt[ing] the early **Republic,'** " but also because federal sovereign immunity is the least explored form of sovereign immunity and "one of 'the greatest mysteries' in American law." *Id.* at 776 (second and third alterations in original) (first quoting Christine A. Desan, *The Constitutional Commitment to Legislative Adjudication in the Early American Tradition*, 111 HARV. L. REV. 1381, 1383 (1998); and then quoting Guy I. Seidman, *The Origins of Accountability: Everything I Know About the Sovereign's Immunity, I Learned from King Henry III*, 49 ST. LOUIS U. L.J. 393, 395 (2005)), n. 69