**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **LINDA SETLECH,** | |
| **Plaintiff,** | |
| **-against-** | **1:25-cv-02581 (ALC)** |
| **INTERIM SPECIAL MASTER AUGUST E. FLENTJE, SPECIAL MASTER ALLISON TURKEL, AND PAMELA J. BONDI,** | **<u>OPINION & ORDER</u>** |
| **Defendants.** | |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Linda A. Setlech ("Plaintiff"), proceeding *pro se*, brings this action for the Government's denial of Plaintiff's claims for September 11 benefits. The Court construes Plaintiff's complaint as also bringing claims for violations of the Administrative Procedure Act, violations of Plaintiff's procedural due process and equal protection rights under the Fourteenth Amendment, and a civil rights violation under 42 U.S.C. § 1985. Before the Court is a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal rule of Civil Procedure 12(b)(6) filed by Defendants Interim Special Master August E. Flentje and Special Master Allison Turkel, in their capacities as administrators of September 11th Victim Compensation Fund, an Administrative Agency of U.S. Department Of Justice, and Pamela J. Bondi[1] in her capacity as U.S. Attorney General, U.S. Department Of Justice ("Defendants"). For the reasons stated below, the motion is **GRANTED.**

## BACKGROUND

### I. Statutory Background

Following the September 11, 2001 terror attacks in New York City, known as "9/11 Attacks," Congress created the Victim Compensation Fund ("VCF") for victims and their family members. The VCF was created through the Air Transportation System and System Stabilization Act ("Air Safety Act"), Pub. L. 107–42, 115 Stat 230 (Sept. 22, 2023). To be eligible for the VCF, after submitting a claim "the claimant waives the right to file a civil action (or to be a party to an action) in any federal or state court for damages sustained as a result of the terrorist-related aircraft crashes of September 11, 2001." Air Safety Act § 405(c)(3)(B)(i). Moreover, the Act appoints the Attorney General and a designated special master to review the claims, determine eligibility, create procedures, and determine award amounts. *Id*. §§ 404-405.

The VCF sets procedures for calculating loss, such as asking "was there a demonstrable loss, can we reasonably conclude the loss was caused by a WTC-related **eligible** condition, and what makes sense in the context of this claimant and the individual circumstances of this claim?" VCF, *Calculation of Loss (Compensation)* (effective Dec. 17, 2025), www.vcf.gov/policy/calculation-loss. After reviewing the claims, if compensation is appropriate, victims can be compensated for both economic and non-economic loss based on the severity of the injury and claim type. *Id*. Once the Special Master has reviewed the claims, the Air Safety Act states that they are "final and not subject to judicial review." Air Safety Act § 405(b)(3). Potential claimants can file with the VCF online by submitting relevant documentation, such as proof of presence in the exposure zone during the 9/11 attacks and the condition of their injury. VCF, *How to File a Claim*, https://www.vcf.gov/how-file-claim. Claimants are able to appeal

---

[1] As Todd Blanche is now the acting U.S. Attorney General, the Court deems the Complaint as being brought against him in his capacity as such.

their decisions within 30 days; however "the VCF encourages [claimants] to think about other documents that may be available to show [claimants] presence." VCF, *Appeals & Hearings* (effective Dec. 9, 2024), www.vcf.gov/policy/appeals-and-hearings. During the Appeals process, claimants can have in person or remote hearings, submit additional documentation, and have witnesses. *Id*.

## II. Factual History

Plaintiff states that she was in the New York City Exposure Zone ("Exposure Zone") of the September 11, 2001, attack (referred to as "9/11") in between Broadway and Fulton Street, in her capacity as a temporary office worker employed at the Port Authority of NY&NJ ("PA"), 1 WTC, Law Dept., 66th Floor, New York, NY. *See* ECF No. 16 ¶¶ 10, 16 ("First Amended Complaint" or "FAC").[2] Plaintiff states that while in the Exposure Zone, she watched Two World Trade Center collapse at 9:59 a.m. and then walked across the Brooklyn Bridge following instructions from the NYPD. *Id.* at ¶ 10.

In 2023, after Plaintiff's diagnosis with an asthmatic condition with a chronic cough, certified as 9/11-related on April 7, 2022, Plaintiff filed for a claim with the Victim Compensation Fund ("VCF"). *Id.* at ¶¶ 6, 16. On February 9, 2023, Plaintiff's claim was denied by Interim Special Master Flentje. *Id.* at ¶ 6. In the claim eligibility letter sent to Plaintiff, the letter stated that "after a thorough review" of Plaintiff's claim, the VCF determined she was "not

[2] To be eligible for VCF benefits, Plaintiff must have been present in the Exposure Zone. The exposure zone "consists of the area in Manhattan that runs south of Canal Street, river to river, and from the Hudson River to the intersection of Canal Street and East Broadway, north on East Broadway to Clinton Street, and east on Clinton Street to the East River." Eligibility Criteria and Deadlines, https://www.vcf.gov/policy/eligibility-criteria-and-deadlines (effective Dec. 9, 2025).

eligible to receive compensation." Complaint "Compl." Ex. A at 20.[3] Specifically, the VCF provided the following in the letter:

> The evidence does not establish that you were present at a 9/11 crash site between September 11, 2001 and May 30, 2002. To be eligible for compensation, individuals must establish that they were present at a 9/11 crash site at the time of, or in the immediate aftermath of, the September 11, 2002 terrorist-related aircraft crashes. Compl. Ex. A at 20.

Within the letter, Plaintiff was given the option to appeal within 30 days of the decision. Plaintiff ultimately appealed the decision. Compl. Ex. A at 20. On October 18, 2023, the hearing was held for the appeal. FAC ¶ 6. Plaintiff submitted additional documentation to support her appeal in the form of affidavits from her son, daughter-in-law, and niece testifying that she was in the Exposure Zone on September 11. Compl. 30-32. On November 5, 2024, Plaintiff's appeal was denied by Special Master Turkel after re-evaluation of Plaintiff's claims, similarly citing Plaintiff's lack of sufficient evidence to establish her presence in the Exposure Zone. FAC at 1.

### III. Procedural History

On March 28, 2025, Plaintiff filed a complaint initiating this action. *See* ECF No. 1. Plaintiff allegations primarily arise from the Government's denial of her VCF claim for 9/11 benefits. Plaintiff further alleges that that Government acted in an arbitrary and capricious manner and that she was denied procedural due process. FAC at ¶ 12 ("arbitrarily and capriciously harmed Plaintiff by denying the right to due process"). Plaintiff further brings equal protection claims under the fourteenth amendment based on her age and status as a temporary worker on September 11. *Id.* at ¶ 4. Lastly, Plaintiff claims that the government violated §1985 based on the Government's alleged conspiracy to deny Plaintiff's claim. *Id.* ¶¶ 5, 7, 10, 14–17, 23. Plaintiff seeks damages in the amount of $1,000,000. *Id.* at ¶ 27. On August 7, 2025,

---

[3] Plaintiff did not include Exhibits attached to the Complaint in her Amended Complaint, therefore where appropriate, citations are made to the original Complaint to reference relevant documents.

Plaintiff filed an amended complaint. *See* FAC. The complaint substitutes, but does not dismiss, Attorney General Pamela J. Bondi, U.S. Department of Justice, for U.S. Attorney General Merrick B. Garland. On January 9, 2026, Defendants filed a motion to dismiss along with an accompanying memorandum of law in support of their motion. *See* ECF No. 30-31. On February 12, 2026, Plaintiff filed her memorandum of law in opposition to Defendants' motion to dismiss. *See* ECF No. 33. On March 18, 2026, Defendants filed their reply in support of their motion to dismiss. *See* ECF No. 36. The Court now considers this issue fully briefed.

## STANDARD OF REVIEW

### I. Federal Rule of Civil Procedure 12(b)(1)

In reviewing a motion to dismiss under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and internal quotation marks omitted). "[B]ut jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* Rather, "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). Courts "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [the Court] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).

### II. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual

content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, courts accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also id.* at 681. Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). In addition to the factual allegations in the complaint, the Court may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted).

### III. *Pro Se* Pleadings

"Courts must afford *pro se* plaintiffs 'special solicitude' before granting motions to dismiss or motions for summary judgment." *Quadir v. New York State Dep't of Lab.*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) (quoting *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994)). "This policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to

protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (internal quotations and modifications omitted). Therefore, courts read *pro se* filings "to raise the strongest arguments that they suggest." *Id.* at 474.

## DISCUSSION

Defendants move to dismiss Plaintiff's Amended Complaint for both lack of subject matter jurisdiction and failure to state a claim. Defendants argue the Court lacks subject matter jurisdiction two grounds: (1) because the Government has not waived sovereign immunity and (2) because Plaintiff's waived her right to sue. Defendants further argue Plaintiff's APA claims are barred from judicial review and Plaintiff fails to state a claim as to her APA claims, due process claims, equal protection claims, Civil Rights Act claims, and the individual claims against the Special Masters. The Court addresses each in turn.

### I. The Court Lacks Subject Matter Jurisdiction

#### a. The Government Defendants Have Not Waived Sovereign Immunity

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v.* Mitchell, 463 U.S. 206, 212 (1983). This sovereign immunity also extends to federal agencies and officers in their official capacities. *See FDIC v.* Meyer, 510 U.S. 471, 475 (1994). Any waiver of this sovereign immunity "must be unequivocally expressed in the statutory text." *Cooke v. United States*, 918 F.3d 77, 81 (2d Cir. 2019). Plaintiff's allegations stem from a denial of 9/11 benefits following an adverse VCF decision. However, the Air Safety Act does "not waive sovereign immunity, but instead explicitly preclude[s] judicial review" of such claims. *Rodriguez v. United States*, No. 21 Civ. 10679 (LTS), 2022 WL 280891, at *5 n.3 (S.D.N.Y. Jan. 31, 2022) (citation and internal

quotation marks omitted). Indeed, the Act provides that VCF determinations "shall be final and not subject to judicial review." Air Safety Act § 405(b)(3). Given there has been no explicit waiver of sovereign immunity here, the Court lacks jurisdiction over Plaintiff's claims.

Plaintiff argues that the Federal Tort Claims Act (FTCA) "functions as a waiver of Sovereign Immunity." ECF No. 33 at 9 ("Plaintiff's Opposition to Motion to Dismiss"). Invoking the FTCA in this case is improper. While the FTCA does waive sovereign immunity in certain circumstances, Plaintiff's Amended Complaint does not allege an FTCA violation or any new tortious conduct beyond the denial of benefits from the special master. Even if the FTCA did apply here, recasting the VCF claims as a FTCA violation does not mitigate her waiver of a right to bring a federal lawsuit after submitting an application to the VCF. Therefore, the FTCA does not apply here. Plaintiff also cites a law review article on sovereign immunity which focuses on nongovernmental workers and those that are contracted to work with the government. Kate Sablosky Elengold & Jonathan D. Glater, *The Sovereign Shield*, 73 Stan. L. Rev. 969, 972 ("this Article is primarily concerned with private actors…we ask how far the sovereign shield does and should extend to nongovernmental actors—that is, to those businesses performing 'public' work."). Plaintiff's reliance on this article is misplaced. Defendants are federal agents and federal employees, not private actors, thus making the law review article inapplicable to this case.

**b. Plaintiff Waived Her Right to Sue the Government Related to 9/11 Benefits**

In order to consolidate claims, the VCF was started by Congress to provide compensatory relief to those affected by the 9/11 attacks, while also limiting the civil liability of the air carriers, aircraft manufacturers, and the City of New York. Air Safety Act § 408(a); Aviation Security Act § 201(b). While litigation is an option to claimants before they filed with the VCF, once they file, the statutory provision states that "the claimant waives the right to file a civil action (or to be a

party to an action) in any Federal or State court for damages sustained as a result of the terrorist-related aircraft crashes of September 11, 2001." Air Safety Act § 405(c)(3)(B)(i). By using this remedy, claimants forgo the litigation process and receive faster and more definite remedies. *Graybill v. City of New York*, 247 F. Supp. 2d 345, 350 (S.D.N.Y. 2002). The Act's waiver provision is "unambiguous" and "plainly requires litigants to choose between risk-free compensation and civil litigation." *Virgilio v. City of New York*, 407 F.3d 105, 112–13 (2d Cir. 2005).

It is undisputed here that Plaintiff submitted a claim with the VCF to obtain compensation. As such, Plaintiff waived her right to sue the Government following a denial of that claim. *See Watson v. UAL Corp.*, No. 24 Civ. 6967 (LTS), 2025 WL 2391483, at *7 (S.D.N.Y. Aug. 18, 2025) ("Plaintiff filed a VCF claim. To the extent that he is dissatisfied with the administrative determination made with respect to that claim, he cannot seek judicial review of that denial in this court." (citations omitted)); *see also In re Sept. 11th Litig.*, No. 21 Mc. 97 (AKH), 2007 WL 1965559, at *1 (S.D.N.Y. July 5, 2007) ("Those who applied to the [VCF] gave up their right to bring claims in this Court."). Accordingly, the Court lacks subject matter jurisdiction over Plaintiff's claims.

Plaintiff further argues that the contract waiver was ambiguous, lacked a signature from Defendants, and that although she signed the waiver, it is unenforceable because it was in protest. ECF No. 33 at 10, 12. These arguments are unavailing. The Second Circuit has made clear the VCF waiver is not ambiguous, and upon a claimant filing with the VCF, claimants waive "the right to file a civil action". *Virgilio*, 407 F.3d at 112. Plaintiff agreed to the terms set forth in the waiver by filing her claim with the VCF. Plaintiff also argues that, if Defendants continue to argue that Plaintiff waived her right to bring civil action, there is a breach of an

implied contract that she would receive compensation from the VCF. ECF No. 33 at 11. This is inaccurate. Although the VCF offers an alternative to a civil action, potential claimants that file with the VCF "enjoy no fundamental right to an award of compensation from the September 11th Victim Compensation Fund. '[A] noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status.'" *Colaio v. Feinberg*, 262 F. Supp. 2d 273, 300 (S.D.N.Y. 2003). Plaintiff filed a claim with the VCF and was denied compensation. Disagreeing with her denial, Plaintiff now brings the current action before the Court. For the reasons discussed above, individuals who file a claim with the VCF give up their right to later sue, and such claims must be excluded from judicial review. As such, the Court does not have subject matter jurisdiction over these claims.

## II. The Court Dismisses Plaintiff's APA Claims

Plaintiff's Amended Complaint alleges that both the Government's denial of Plaintiff's 9/11 compensation claim and the requirement for "tangible proof of presence . . . in the Exposure Zone" were arbitrary and capricious and violated the APA. *See* AC ¶¶ 7-12. Defendants argue Plaintiff's APA claims should be dismissed for two primary reasons: (1) "the Air Safety Act expressly precludes judicial review and commits agency action to the sole discretion of the Special Master," and (2) "Plaintiff only seeks compensatory damages, but the APA does not allow for the recovery of monetary relief." ECF No. 31 at 13. The Court addresses each in turn.

### a. Agency Action is Not Subject to Judicial Review

Pursuant to 5 U.S.C. § 701(a) of the APA, "judicial review is expressly foreclosed where '(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law.'" *Vela-Estrada v. Lynch*, 817 F.3d 69, 71 (2d Cir. 2016). Defendants argue that both exceptions to judicial review under the APA apply to this action. *See* ECF No. 36 at 13.

Plaintiff's opposition brief fails to address Defendants' arguments pertaining to the preclusion of the APA claim from judicial review and rather only reiterates her argument that the review process is arbitratry and capricious. ECF No. 33 at 13-14. For the reasons that follow, the Court lacks jurisdiction to decide Plaintiff's APA claims.

"There is a strong presumption that Congress intends judicial review of administrative action. Only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review." *Bowen v. Michigan Acad. of Fam. Physicians*, 476 U.S. 667, 671 (1986). The Air Safety Act makes clear that "[The Special Master's] determination [of compensation] shall be final and not subject to judicial review." *Schneider v. Feinberg*, 345 F.3d 135, 145 (2d Cir. 2003); *see also* Air Safety Act § 405(b)(3). The statute's express language precluding judicial review satisfies the requirement for a showing of clear and convincing evidence of such legislative intent.

As for the second prong, the Air Safety Act similarly commits administrative action over the VCF to the Special Masters discretion. "An administrative action is 'committed to agency discretion' where the governing law is 'drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Vela-Estrada*, 817 F.3d at 71 (internal citations omitted). Courts can determine the "meaningful standard" by looking to the "the statutory language and structure, the statutory history, the nature of the agency action, and the regulations promulgated under the statute." *Teleanu v. Koumans*, 480 F. Supp. 3d 567, 572 (S.D.N.Y. 2020). In *Schneider*, the Second Circuit considered what aspects of the VCF's regulatory structure and claims process are committed to the VCF's discretion, including whether the Special Master's interpretive regulations were arbitrary and capricious. 345 F.3d at 145-148. The *Schneider* Court ultimately found that the Special Master's calculation of losses was

committed to agency discretion because "there is no law to apply because no standard of review—other than the APA's 'arbitrary and capricious' standard itself—governs." *Schneider*, 345 F.3d at 148–49. As such, VCF's standard for the calculation of losses for certain class of claimants is not subject to judicial review under the APA. Indeed, the Air Safety Act "does not guide or limit the Special Master's discretion on this point: it expressly allows the Attorney General and the Special master to adopt all substantive and procedural regulations necessary to resolve claims, and places the resolution of claims beyond the reach of judicial review." *Id*. at 149. Accordingly, judicial review of Plaintiff's APA claims is precluded here.

**b. The APA Does Not Allow Recovery for Monetary Damages**

Plaintiff brings forth these claims seeking money damages. FAC ¶¶ 18, 21, 27. Defendants argue that the APA does not allow suits for money damages. ECF No. 31 at 16. The APA's waiver of sovereign immunity is limited to claims "seeking relief other than money damages." 5 U.S.C. § 702. Specifically, the statute provides as follows: provides as follows:

> an action in a court of the United States **seeking relief other than money damages** and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. 5 U.S.C.A. § 702 (emphasis added).

As Plaintiff only seeks monetary relief in this case, such claims are outside the scope of the APA and are not subject to judicial review.

**III. Plaintiff's Due Process Claims Are Dismissed**

Plaintiff brings procedural due process claims, alleging she was generally denied procedural due process in connection with the Government's consideration of her claim. AC ¶¶ 4-5, 7-10, 15-16, 24. Plaintiff further alleges the Government conducted a "deposition" of her rather than providing a hearing relating to her appeal of the VCF's denial of her claim. AC ¶¶ 6-

7, 15-16, 24. Lastly, Plaintiff alleges she was denied adequate process when the Government "appl[ied] Calculation of Loss to Work Life Expectancy to deny Plaintiff's eligibility to victim compensation." AC ¶ 15.

The framework for determining whether a particular administrative procedure provided adequate process is evaluated under the test established in *Mathews v. Eldridge*: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. 319, 335 (1976).

The Court recognizes Plaintiff's interest in receiving damages relating to the 9/11 claim is significant to her. Even so, the government's interest weighs against a due process claim. Defendants correctly argue "[t]he Government has a strong interest in the proper and accurate payment of VCF benefits." ECF No. 31 at 17. Further, the last factor which considers risk of erroneous deprivation also weighs against a due process claim. For one, Plaintiff alleges she was notified by letter that the VCF was denying her claim after undertaking a "thorough review." Compl." Ex. A at 20. Further, upon Plaintiff learning about the initial decision regarding her claim, Plaintiff was able to (1) appeal the decision, (2) submit additional documentation in the form of letters from friends and family, (3) was given a hearing in connection with her appeal, and (4) had her claims reevaluated as part of her appeal. Compl. ¶ 18; FAC at 1, ¶ 24; Compl. Exhibit E. While Plaintiff alleges, in conclusory fashion, she failed to receive due process, her allegations and supporting documentation demonstrate otherwise. Plaintiff was provided notice and given the opportunity to be heard. "[W]hen the minimal due process requirements of notice

and hearing have been met, a claim that an agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process violations." *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 455–56 (S.D.N.Y. 2008). While Plaintiff may be dissatisfied with the procedures or outcome of her VCF claim, such dissatisfaction it not sufficient on its own to establish a due process violation. *See S.C. v. Monroe Woodbury Cent. Sch. Dist.*, No. 11 Civ. 1672 (CS), 2012 WL 2940020, at *9 (S.D.N.Y. July 1, 2012) ("Plaintiffs have expressed their dissatisfaction with the outcome of their interactions with Defendants, but procedural due process guarantees only a process, not a specific outcome." (citations omitted)). Upon weighing the factors provided under the *Mathews v. Eldridge* framework, the Court finds Plaintiff received constitutionally adequate process. Accordingly, the Court finds Plaintiff's due process claims are hereby **DISMISSED** for failure to state a claim.

## IV. Plaintiff's Equal Protection Claims are Dismissed

Plaintiff also brings an equal protection claim under the Fourteenth Amendment, alleging that she was discriminated against based on her age and work status as a temporary employee. AC ¶ 4. Specifically, Plaintiff alleges that "VCF's claim form . . . prejudicially omits temporary workers from categories of firemen, police officers, rescue workers . . . [and] discriminated against Plaintiff as a temporary office worker to have equal access to victim compensation." AC ¶ 17. Defendants argue that Plaintiff's statuses are not suspect classifications for constitutional protection and due to the Special Master's "rational basis" method of review, compared to strict scrutiny, Plaintiff's claims should be dismissed. ECF No. 13 at 18-19. The Court agrees.

In *Colaio*, Judge Hellerstein analyzed whether VCF's guidelines with respect to claimants who had annual incomes above a certain threshold violated the plaintiffs' equal protection rights. *Colaio*, 262 F. Supp. 2d at 300. Judge Hellerstein explained the rational basis standard applied in

reviewing the Special Master's methodology. *Id*. Indeed, Judge Hellerstein found "[p]otential fund claimants enjoy no fundamental right to an award of compensation from the September 11th Victim Compensation Fund," and "[a] noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status." *Id*. (internal quotations and citations omitted). Indeed, under the rational basis standard, "The Act, the regulations, and the Special Master's methodology are presumed constitutional, and need only be rationally related to a legitimate governmental interest." *Id*. (internal citation committed). Moreover, "under the Equal Protection Clause, claims that the government has discriminated based on age are typically subject to rational basis review because age is not a suspect classification." *We The Patriots USA, Inc. v. Connecticut Off. of Early Childhood Dev.*, 76 F.4th 130, 158 (2d Cir. 2023). When comparing alleged discriminatory review of consumption rates by the Special Master, in *Colaio* the court concluded that the Special Master's methodology only needs to be rationally based. *Colaio*, 262 F. Supp. 2d at 299. Plaintiff's age and status as a temporary worker are not suspect classes subjected to heightened scrutiny. Rather, the basis for VCF and the Special Master's determination of eligibility must be "rationally related to a legitimate governmental interest." *Colaio*, 262 F. Supp. 2d at 300. For reasons previously stated, such procedures are rationally related to the Government's legitimate interest in the accurate payment of VCF funds to claimants. Therefore, Plaintiff fails to state a claim here, and the Court hereby **DISMISSES** Plaintiff's equal protection claims.

### V. Plaintiff's Civil Rights Act Claim Is Dismissed

Plaintiff brings a claim under Section 1985 of the Civil Rights Act against the Government. As an initial matter, Defendants argue Plaintiff's claims are barred by sovereign immunity. *See* ECF No. 31 at 19. As already discussed in connection with Plaintiff's other

claims, Plaintiff's Section 1985 claim is barred by sovereign immunity which must be explicitly waived. "The U.S. government has not waived its sovereign immunity for claims under Sections 1981 to 1986 of Title 42." *Jones v. Nat'l Commc'n & Surveillance Networks*, 409 F. Supp. 2d 456, 466 (S.D.N.Y. 2006). As such, Section 1985 claims against the Government are routinely dismissed for lack of subject matter jurisdiction. *See McIntosh v. Untied States*, No. 15 Civ. 2442 (KMK), 2018 WL 1275119, at *9 (S.D.N.Y. Mar. 7, 2018) (dismissing Section 1985 and 19896 claims on the basis of sovereign immunity).

In any event, Defendants further argue Plaintiff nonetheless fails to allege sufficient facts to state a claim of conspiracy against the agency officials in violation of 42 U.S.C. § 1985(3). *See* ECF No. 31 at 19. To make out a conspiracy claim under § 1985, "the facts alleged must show with certainty 'particularly what a defendant or defendants did to carry the conspiracy into effect, whether such acts fit within the framework of the conspiracy alleged, and whether such acts, in the ordinary course of events would proximately cause injury to plaintiff.'" *Bodenmiller v. Stanchfield*, 557 F. Supp. 857, 860 (E.D.N.Y. 1983). "[C]omplaints containing only 'conclusory,' 'vague,' or 'general allegations' of a **conspiracy** to deprive a person of constitutional rights will be dismissed." *Id*., (quoting *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir.1977). In this case, Plaintiff alleges, "Interim Special Master Flentje and Special Master Turkel conspired in bait and switch tactics to falsely guarantee Plaintiff a victim compensation award upon Plaintiff's execution of Waiver to file a lawsuit as a tacit contractual relationship." ECF No. 33 at 14. This conclusory allegation, however, is not followed with specific examples or facts to further support an inference of conspiracy. Such barebone, conclusory allegations are insufficient to state a claim under Section 1985. *See Bhatia v. Yale Sch. Of Med.*, 347 F. App'x 663, 665 (2d Cir. 2009) (finding that *pro se* plaintiff's "claims of a conspiracy to violate his civil rights were vague and

conclusory, and insufficient to state a plausible claim under § 1985"). Accordingly, the Court finds Plaintiff has failed to state a claim under Section 1985 and hereby **DISMISSES** such claims.

**VI. Plaintiff's Claims Against Special Master are Dismissed**

Plaintiff brings claims against Interim Special Master Flentje and Special Master Turkel. FAC ¶ 14. As an initial matter, Defendants correctly argue that claims against former VCF Interim Special Master August E. Flentje should be dismissed and "removed form the caption of the case in his official capacity because the current VCF Special Master, Allison Turkel, is a named defendant." ECF No. 31 at 20. Under Federal Rule of Civil Procedure 25(d), "an action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." In this case, after Interim Special Master Flentje released his position and Special Master Turkel took over, the case was automatically substituted for the correct party. Therefore since Mr. Flentje was acting in the official capacity and is no longer in that role, Special Master Turkel is the correct Defendant for this case.

For the claims against the special masters' in their personal capacity, Defendants correctly point out that "all of Plaintiff's allegations against Mr. Flentje and Ms. Turkel relate to their work in their official capacities as the officials in charge of the VCF, and their consideration of Plaintiff's claim." *See* ECF No. 31 at 21. Thus, "adding [special master's] in a personal capacity would serve no purpose. The core of plaintiff's allegations remains [with] the institution." *Burgin v. Cash*, No. 15-CV-201S, 2018 WL 6803763, at *2 (W.D.N.Y. Dec. 27, 2018). Accordingly, Plaintiff's claims against former Interim Special maser Flentje and Special Master Turkey in their individual capacities are hereby **DISMISSED**.

## CONCLUSION

For the foregoing reason, Defendants' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim is **GRANTED**. Although the Court deems it highly unlikely that any amendment would cure the deficiencies in the complaint, the Court **GRANTS** Plaintiff one opportunity to amend. *See Elder v. McCarthy*, 967 F.3d 113, 132 (2d Cir. 2020) ("Where a district court cannot rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim, a pro se complaint should not be dismissed without granting leave to amend at least once") (internal quotation marks omitted). Plaintiff should file her amended complaint by **September 1, 2026.** The Clerk of Court is respectfully directed to terminate the pending motion at ECF No. 30.

**SO ORDERED.**

**Dated: August 11, 2026**

**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**