An official website of the United States government Here's how you know

Home / VCF Policies and Procedures

Table of contents


a. Compensation Review Process

b. Substantive Compensation Review and Calculation of Award

2.1 Non-Economic Loss

a. Valuation of non-economic loss

Non-economic loss for death

Non-economic loss for injury

b. Special Master authority to award non-economic loss above the statutory cap

c. Documentation of non-economic loss

2.2 Economic Loss: Lost Earnings and Benefits

a. Documentation of earnings history

b. Establishing discrete past lost earnings

c. Establishing loss of future earnings/benefits as a result of permanent disability

d. Documents required to demonstrate disability

e. Loss of employment-related benefits

f. Documentation to support loss of earnings and pension benefits for FDNY claimants


# Section 2: Calculation of Loss (Compensation)

**Date effective:** August 6, 2026

By law, the VCF can only compensate for losses caused by eligible conditions related to the events of September 11, 2001. In addition, the law requires the Special Master, in each case, to take account of the harm to the claimant, the facts of the claims, and the individual circumstances of the claimant. Our claim analysis therefore always begins with three essential questions: was there a demonstrable loss, can we reasonably conclude the loss was caused by a WTC-related **eligible** condition, and what makes sense in the context of this claimant and the individual circumstances of this claim?

Three principles guide this inquiry. First, the VCF strives to be fair to all claimants. This means that we consider both fairness to the individual claimant as well as fairness to the entire claimant population, with priority given to those who suffer from the most debilitating physical conditions. Second, everything we do must be faithful to the statute that authorizes our work, the VCF Act (codified at 49 USC 40101 Note, Title IV). And third, because we are spending public funds, we must ensure that every aspect of the award is adequately justified and documented.

Cited in Setleh v Interim Special Master Aug E. Flentie 1:23cv02581 Decided 8/11/26 Archived on 8/12/26 This document is protected by copyright. Further reproduction is prohibited without permission.

The VCF is committed to transparency about the claim review process. To that end, the sections below provide detailed information about how we generally evaluate and calculate compensation for non-economic and economic loss. Given the volume and variability of claims, and the legal requirement that the Special Master consider individual circumstances in each case, however, it is not possible to cover every potential situation. Therefore, this information should be viewed as a general guide to how the VCF implements our fundamental principles: fairness to the claimants, faithfulness to the statute, and accountability to the public, in the service of compensating demonstrable loss caused by an eligible condition.

Back to top

## a. Compensation Review Process

Once the VCF confirms that you have met the eligibility criteria, we begin initial review of your compensation information. This includes determining the types of loss being claimed. Claims seeking only non-economic loss are the simplest and fastest to review. **Non-economic loss** is sometimes called a "pain and suffering" award. This is determined based generally on the nature and severity of your condition and the

- Information specific to victims with an FDNY disability
- g. Documentation to support loss of earnings and pension benefits for NYPD Claimants
- h. Documentation to support loss of earnings and pension benefits for members of NYCERS and NYSLRS
- i. Documentation to support loss of earnings and benefits for members of PFRSNJ
- j. Documentation to support loss of earnings and benefits for Federal Employees Including Military Personnel
- k. Documentation to support loss of earnings and pension benefits for members of a union, or employees of Con Edison or Verizon:
- l. Documentation to support loss of earnings and pension benefits for other employers not listed above:
- 2.3 Detailed Explanation of Methodology used to Calculate Future Lost Earnings
- 2.3.1 Compensation for VCF1 Claimants Who Were Paid in VCF1
- 2.4 Other Types of Economic Loss
- a. Past out-of-pocket medical expenses
- b. Replacement Services Loss
- c. Burial or Memorial Service Expenses
- 2.5 Collateral Source Offsets


effect of the condition on your activities of daily living; it does not take into account economic loss caused by the condition.

**Economic loss** is pecuniary loss caused by an eligible condition: loss of earnings or other benefits related to employment, the cost to replace household services previously provided by the victim, certain past medical expenses, and expenses associated with a burial or memorial service in the case of a deceased victim. If you are claiming economic loss, we obtain information and documentation from various third parties, such as the Social Security Administration ("SSA"), the FDNY, the NYPD, and the New York State Workers' Compensation Board, regarding your disability, earnings history, and/or pensions if we have not already done so as part of our preliminary eligibility review.

If your claim is missing documentation that we need in order to calculate your award, you will receive a missing information letter. It is important that you respond to all missing information letters within the timeframe specified in the letter. If you do not respond to our missing information request after 14 days, we will render a decision based on the information contained in your file at that time.

Please be aware that any documents you submit after we have finalized the substantive review of your compensation claim will not be reviewed as that review would delay the issuance of your award determination. If you submit documents after the VCF finalizes substantive review of your claim, but before your award letter is issued, we will notify you in the award letter that the documents have not been reviewed. The letter will explain the next steps to take on your claim.

Cited in Setlech v. Interim Special Master Aug E. Flentje
1-25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

Back to top

## b. Substantive Compensation Review and Calculation of Award

Each award is calculated individually. As required by the VCF Act, your final award will be calculated using this basic formula: Non-Economic Loss plus Economic Loss, minus Collateral Offsets. Collateral offsets are compensation from other sources that you received or became entitled to receive as a result of your eligible injury and must be subtracted from the award. More information about Non-Economic Loss, Economic Loss, and Collateral Offsets can be found in the sections below.

Our review includes: determining non-economic loss based on the severity of physical harm; calculating economic loss, including past and future lost earnings (if claimed); and confirming collateral offsets, including payments received from pension funds, life insurance, SSA, Workers' Compensation, and settlements from 9/11-related lawsuits. Claims that have more complex compensation information take more time to review.

To calculate **economic loss**, the VCF must first determine whether there is in fact a compensable loss. There are three types of economic loss: loss of earnings/benefits, out-of-pocket medical expenses, and replacement

a. Collateral offsets that are paid periodically

b. Benefits that may be subject to liens

c. Survivor benefits subject to adjustment or termination

d. Public Safety Officers' Benefits ("PSOB")

e. WTC Volunteer Fund administered by the New York State Workers' Compensation Board

f. Obligation to notify the VCF of additional offsets

2.6 Withdrawing an Economic Loss Claim

services loss. Each of these types of loss is explained in the sections below.

If we do not receive the documents necessary to calculate economic loss, or if the documents are not submitted in a timely manner, we may issue an award for non-economic loss only. In certain situations, we may deactivate your claim and stop our review if we are missing critical information. This includes information about collateral offsets that apply to both economic and non-economic loss, proof of cause of death for a wrongful death claim, or a missing Exhibit 1, which allows us to receive information from SSA in support of your claim.

If you submitted a claim for economic losses, but the VCF issues an award for non-economic loss only because of missing documents, the VCF will reconsider the economic loss award only on amendment. This means you must submit an amendment and request re-review of your economic loss claim. See **Section 5** for additional information about amending your claim.

Once the award is calculated, we send you a letter explaining the breakdown of your award and an option to appeal within 30 days if you believe an error was made in the calculation. Your award letter will also include the estimated timing for your payment to be processed. The VCF starts processing your payment one business day from the date of the award letter.

Cited in Sedlech v Interim Special Master Aug E. Flentje
1:25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright
Further reproduction is prohibited without permission

Back to top

## 2.1 Non-Economic Loss

The VCF Act defines non-economic loss as losses for physical and emotional pain, suffering, inconvenience, physical impairment, mental anguish, disfigurement, loss of enjoyment of life, loss of society and companionship, loss of consortium (other than loss of domestic service), hedonic damages, injury to reputation, and all other non-pecuniary losses of any kind or nature.

Each person who was killed or injured in the September 11th attacks suffered grievous harm, and each person experienced the unspeakable events of that day in a unique way. After extensive fact finding, public outreach, and review of public comments in the original VCF, the Special Master and the Department of Justice concluded that the most rational and just way to approach the difficult task of placing a dollar amount on the pain and emotional suffering experienced by the thousands of individuals killed or injured by the September 11th attacks was to assess the non-economic losses for categories of victims.

Back to top

### a. Valuation of non-economic loss

### Non-economic loss for death

Back to top

Return to top

The regulations set a presumed award for non-economic losses sustained by the victim, and the victim's spouse[1] and dependents, because of the victim's death as a result of the September 11th aircraft crashes or subsequent debris removal: $250,000, plus an additional $100,000 on account of the spouse and each dependent of the decedent. The latter figures – $100,000 on account of the spouse and each dependent – include a non-economic component of "replacement services loss."

Back to top

## Non-economic loss for injury

The VCF Act establishes certain caps on non-economic awards for physical injury claims. The maximum non-economic loss for any one type of cancer condition is $250,000, and the maximum non-economic loss for any one type of non- cancer condition is $90,000. If the victim has more than one type of cancer, the Special Master may issue an award that makes an adjustment above $250,000 to account for multiple cancers. Similarly, if the victim has cancer and severe non-cancer conditions, the Special Master may issue an award that makes an adjustment above $250,000 to account for multiple conditions.

The VCF Act also requires that the Special Master prioritize claims with the most debilitating physical conditions. Accordingly, non-economic loss is based generally on the severity of the condition and the effect of the condition on the victim's ability to maintain normal activities of daily living. ***Important Note: The amount of non-economic loss is not tied to the number of certified conditions.*** It is possible that an individual victim with many relatively mild conditions would receive a non-economic award that is less than that of a victim who has only one condition that is severe. For example, a victim who has a respiratory condition that significantly restricts the victim's ability to participate in activities of daily living and recreation, or that is progressive and not effectively treated, may have a higher non-economic award than a victim who has a mild respiratory condition and another mild condition which have not had a significant effect on their activities of daily living. Please keep this in mind and review the "Non-Economic Loss Awards and Certified Conditions Fact Sheet" when considering whether to seek certification of additional conditions through the WTC Health Program.

Cited in Setachy Interim Special Master Aug E. Flentje
1:25cv02381 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

The maximum amount for eligible non-cancer conditions is $90,000. The maximum is awarded only where a condition has a consistent, sustained, and exceptionally severe impact on a victim's quality of life. As a general rule, under the terms of the VCF Act, the Special Master has identified the following conditions as presumptively severe and debilitating and warranting the highest allowable non-economic loss award for a non-cancer condition, without any further documentation: Emphysema, Interstitial Lung Disease (including Asbestosis), and Sarcoidosis.

When the victim demonstrates mild or negligible impairment on daily life, or if the eligible conditions have resolved over time or are reasonably well-controlled through over-the- counter medication, the non-economic

award begins at $10,000 and may increase depending on the severity of the condition as demonstrated by recent medical records (medical records that are dated within three years of the claim submission date). As a general rule, under the terms of the VCF Act, the Special Master has identified the following conditions as presumptively less severe and debilitating and thus warranting lower awards, absent medical documentation of severity, than the highest allowable for a non-cancer condition: Asthma/RADS, Barrett's Esophagus, Bronchiecstasis, Chronic Airway Obstruction, Chronic Bronchitis, Chronic Cough, Chronic Obstructive Pulmonary Disease, Chronic Rhinitis, Esophagitis, Gastroesophageal Reflux (GERD), Laryngitis, Nasopharyngitis, Obstructive Sleep Apnea, Pharyngitis, Respiratory Conditions due to Fumes or Vapors, Rhinosinusitis, Sinusitis, and Traumatic Injury or Musculoskeletal Disorder. While some of these conditions can have severe impacts on individual patients, the VCF will require evidence of such severity, in the form of recent medical records supported by impact statements and/or appeal testimony, before considering an increase in the award.

For eligible cancers, the non-economic award will generally range between $90,000 and $250,000, depending on the type of cancer and the medical evidence provided regarding metastasis, recurrence, and/or permanent or long term complications. For example, if a victim is certified for two different types of non-melanoma skin cancer – for example, basal cell and squamous cell – or for one non-melanoma skin cancer at multiple sites, the award will generally be in the range of $90,000. For prostate cancer, the presumptive award is $200,000. To demonstrate the severity required for a higher non-economic loss award, victims do not need to seek additional certifications related to their prostate cancer unless they are needed for treatment purposes. The VCF requires medical records showing recurrence or metastasis for an increased award to $250,000 if the recurrence or metastasis is not already separately certified for treatment purposes. Claimants can also demonstrate severity on the basis of long-term complications. The VCF defines permanent or long-term complications as effects of treatment, such as incontinence or erectile dysfunction, continuing for more than two years following the last date of treatment. While it is common to have complications from prostate cancer surgery, those complications can be temporary. Temporary complications are not likely to result in higher awards. The VCF requires medical records and a detailed, sworn impact statement discussing the long-term complications. For more information and instructions on how to submit that information, see the Non-Economic Loss Impact Statement for Prostate Cancer on the Forms and Resources Page.

Cited in Satleh v. Interim Special Master Aug E. Flentje
1-25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

The Special Master may consider multiple conditions together to determine an aggregate award, which may exceed $250,000. For example, the victim may suffer from multiple types of cancer or may have a severe non-cancer eligible condition along with an eligible cancer. In such cases, the non-economic award may be greater than $250,000, with a maximum

award, under current VCF policy guidelines, of $340,000 for multiple severe conditions.

**Note**: The non-economic award is not automatically tied to the degree of disability (to the extent there is an occupational disability determination as a result of an eligible 9/11-related physical injury or condition). A claimant may be partially disabled from performing a certain occupation due to his/her eligible injury or condition but the fact of an occupational disability alone will not warrant a non-economic award higher than the presumptive "base" value. As noted above, the non-economic award is based generally on the severity of the condition and the effect of the condition on the victim's ability to maintain normal activities of daily living, as demonstrated by recent medical records, except in those cases treated as presumptively severe (where medical records are not needed in order to qualify for the highest award allowed by the statutory caps).

**Note**: If you received a non-economic loss award in VCF1, the VCF will consider the amount previously awarded when determining whether additional compensation is warranted in light of the 2015 reauthorization statute's prioritization mandate and non-economic loss caps.

While this information is provided for general guidance, it is important to note that these are general benchmarks, and awards may vary within the statutory caps as each claim is evaluated individually on its specific facts and at the discretion of the Special Master.

Back to top

Cited in Setlech v. Interim Special Master Aug E. Flentje
1:25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

## b. Special Master authority to award non-economic loss above the statutory cap

When considering the authority provided by the VCF Act to issue non-economic loss awards above the statutory caps in special circumstances, the Special Master's intention (consistent with the intent of Congress) is to exercise this authority in very limited and unique circumstances, and only for non-cancer claims. The $250,000 cap for a single cancer condition will not be exceeded under this authority.

The exception will be made only in the small number of non-cancer claims where the claimant has an interstitial lung disease ("ILD") or other pulmonary illness where the effects of the condition are so severe that they are similar in all relevant respects to what a claimant with lung cancer might suffer. These claimants might require lung transplants (sometimes double lung transplants), or significant mechanical respiratory assistance on a daily basis. The Special Master interprets the statutory language to allow compensating these limited number of severe non-cancer claimants in the same way that a cancer claimant would be compensated – meaning, $250,000 for a single condition, and a maximum award, under current VCF policy guidelines, of $340,000 for multiple severe conditions. This is the bar by which the Special Master will measure the appropriateness of an increase above the cap, and it will be done in consideration of all other circumstances of the claim and the totality of the award. If you believe you meet this threshold, you should

request "special circumstances" consideration on appeal after your initial award has been determined. If you have a prior claim that has already been decided and paid, and you believe you should be considered for the exception, please amend the claim to submit the request for review. If your appeal or amendment is based on a lung transplant, you must submit all of the following:

1. Operative report from your lung transplant surgery.
2. Hospital admission and discharge summary relating to the lung transplant surgery.
3. Records from your most recent pulmonary exam.

## c. Documentation of non-economic loss

Back to top

If the WTC Health Program has certified your condition, no further documentation is necessary to support a claim for non-economic loss; the VCF will award non-economic loss at the lowest end of the range for the applicable condition based solely on the WTC Health Program certification. If, however, the certified condition significantly impairs activities of daily living or if the certification does not reflect the severity of the condition, additional documentation of the types described below can help the VCF evaluate whether an increased non-economic loss award within the appropriate range is warranted.

To help the VCF understand the severity and effect of your condition, you may want to submit supporting documents related to your condition with your claim. The VCF focuses on recent documentation, from within three years of the claim submission date, when evaluating non-economic loss. For example, if a claim is submitted on January 1, 2020, recent medical records are those dated after January 1, 2017. If you submit medical records that fall outside of the three-year timeframe, you must highlight them and provide an explanation about why they are important. Please only submit documents that are related to your 9/11-related eligible physical conditions. If the medical records submitted with your claim meet the three-year timeframe, you do not need to continue to submit medical records on your claim unless the VCF requests them. The types of documents listed below can assist the VCF in the evaluation of your claim:

- Recent medical documents that show the type and frequency of medical treatments you have had for your condition. For example, documents that show hospitalization, surgery, emergency treatment, and/or treatment for side effects of the condition.
- Recent test results and treatment prescribed that show the severity of your condition. For example, many people with respiratory injuries have pulmonary function tests. If you have had such tests, please submit the test results including the physician's interpretation of the tests. Other examples include computed tomography scans, x-rays, endoscopies, esophagogastroduodenoscopies, laryngoscopies, polysomnography or sleep studies, or other diagnostic and treatment procedures.
- Recent medical records documenting severity and/or effect of the condition on daily life.

Cited in Setlech v. Interim Special Master Aug E. Flentje 1-25cv02581 Decided 8/14/26 Archived on 8/12/26 This document is protected by copyright. Further reproduction is prohibited without permission.

- Recent documentation of the medications required to manage your condition and how often you take those medications. The type of medication prescribed and the frequency of use of the medication can help demonstrate the severity of the condition.
- Recent medical records or treating physician statements showing use of assistive devices that significantly impair activities of daily living – such as breathing devices that may be used for Obstructive Sleep Apnea.
- If your condition has limited your activities, please submit any explanation or documentation that explains this effect of your condition. For example, you could submit letters or reports from specialists who treated your eligible conditions.
- Records of state and federal agency proceedings or private insurance records that address your medical condition.
- A personal statement discussing the impact of the eligible conditions on your life. Such a statement is most helpful if it provides a timeline and details on the medical treatments you have experienced. Note that in general, the VCF will need medical records substantiating claims of medical procedures (surgery, etc.).

A document from your physician summarizing the medical history of your condition and treatment will often be sufficient to prove the extent of your non-economic loss. If you submit medical records, please highlight the relevant information in the records so the VCF can easily find the pertinent information or provide a written guide or statement directing us to the relevant pages.  In order to accelerate the review of claims for all claimants, the VCF will not review voluminous medical records (i.e., more than 25 pages) that are submitted without highlighting or a written guide. The VCF will award the lowest end of the range for your conditions and request that you submit an amendment with the required information if you would like the VCF to consider the medical records submitted when assessing severity for purposes of awarding non-economic loss.

Cited in Selectively Interim Special Master Aug E. Flentje
25cv0258 1 Decided 8/1/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

Back to top

## 2.2 Economic Loss: Lost Earnings and Benefits

If you are physically injured as a result of an eligible condition, you can make a claim for earnings/benefits you lost before you submitted your claim to the VCF, and you can make a claim for earnings/benefits you expect to lose in the future (after submission of your claim) as a result of your eligible condition.

If you are submitting a personal injury claim and you claim a loss of earnings, the VCF must determine whether you are unable to work, or have a reduced ability to work, as a result of an eligible 9/11-related physical condition.  If that is the case, then the VCF must determine the extent of that loss.  The VCF will then compute the amount of past and/or future lost wages in light of these factors (as explained below).  **Note:** The

VCF considers and calculates losses suffered before you submit your claim for lost earnings as "past" losses, and losses suffered after you submit your claim for lost earnings as "future" losses.

If you are filing a deceased victim claim (i.e. a claim on behalf of a victim who died as a result of an eligible 9/11-related physical condition), you can make a claim for lost earnings/benefits incurred before the victim died as a result of an eligible condition and you can make a claim for the lost future earnings resulting from the death of the victim.

See **Section 2.3** for a detailed explanation of the methodology used to calculate future lost earnings

This section describes the evidence you must submit to substantiate your claim for lost earnings. In general, you must submit:

1. Evidence that you are or were unable to work as a result of an eligible condition.
2. Information about your earnings and benefits, so that the VCF can determine the amount of loss. Sections 2.2.f-i contain information specific to victims who worked for New York City (including FDNY and NYPD) and the Federal government (including military and military reserve); and
3. Information about compensation you received from collateral sources that must be subtracted from your lost earnings award.

Cited in Setlech v. Interim Special Master Aug E. Flentje
1-25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

Back to top

## a. Documentation of earnings history

The VCF generally will use information obtained from the Social Security Administration ("SSA") to determine earnings history. You must complete and submit a consent for release of SSA information (Exhibit 1 to the Claim Form) in order for the VCF to obtain this information.

If you did not have SSA earnings (e.g., worked outside the United States or do not have a Social Security number), then you must provide other documents demonstrating earnings – including tax returns, statements of profit/loss from a business (if self- employed), W2 forms, 1099 forms, pay stubs, or employment offer letters.

If you believe that your SSA earnings history does not fully account for future earnings potential, then you must provide documentation supporting any argument that the VCF should take into consideration other information in determining future earnings. For example, if you received a promotion before becoming disabled and if the earnings history did not reflect that promotion, then you must provide proof of the promotion and any earnings adjustment resulting from the promotion. If you were eligible for bonuses, deferred compensation, stock options, or any other form of compensation that might not be reflected in the SSA earnings report, you must submit proof of such forms of compensation if you want the VCF to consider such forms of compensation or increases in compensation in evaluating your claim.

## b. Establishing discrete past lost earnings

Back to top

In order to qualify for discrete past lost earnings (i.e., losses incurred before you filed your VCF claim or losses incurred in the absence of a third-party disability occupational disability determination), you must show that you were unable to work, or unable to work at the same level, as a result of an eligible condition and that you incurred losses as a result. You will need to submit two types of information:

- First, you need to show that you actually lost compensation. For example, an employer might provide a statement showing your compensation history and time periods where you missed work and were not compensated. If you were compensated fully through sick pay or other compensation, that means you have not "lost" compensation.
- Second, you need to show that you were unable to work, or unable to work at the same level, because of an eligible physical condition. Examples of such documentation might include a medical report explaining that you had to miss work because of your eligible condition, determinations by an insurance carrier that provided disability coverage and which specify the disabling condition, or Workers' Compensation records.

The VCF provides a ***Temporary Past Lost Earnings*** worksheet to help support your VCF claim.

Back to top

## c. Establishing loss of future earnings/benefits as a result of permanent disability

Cited in Getach v. Interim Special Master Aug E. Flentje
1-25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

**If you are filing on behalf of a deceased victim** and you have provided sufficient evidence that the cause of death was related to an eligible condition, the VCF will generally calculate lost earnings and benefits resulting from the victim's death if it is clear from the information in the claim file that the victim's death resulted in a compensable loss.

In some cases, even where the record supports the determination that the victim's death was related to an eligible condition, it is not clear that the victim's death resulted in a compensable loss. For example, if the victim left the workforce more than one year before death without a permanent partial or total occupational disability determination based on an eligible 9/11-related physical health condition, the VCF will consider the reasons the victim originally left the workforce and the likelihood that the victim would have returned to the workforce were it not for the victim's eligible condition in determining whether the victim actually lost compensation as a result of an eligible condition. For these claims, it may be necessary to provide a disability determination or other documentation that explains the relationship between the loss of earnings and the eligible condition.

Likewise, if the victim was 70 years old or older at the time of death, the VCF generally will not award lost earnings and benefits, based on the presumption that the victim had already reached the end of his or her reasonable work-life expectancy. There are limited circumstances in

which the VCF may review evidence that established that the victim would have continued working past age 70, such as where the victim was providing financial support to minor children.

See the section below about documentation of employment-related benefits.

In addition to evidence of a compensable loss, you must submit information about collateral source payments that the VCF may be required to offset against a lost earnings award. See the **Collateral Source Offsets** section for more information.

**If you are filing a personal injury claim**, in order to qualify for an economic loss award for loss of future earnings/benefits, you must first show that you have a permanent partial or total occupational disability based on an eligible 9/11-related physical condition. In general, the VCF will accept a determination by a governmental agency that you have a disability and will accept the governmental agency's determination of the cause of the disability. If the governmental agency determines that the cause of disability is a condition that the VCF has found eligible, then the disability determination will provide a basis for a determination of future loss of earnings/benefits. For example, the VCF will accept disability determinations made by the Social Security Administration, the FDNY, the NYPD, NYCERS, NYSLRS, the VA, and Workers' Compensation boards (see the sections below regarding FDNY, NYPD, NYCERS and NYSLRS, FERS, and the VA). The VCF may also accept a determination of disability made by a private insurer or a treating physician if they are sufficiently detailed as to the effect of the VCF eligible condition, distinguish those effects from those of ineligible conditions, and provide sufficient information from which the onset and severity of the disabling condition may be determined.

Cited in Setlach v. Interim Special Master Aug E. Flentje
1-25cv02381 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

When considering whether the disabling condition identified in the disability determination is the same as your VCF-eligible condition, the VCF will apply the following presumptions:

- The VCF will treat all conditions in the category of Obstructive Airways Diseases ("OAD") as equivalent. Obstructive Airways Diseases include asthma, bronchiectasis, chronic airway obstruction, chronic bronchitis, chronic obstructive pulmonary disease ("COPD"), emphysema, reactive airways disease, reactive airways dysfunction, and respiratory conditions due to fumes and vapors. The VCF will consider the SSA diagnoses of Chronic Pulmonary Insufficiency (code 4960), Chronic Respiratory Disorders (code 4960), or Other Disorders of the Respiratory System (code 5190) equivalent to the Obstructive Airways Diseases listed in this paragraph.
- The VCF will treat all conditions in the category of Interstitial Lung Diseases ("ILD") as equivalent. Interstitial Lung Diseases include asbestosis, granulomatosis, interstitial pneumonia, pneumonitis, pulmonary fibrosis, and sarcoidosis.

- The VCF will treat all conditions in the category of Upper Respiratory Diseases (“URD”) as equivalent. Upper Respiratory Diseases are those affecting the nose, sinuses, or throat. These conditions include rhinitis, sinusitis, rhinosinusitis, tracheitis, laryngotracheitis, laryngitis, nasopharyngitis, and pharyngitis.

Thus, in each of the cases identified above, if you have been deemed disabled due to one of the listed conditions, and another condition treated as equivalent has been deemed eligible for compensation by the VCF, your disability determination supports a lost earnings award.

**Note that, in all cases, even though the conditions may be treated as equivalent when deciding whether a disabling condition is the same as your eligible conditions, these conditions are NOT equivalent for the purposes of determining the appropriate non-economic loss award amount, as discussed in Section 2.1 above.** Disabling conditions that fall in one category will not be deemed equivalent to conditions that fall in another category. Thus, if you are disabled due to an Interstitial Lung Disease and you have been deemed eligible by the VCF only for Obstructive Airways Diseases, the disability determination is not a basis for awarding lost earnings. Likewise, if you are disabled due to an Obstructive Airways Disease and you have been deemed eligible by the VCF only for Interstitial Lung Disease, the disability determination is not a basis for awarding lost earnings. An exception to this general rule may arise in those cases where a claimant is found disabled by the SSA due to Chronic Pulmonary Insufficiency or Chronic Respiratory Disorders and his or her only eligible condition is an Interstitial Lung Disease (e.g., sarcoidosis or pulmonary fibrosis). In such a case, if medical records submitted provide no other discernable basis for the claimant’s SSA disability, then it will be presumed that the eligible Interstitial Lung Disease is the same as the disabling condition.

Cited in Selech v Interim Special Master Aug E. Flentje, 1:25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

It may be necessary to provide additional documentation that explains the relationship between the disability and your eligible condition(s). The VCF cannot award lost earnings for a disability that is not clearly related to an eligible condition.

If SSA or another entity found you disabled based on a condition that is not eligible for compensation by the VCF, please do not contact SSA or the other entity to request that they change your disability determination solely for the purpose of obtaining VCF compensation. If you believe that your eligible condition has caused a loss of earnings that is distinct from any loss of earnings due to an ineligible condition, you must provide evidence to the VCF to substantiate your claim. It is not an appropriate use of SSA’s resources to request re-evaluation for this purpose. Moreover, the VCF will not disregard a determination that attributed your disability to an ineligible condition, even if it was later changed. The VCF must consider evidence of an eligible disability in light of all the evidence, including an ineligible condition that is also disabling.

In some cases, even where the record supports the determination that your disability is related to an eligible condition, it is not clear that your disability resulted in a compensable loss. For example, if you left the workforce more than one year before the onset of your eligible disability, the VCF will consider the reasons you originally left the workforce and the probability that you would have returned to the workforce were it not for your eligible condition in determining the extent of your earnings and benefits loss. For these claims, it may be necessary to provide additional documentation that explains the relationship between your loss of earnings and benefits and your eligible condition(s).

In addition to evidence of a disability and a compensable loss, you must submit information about collateral source payments that the VCF may be required to offset against a lost earnings award. See the **Collateral Source Offsets** section for more information.

Back to top

## d. Documents required to demonstrate disability

Cited in Setlech v. Interim Special Master Aug E. Flentje
1:25-cv-02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

- **Social Security Administration ("SSA")** – If you have submitted Exhibit 1 of the Claim Form, the VCF will obtain certain disability information directly from the SSA. You should, however, submit any information you have about a favorable disability determination by the SSA. In particular, if your claim was decided on appeal, please submit the narrative decision by the SSA Administrative Law Judge.

Claimants who receive disability benefits under the federal Supplemental Security Income ("SSI") program: If you receive disability benefits under the federal Supplemental Security Income ("SSI") program (administered by Social Security) as opposed to under the regular Social Security Disability Income ("SSDI") program, please indicate that you are receiving SSI benefits when you file the claim and file an Exhibit 1, making sure to select the box requesting release of "Current monthly Supplemental Security Income payment amount." The information that the VCF receives from the SSA will include information about SSI benefits if applicable. Note: an SSI disability finding may support a claim of lost earnings.

- **Workers' Compensation** – If you have a workers' compensation determination from the New York State Workers' Compensation Board ("NYWCB"), the VCF can obtain that information directly. To do so, the VCF needs the case number associated with your NYWCB claim. You should submit documents reflecting your NYWCB case number. If you have a workers' compensation determination from another state, then you must submit complete documentation of any orders/decisions, any benefits paid, the basis for your disability, and any medical records (including treating physician records and/or independent medical examinations) that are part of your workers' compensation record. If you have a determination from the U.S. Department of Labor's Office of Federal Employees' Compensation ("FECA") program, the VCF will obtain information about your determination directly from the Department of Labor.

- **Insurer** – If you have a disability determination from a private insurer, you must submit documentation from the insurer confirming the disability finding and showing that the basis for the disability was an eligible condition. You must also submit documentation of the amount and duration of benefits received, and a copy of the disability insurance policy.
- **Private physician** – To be considered by the VCF, an evaluation from a physician must state how long and how often the doctor has treated you and explain the examination(s) and testing done by the physician. In particular, the evaluation must include the date of onset of disability; the percentage of disability attributable to eligible conditions and/or whether the eligible conditions are independently disabling, particularly if the claimant suffers from other non-certified conditions, or mental health conditions for which the VCF cannot compensate; and explanations as to why certain test results, limitations, or the effects of the condition itself support a disability finding. These pieces of information are critical to a finding that there is a disability determination that supports a lost earnings award, and disability evaluations that do not contain these pieces of information will be rejected as insufficient.
- **WTC Health Program Disability Evaluation process** – The VCF has worked with the WTC Health Program to implement a disability evaluation process ("Process"), which is designed to help provide qualifying claimants with a disability determination for an eligible condition in order to support an economic loss award in a VCF claim. The Process is intended for a limited subset of WTC Health Program members who have been deemed eligible by the VCF for at least one certified physical condition, do not already have or are not eligible for a disability determination for an eligible condition from a third-party entity or source (e.g., Social Security Administration, FDNY/NYPD, a state Workers' Compensation program, or insurance company), and meet other specific criteria for the Process. Individuals who have a disability determination based on an ineligible condition may be candidates for the Process if their eligible condition has become disabling.

Cited in Select v. Interim Special Master Aug E. Flentje
25-cv-0258 | Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

If a claimant requests and is approved to enter the Process, a WTC Health Program physician will conduct a one-time disability evaluation of the claimant and prepare a disability evaluation report, which the claimant will submit with his/her claim. The VCF will consider the WTC Health Program Disability Evaluation report in combination with the facts and circumstances of the claim to determine if a lost earnings award is appropriate. It is important to note that receiving a WTC Health Program disability evaluation through the Process does not guarantee that you will be awarded lost earnings from the VCF.

See the WTC Health Program **Disability Evaluation Process** for complete details on the Process.

**Pending disability applications: What to do if you are waiting for a disability decision from a government entity or insurer.**

If you are requesting economic loss but you have a disability application pending, and if your application for disability is based on a condition that is eligible for the VCF, or if you intend to file for a disability based on your VCF-eligible condition, you should wait to submit your claim until the application is decided.

If you have already filed your claim requesting economic loss, but you have a disability application pending or you are qualified to apply for disability, you should notify the VCF immediately that there is a pending disability application or that you intend to apply. We will not process your claim until a determination on your disability application is made. In certain, very limited circumstances – for example, if your claim qualifies for expedited processing due to terminal illness or significant financial hardship (see **Section 8**), and the Special Master determines it appropriate – the VCF may issue an award that deducts a presumptive offset amount assuming that your disability application was decided favorably, and you will be able to amend your claim once the disability process is concluded for any necessary correction to your award. Please note, however, that this presumption of an offset will be used sparingly as the VCF does not want to place claimants in a position where it overpays an award and then is required to recoup funds already paid.

If you do not promptly notify the VCF of the pending disability application, and the VCF processes your claim and issues only a non-economic loss award, the claim for economic loss will be reviewed in priority order based on the date of submission of the amendment advising the VCF of the completed disability determination. If, on the other hand, you notify the VCF of the pending disability application and the VCF defers processing your claim, your claim will be reviewed in a priority order based on the original date of submission of your compensation form once the completed disability application is submitted in a subsequent amendment.

Cited in Selecti v Interim Special Master Aug E. Flentje
1:25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

Back to top

## e. Loss of employment-related benefits

The VCF award will include the value of lost employment-related benefits. Employment- related benefits include pension programs, retirement contribution programs, and health benefits. You will need to submit documents to show the benefits you received before the eligible injury/death and any claimed losses associated with employer-provided benefits.

### Defined benefit plans

In a defined benefit pension plan, the employer or other sponsor promises to pay specific retirement benefits based on the employee's or member's earnings history, length of service, and age. If you have a defined benefit pension that was or will be reduced because you retired early due to an eligible condition, the VCF may compensate you for that

loss. To do this, the VCF needs documents describing the pension plan and how the pension would be calculated.

The VCF has some of the information necessary to calculate pension loss for claimants who worked for New York City, New York State, the Federal government, and some private employers or unions. **See Section 2.2f for FDNY, 2.2g for NYPD, 2.2h for members of the New York City Employees Retirement System (NYCERS) and for members of the New York State and Local Retirement System (NYSLRS), 2.2i for members of members of Police and Firemen's Retirement System of New Jersey (PFRSNJ), 2.2j for Federal employees including the military and military reserve, 2.2k for Union/Verizon/Con Edison, and 2.2l for other employers that are not listed.**

If there is an indication that you are receiving, or are entitled to receive, a disability or survivor pension (or if the decedent received a disability pension before death), but you do not submit information necessary to calculate that pension or determine the basis of that pension, the VCF will not issue a full award and may issue only a non-economic loss award because, without that information, the VCF cannot determine whether an offset is appropriate and the amount of that offset. If you later amend your claim and submit the information, the VCF will be able to calculate your economic loss. If you are filing a deceased victim claim (i.e., a claim seeking wrongful death losses because the victim died as a result of his or her eligible 9/11-related condition), and the victim received or was entitled to receive a disability pension before death, or the victim's beneficiaries are receiving or are entitled to receive a survivor pension, you should consider waiting to file your claim until you have that information rather than submitting that information on amendment. If you wait to submit the information on amendment and the VCF changes your award, you may need to return to the court to have them lift any limitations on your Letters of Administration, Letters Testamentary, or other Court Order.

Cited in Sellech v Interim Special Master Aug E. Flentje
1:25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

### Defined contribution plans

If your employer provided benefits such as a 401K match or other types of benefits that you would ordinarily receive at the time of retirement, you should submit proof of such benefits in order for the VCF to compute the loss. For example, you may submit a letter from your employer describing the retirement benefit or paystubs that reflect the employer's contribution to your retirement account.

### If benefits information is not provided

If you do not submit complete information about your benefits, the VCF will apply its standard default values: a 401k employer contribution equal to 4% of base salary and $7,654.50 per year for health insurance. The VCF will also use the standard default values if you did not have benefits or if your benefits were less than the standard default values.

## f. Documentation to support loss of earnings and pension benefits for FDNY claimants

Back to top

For each FDNY victim who is claiming loss of future earnings and benefits and has provided the appropriate authorization, the FDNY sends the VCF the following information, which the VCF uses to calculate economic loss:

- Historical earnings:
  - This includes last 5 years' total earnings prior to retirement, including salary, holiday pay, night shift differential pay, and overtime.
- 1/60th calculation (for those who served over 20 years)
- Total annual retirement salary (i.e., pension amount)
  - In general, this is based on the higher of Year 5 earnings or 3-year-average. If Year 5 total earnings exceed 120% of average, the pension basis will be capped at 120%.
  - For those who have been granted a WTC disability or reclassification, the pension value is 75% of the higher value, with the exception noted above.
- Type of plan (tier)
- Date of appointment
- Date of retirement

Generally speaking, because we receive this information directly from the FDNY, an FDNY victim who has been granted a disability pension does not need to submit any additional pension documentation unless the claimant asserts loss from non-FDNY employment.

## Information specific to victims with an FDNY disability

Back to top

Cited in Settlerch v Interim Special Master Aug E. Flentje
1-25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

The VCF does not receive medical documentation directly from FDNY. Depending on their circumstances, FDNY victims should submit either two, three, or five documents (depending on their specific situation as explained below) to demonstrate that they have been found disabled as a result of a VCF-eligible condition or injury.

- **Victims who retired on a 3/4 Accidental Disability, or an ordinary disability, based on VCF-eligible conditions and who did NOT reclassify the disability should submit the following three (3) documents:**

**1. The FDNY Medical Board Committee Report**: This is a report from the Chief Medical Officer of the FDNY on FDNY letterhead regarding the "Result of Medical Committee," which summarizes the FDNY member's WTC-related exposure, medical history, diagnosis, and the Medical Board Committee's recommendation as to the extent of the member's disability and fitness for firefighting duty.

**2. Recommendation of the FDNY Pension Fund re: Accident Disability:** This is a recommendation of the 1-B Medical Board on FDNY letterhead regarding whether the individual should be awarded an accident disability retirement.

**3. Letter from the Board of Trustees of the Fire Department Pension Fund Regarding Award of Accident Disability Retirement:** This is a letter issued to the individual on FDNY letterhead from the Director of the Board of Trustees of the Fire Department Pension Fund regarding whether the Board approved or disapproved the victim's application for accident disability retirement.

- **Victims who retired on a 3/4 Accidental Disability and later reclassified the disability under the WTC Bill should submit five (5) documents:** The three documents noted above from the original disability retirement, PLUS the 1-B Medical Board Recommendation and the Board of Trustees Letter from the reclassification proceedings.
- **Victims who retired on a service pension and later reclassified to a 3/4 Accidental Disability under the WTC Bill should submit two (2) documents**: The 1-B Medical Board Recommendation and the Board of Trustees Letter from the reclassification proceedings.

FDNY victims who retired on a non-WTC-related accidental pension, ordinary disability pension that is not based on VCF-eligible conditions, or service pension will not be eligible for a lost earnings award unless they can provide a disability determination from a third-party entity – such as the Social Security Administration or a treating physician – that identifies a VCF-eligible condition as a basis of the disability determination.

Back to top

## g. Documentation to support loss of earnings and pension benefits for NYPD Claimants

Cited in Setecky Interim Special Master Aug E. Flentje
1:25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

For each NYPD victim who is claiming loss of future earnings and benefits and has provided the appropriate authorization, the NYPD sends the VCF the following information, which the VCF uses to calculate economic loss:

- Historical earnings: this includes last 5-year total earnings and 3-year average of highest 3 of 5 years
- 1/60th calculation (for those who served over 20 years)
- Pension amount: In general, this is based on the higher of Year 5 earnings or 3-year average
- Type of retirement: WTC Accidental or Reclassification, Accidental Disability (not WTC-related), Ordinary Disability (not WTC-related), or Service Retirement
- Date of appointment
- Date of retirement and, if reclassified, date of WTC reclassification
- Basis of disability determination generally: e.g., pulmonary, GERD, cancer, orthopedic

The NYPD also sends the VCF information/documentation regarding the basis of the NYPD victim's disability, if applicable. Specifically, the NYPD sends the VCF the underlying Medical Board Police Pension Fund Article II Reports that identify the basis of the disability determination for claimants who have retired on a WTC disability. This generally includes the final Medical Board report that identifies the final diagnosis and

recommends approval of a WTC disability, as well as any prior Medical Board reports issued that address the claimant's conditions and recommend approval, disapproval, or deferral on the claimant's disability application. It may also include documentation that was included in the claimant's pension file and was reviewed in the course of the disability determination process.

Generally speaking, a NYPD victim who has been granted a WTC disability pension does not need to submit any additional compensation/pension documentation unless the claimant asserts loss from non-NYPD employment.

NYPD victims who retired on a non-WTC-related accidental pension, ordinary disability pension that is not based on VCF-eligible conditions, or service pension will not be eligible for a lost earnings award unless they can provide a disability determination from a third-party entity – such as the Social Security Administration or a treating physician – that identifies a VCF-eligible condition as a basis of the disability determination.

Back to top

## h. Documentation to support loss of earnings and pension benefits for members of NYCERS and NYSLRS

Cited in Gettlech v. Interim Special Master Aug E. Flentje 1:25-cv-2561 Decided 8/11/26 Archived on 8/12/26 This document is protected by copyright. Further reproduction is prohibited without permission.

The VCF will calculate pension loss for victims who worked for a New York City agency that is part of the New York City Employees' Retirement System ("NYCERS")(e.g., NYC Department of Sanitation, the NYC Department of Corrections, or EMS personnel employed by FDNY), and victims who worked for New York State entities that are part of the New York State and Local Retirement System ("NYSLRS") (e.g., employees of New York State government agencies, municipalities in New York other than NYC, and other local government entities), if complete documentation is provided.

The VCF has arrangements with NYCERS and NYSLRS, whereby these entities provide directly to the VCF the information and documentation needed to evaluate disability, lost earnings, and pension benefits for its members (living and deceased), upon receipt of a completed Exhibit B1. You should not contact NYCERS or NYSLRS directly to obtain this information. Doing so will unnecessarily tie up limited resources and may delay claims processing.

**Note**: For deceased victims, the VCF will submit Personal Representative's Letters of Administration to both NYCERS and NYSLRS along with the completed Exhibit B1 form you provided with the claim. There are two requirements related to the Letters of Administration for NYCERS and NYSLRS claims:

- **NYCERS requires Letters of Administration dated within one year of the date the VCF (or the law firm for requests already sent directly to NYCERS) sends the request for information to NYCERS.** Therefore, the VCF may ask you to obtain updated Letters of Administration if they are older than one year at the time of our request. Do not contact NYCERS if

we ask you for updated Letters of Administration as the one-year rule applies to all requests for documents and this will burden their limited resources and delay the process. A copy is sufficient.

- **NYSLRS requires original or court certified Letters of Administration**. Therefore, for VCF claims that will need NYSLRS pension information, you must submit the original Letters of Administration, not a copy.

Back to top

## i. Documentation to support loss of earnings and benefits for members of PFRSNJ

The VCF will calculate pension loss for victims who were members of the Police and Firemen's Retirement System of New Jersey ("PFRSNJ") and had a defined benefit plan administered by the New Jersey Division of Pension and Benefits, if complete documentation is provided.

PFRSNJ victims
who are claiming loss of future earnings/benefits must submit the following documentation:

- A written statement confirming the victim does not have a New Jersey Workers' Compensation ("NJWC") case, or if the victim does have an NJWC case, they must provide all decisions from the case, including the dates and amounts of any benefits received, and the disabling conditions established in the case.
  - The following information which is used to calculate the victim's pension.
    - Membership date
    - Years of service
    - Final Compensation Amount/Final Average Salary
    - Type of retirement benefit (e.g., service, disability)
  - A written statement confirming the victim does not have any other previous PFRSNJ retirements. If the victim does have a previous retirement, the aforementioned pension information is required for each retirement.

Cited in Setlech v Interim Special Master Aug E. Flentje
1:25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

Individuals who receive a PFRSNJ disability pension should also submit documentation showing:

- The condition that is the basis of the disability pension. This must be either a letter on PFRSNJ letterhead listing the condition(s), or statement/printout showing the findings of the Medical Review Board ("MRB").
- The pension start date
- The disability pension amount
- The type of disability pension (e.g. Accidental, Ordinary, etc.)

Personal Representatives filing a wrongful death claim must also submit documentation showing the following:

- Type of survivor pension benefit
- Start date
- Amount of survivor benefit

## j. Documentation to support loss of earnings and benefits for Federal Employees Including Military Personnel

Back to top

### Military Personnel

Note that the VCF generally will not compensate for the loss of military earnings and benefits unless you left the service due to an eligible condition. If you were not medically discharged for an eligible condition, you should provide other evidence and explain how it establishes that the loss of your military earnings and benefits was caused by your eligible condition(s).

Compensation for military service members and uniformed service members is based on the amount of your basic pay ("BPY"), which is the largest component of military pay, plus any additional factors influencing military pay (e.g. longevity raises, overtime, bonuses, differential pay, etc.) as reflected in your taxable income reported to the Social Security Administration. Any additional factors influencing military pay are assumed to be included in your reported military pay and will not be compensated separately. In addition, compensation may include other military benefits or allowances if the appropriate documentation of the amount and duration of the benefits is submitted.

Individuals who submit a claim for a loss of future earnings/benefits from the Military or Military Reserve must submit documentation of the following:

- Date of initial entry to military service ("DIEMS")
- Basic Active Service Date ("BASD")
- Pay Date (Per Leave and Earnings Statement)
- Current grade or grade at retirement
- Type of retirement from the military (e.g. service, disability), if applicable
- Date of retirement from the military, if applicable
- Final points statement
- Most recent pay statement showing various allowances, benefits, and special pay
- If receiving military retired pay: start date and benefit amount

If you have been found partially or totally disabled by the Military, submit complete documentation of the basis of your medical retirement (e.g. Medical Evaluation Board and/or Physician Evaluation Board report).

### Veterans Administration Disability Determinations

If you have been found partially or totally disabled by the Department of Veterans Affairs ("VA") because of your military service, notify the VCF. We will obtain complete documentation of your service-connected disability compensation, including all rating decisions and all changes to the amount of your VA compensation, directly from the VA. If you are

Cited in Setlech v Interim Special Master Aug E. Flentje 1-25cv02331 Decided 8/11/26 Archived on 8/12/26 This document is protected by copyright. Further reproduction is prohibited without permission.

receiving Combat-Related Special Compensation or Concurrent Retirement and Disability Pay, submit a complete history of the amount and duration of benefits received.

**FERS and CSRS**

Federal employees in the Federal Employees Retirement System ("FERS") or Civil Service Retirement System ("CSRS") who are claiming loss of future earnings/benefits must submit the following:

- Documentation showing the Effective Date and the victim's final grade, step, and location – the best source of this information is the most recent SF-50 (Notification of Personnel Action) prior to retirement. The victim's most recent Earning and Leave Statement prior to retirement may have all of this information except the Effective Date, so if that document is submitted in place of the SF-50, the claimant will need to also provide his/her Effective Date.
- SF-50 (Notification of Personnel Action) from the victim's retirement.
- The start date and amount of the victim's pension.
- The following information, which is used to calculate the victim's pension. Note that this information should be in a letter that was sent to the victim at retirement or in a Federal Retirement Benefits printout:
  - Date that victim entered the FERS system (date used to calculate Creditable Service for Retirement)
  - Retirement date
  - Total years and months of credited service
  - "Average High-3 Salary"

Cited in Setlech v Interim Special Master Aug E. Flentje
1-25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

Individuals who receive a disability pension from FERS should also submit:

- Letter from Office of Personnel Management ("OPM") confirming that the victim's disability retirement has been approved and stating the conditions forming the basis of the disability
- Amount of Monthly Disability Pension in first 12 months (already reduced by Social Security benefits)
- Amount of Disability Pension after 12 months (already reduced by Social Security benefits)
- Estimate of re-calculated Disability Pension at age 62

Personal Representatives filing a wrongful death claim must submit a letter from OPM confirming the following:

- Type of survivor benefit (e.g., Basic Employee Death Benefit, Survivor Annuity)
- Amount of survivor benefit

Back to top

## k. Documentation to support loss of earnings and pension benefits for members of a union, or employees of Con Edison or Verizon:

For union members and employees of Con Edison or Verizon, the VCF models typically include: (1) a defined benefit pension equal to 15% of base salary, and (2) an annuity equal to 7% of base salary if your union offers an annuity fund.

If you are submitting a claim for loss of future earnings/benefits from a union, or from Con Edison or Verizon, you must submit:

- A Pension Work History or similar document from the union, showing the number of hours worked and credits earned in every year of work.
  - If you are an employee of Con Edison or Verizon, pension calculation statements from Con Edison or Verizon
- A letter from the union/Con Edison/Verizon stating the following:
  - The type of pension you are receiving (e.g. service, disability)
  - The start date of the pension
  - The monthly amount of your pension
  - If you are receiving a lump sum pension, the amount of the lump sum pension.
- If you are not receiving a pension, submit a letter from your union/Con Edison/Verizon stating that you are not receiving a pension.
- Personal representatives must submit the following:
  - A letter from the union/Con Edison/Verizon stating the monthly (or lump sum) amount of your survivor pension.
  - The type of survivor option selected (e.g., 100% joint and survivor).

Back to top

### l. Documentation to support loss of earnings and pension benefits for other employers not listed above:

Cited in Setlock v. Interim Special Master Aug E. Flentje
1-23cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

If your employer is not listed above but offers a defined benefit pension, you must submit evidence that your employer offers a defined benefit pension and how that pension was calculated, such as a pension calculation statement, retirement statement, or a pension option letter.

If you are receiving a pension (either directly or as a beneficiary of a decedent), you will be required to submit:

- The start date of the pension
- The amount of the pension
- The type of pension (e.g., ordinary, service, disability, etc.)
- If you receive a disability pension, documents showing the injuries or conditions that the pension is based upon

Back to top

## 2.3 Detailed Explanation of Methodology used to Calculate Future Lost Earnings

In general, the VCF will use the following procedures and assumptions for determining future lost earnings for both deceased and injured victims:

1. Age, start of loss and compensable income: Establish the victim's age and compensable income at death or at the time the victim was

determined to be unable to work by a governmental entity, or had to reduce work, and suffered a loss of income as a result of eligible conditions. The start of loss date is typically the onset date of disability. There are some cases, however, where a victim continued to earn income at the same level after s/he was determined to be disabled by a governmental entity. In those cases, the VCF may use the later date – that is, the date when the victim actually suffered a loss in earnings.

Income will be determined based on the documents submitted with the claim and on data obtained from SSA earnings reports. Generally, the Special Master will consider the three calendar years of employment history before the decrease in the victim's earnings capacity as a result of the victim's disability due to the eligible conditions or the victim's death, but the Special Master also may consider other factors or other years or combinations of years in evaluating the claim. Where there is a finding of partial disability or if there are multiple disability determinations, some for eligible conditions and some for ineligible conditions, the VCF will compute the percentage of income "lost" based on the percentage of disability attributable to eligible conditions. In some cases, the VCF will apply a computation of future residual earnings for individuals who are disabled from a specific job but who are otherwise able to perform a different occupation. In general, the standard amount used to calculate future residual earnings capacity is the minimum wage applicable to all employers in New York City, ($35,360 in 2026). The VCF will also consider when and how a claimant left the workforce, particularly if the claimant stopped working before the disability onset date identified in the disability determination.

Cited in Setlech v. Interim Special Master Aug E. Flentje
1-25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

2. After-tax income: Determine after-tax compensable income by applying the average effective combined federal, state, and local income tax rate for the victim's income bracket currently applicable in the state of the victim's domicile for tax purposes. The Special Master uses effective income tax rates derived from published Internal Revenue Service ("IRS") data on selected income and tax items for Individual Income Tax Returns by State. [2] Effective income tax rates derived from IRS data for New York are shown in Table 1 below.

| **Table 1**<br>**Presumed Future Effective Combined Federal, State and Local Income Tax Rates for New York** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | |
| **$10,000** | **$20,000** | **$25,000** | **$30,000** | **$35,000** | **$40,000** | **$45,000** | **$50,000** | **$60,000** | **$70,000** |
| 12.39% | 12.83% | 13.27% | 13.03% | 12.80% | 13.33% | 13.85% | 14.64% | 15.44% | 16.23% |
| **Income** | | | | | | | | | |
| **$80,000** | **$90,000** | **$100,000** | **$125,000** | **$150,000** | **$175,000** | **$200,000** | **$225,000** | **$350,000** | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 17.02% | 18.58% | 20.13% | 21.72% | 23.32% | 24.91% | 26.51% | 30.15% | 33.79% | |
| Note: Calculated from data reported by the Internal Revenue Service's Statsitics of Income (SOI) Division for individual income tax returns Forms 1040, 1040A, 1040EZ for Tax Years 2020, 2021, and 2022 (Table 2) Obtained from the IRS website https://www.irs.gov/statistics/soi-tax-stats-historic-table-2 | | | | | | | | | |

3. Employer-provided benefits: Add the value of employer-provided benefits (or other benefits received through employment, such as from a union or government pension program). These benefits will be set at actual levels if you provide the necessary data.

If you do not provide sufficient evidence of the benefits you received through employment, the VCF will assume that the employer's retirement contribution is 4% of base salary and that medical benefits are $7,654.40 per year in current year dollars and will adjust for applicable inflation.

If, as a benefit of your employment, you are a member of a defined benefit pension plan, and you submit documentation of all information required to calculate a pension benefit under your plan, the VCF generally will calculate your benefits using that data.

4. Work-life expectancy: Lost earnings and benefits are calculated by the models through the victim's presumed work-life. The VCF models include data which determines the victim's expected remaining years of workforce participation using the tabulated work-life expectancies for the victim's age at the time of death or at the time the victim was unable to work, or had to reduce work, as a result of eligible conditions contained in the publication, Gary R. Skoog, James E. Ciecka, Kurt V. Krueger, "The Markov Model of Labor Force Activity 2012-17: Extended Tables of Central Tendency, Shape, Percentile Points, and Bootstrap Standard Errors," Journal of Forensic Economics, Volume 28, Issue 1 (2019), pp. 15-108. These are generally accepted tables of work-life expectancy regarding the general population.

Work-life expectancies are based on actual experiences and behavior of the general population and measure the estimated time in years an individual of a given age will remain in the labor force (either employed or actively seeking work), allowing for age-specific mortality risks and rates of workforce transitions. The Special Master will use the expected work-life for individuals, with a full-time beginning labor force state, to compute expected remaining years of workforce participation. The work-life expectancies are shown in Table 2 below.

Cited in Selecky v Interim Special Master Aug E. Flentje
1:25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

**Table 2**

**Expected Remaining Years of Workforce Participation**

| Age | All Active Individuals |
|---|---|
| 25 | 34.87 |
| 30 | 30.66 |
| 35 | 26.37 |
| 40 | 22.14 |
| 45 | 18.01 |
| 50 | 14.13 |
| 55 | 10.53 |
| 60 | 7.36 |

Source: Gary R. Skoog, James E. Ciecka, Kurt V. Krueger (2019) The Markov Model of Labor Force Activity 2012-17: Extended Tables of Central Tendency, Shape, Percentile Points, and Bootstrap Standard Errors. Journal of Forensic Economics, Volume 28, Issue 1, pp. 15-108.

As a matter of general policy, the VCF will not award lost earnings if the victim was 70 years old or older at the time of disability or death. In the case of a victim whose only eligible disability determination is a reclassification decision from the FDNY, NYPD, NYCERS, or NYSLRS, the VCF generally will not award lost earnings if the victim was 65 years old or older at the time of reclassification, based upon the presumption that the victim had reached his or her reasonable work-life expectancy. Exceptions may be considered if the victim (or his or her authorized representative) submits evidence to support the assertion that the victim would have participated in the workforce after age 65 (in the case of a reclassification) or 70 (in all other cases), such as the victim's need to support minor children. A statement that the victim would have worked until a certain age beyond the default age calculated by the model is not by itself enough to change the work-life expectancy.

Cited in Getlech v. Interim Special Master Aug E. Flentje
1-25cv02501 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

Please note that there is a distinction between the age at disability/death onset and the work-life expectancy date calculated by the model. Although the threshold to award lost earnings is age 70 or younger, the VCF calculates the lost earnings award through the default worklife expectancy calculated by the model, even if it extends past age 70. For example, for a victim who is disabled at age 68, the model calculates lost earnings until age 73, based on the Markov data referenced above. In a wrongful death claim, if the victim became disabled by an eligible condition before age 70 but was over age 70 at death, lost earnings can be awarded through the worklife expectancy calculated by the model even if it extends beyond the victim's death at 70 or older.

5. Growth rates: The VCF projects compensable income and benefits through the victim's expected work-life using growth rates that incorporate an annual inflationary or cost-of-living component, an annual

real overall productivity or scale adjustment in excess of inflation, and an annual real life-cycle or age-specific increase derived using data on average full-time year-round earnings by age bracket from the 2024 Current Population Survey ("CPS"), a monthly survey of households conducted by the Bureau of the Census for the Bureau of Labor Statistics. This survey is widely recognized as a primary source of data on employment status and workforce characteristics of the civilian non-institutional population ages 16 years and older.

Independent of life-cycle increases, inflation, real overall productivity, and medical inflation increases of 2.3%, 1.83%, and 0.74%, respectively, are applied each year. These rates of increase are consistent with the long-term relationship between economy-wide wage growth and risk-free interest rates, which currently reflect slightly higher long-term inflationary expectations. A schedule containing age-specific earnings growth rates reflecting the combined inflation, overall productivity, and life-cycle increases is shown in Table 3 below. The Special Master has determined that individual age-specific growth rates, rather than growth independent of a particular age bracket at death, better reflects the expected pattern of earnings over one's career[3] and results in more equitable and consistent projections for victims close to each other in age with otherwise similar family and employment characteristics.

Cited in Sellech v. Interim Special Master Aug E. Flentje
1:25cv02561 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

**Table 3**
**Presumed Age-Specific Earnings Growth Rates**
**(Including Life-Cycle, Inflation, and Overall Productivity Increases)**

| Age | Earnings Growth Rate |
|---|---|
| 18 | 9.347% |
| 19 | 9.179% |
| 20 | 9.013% |
| 21 | 8.852% |
| 22 | 8.653% |
| 23 | 8.455% |
| 24 | 8.257% |
| 25 | 8.060% |
| 26 | 7.863% |
| 27 | 7.666% |
| 28 | 7.469% |
| 29 | 7.273% |
| 30 | 7.078% |

| | |
|---|---|
| 31 | 6.882% |
| 32 | 6.687% |
| 33 | 6.493% |
| 34 | 6.298% |
| 35 | 6.104% |
| 36 | 5.911% |
| 37 | 5.717% |
| 38 | 5.525% |
| 39 | 5.332% |
| 40 | 5.140% |
| 41 | 4.948% |
| 42 | 4.756% |
| 43 | 4.565% |
| 44 | 4.375% |
| 45 | 4.184% |
| 46 | 3.994% |
| 47 | 3.804% |
| 48 | 3.615% |
| 49 | 3.426% |
| 50 | 3.237% |
| 51 | 3.049% |
| 52+ | 3.000% |
| Note: Nominal percentage changes assume annual inflation or cost of living increases of 2.3% plus overall productivity adjustments of 1.83% per year. The underlying real life-cycle percentage change is calculated using a regression analysis of log of total earnings on experience and experience squared using earnings for full-time year-round male workers from the 2024 Current Population Survey (CPS) table PINC-04. | |

Cited in Setlech v. Interim Special Master Aug E. Flentje
1-25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

6. Risk of unemployment: To better reflect contingencies that the victims would have faced, all projected earnings and fringe benefits (assumed to be received during projected employment and until work-life expectancy) amounts will be adjusted for a factor to account for the risk of unemployment as lifetime jobs are not representative of the modern economy. This adjustment is made because work-life expectancies are

based on years of expected workforce participation, which, as defined by the Bureau of Labor Statistics, include periods an individual is either working or seeking work. Historical unemployment rates were examined and a reduction factor of 6% is applied to presumed earnings and fringe benefits to account for this risk[4].

7. Personal consumption adjustment for decedents: For claims for deceased victims whose death was related to an eligible condition, the VCF subtracts from annual projected compensable income and benefits the decedent's share of household expenditures or consumption as a percentage of income, using expenditure data by income level obtained from "Table 1203. Income before taxes: Annual expenditure, means, shares, standard errors, and relative standard errors, Consumer Expenditure Survey, 2023," published by the Bureau of Labor Statistics ("BLS"). This subtraction is a standard adjustment in evaluating loss of earnings in wrongful death claims because some amount of the income the decedent would have contributed to the household would have been consumed personally by the decedent and not available to other household members. A decedent's expenditures were calculated as a share, based on household size, of certain expenditure categories. For married or single individuals with dependents,[5] these expenditure categories include Food, Apparel & Services, Transportation, Entertainment, Personal Care Products and Services, and Miscellaneous. For single individuals without dependents, Housing, Education and Health are also included.[6] For lower income categories where total expenditures exceed income, expenditures were scaled to income, so as not to reduce income for expenses potentially met by other forms of support. This approach was intended to avoid a penalty to the victim. Table 4 below shows calculated consumption rates by income bracket and for various household sizes.

Cited in Getech v. Interim Special Master Aug E. Flentje 1-25cv02581 Decided 8/11/26 Archived on 8/12/26 This document is protected by copyright. Further reproduction is prohibited without permission.

**Table 4**
**Decedent's Personal Expenditures or Consumption as Percent of Income**

| | Income | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | **$10,000** | **$20,000** | **$25,000** | **$30,000** | **$35,000** | **$40,000** | **$45,000** | **$50,000** | **$60,000** |
| Single | 66.3% | 60.3% | 57.2% | 54.2% | 53.7% | 54.9% | 56.2% | 57.3% | 58.4% |
| Single, 1 dependent child | 17.9% | 16.3% | 15.5% | 14.8% | 15.4% | 15.5% | 15.6% | 16.1% | 16.6% |
| Married, no children | 39.0% | 37.0% | 36.0% | 35.1% | 31.9% | 27.2% | 22.5% | 22.2% | 21.8% |
| Married , 1 dependent child | 20.4% | 19.5% | 19.0% | 18.6% | 18.0% | 16.3% | 14.5% | 14.4% | 14.3% |
| Married , 2 dependent | 13.8% | 13.2% | 13.0% | 12.7% | 12.6% | 11.6% | 10.7% | 10.7% | 10.6% |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| children | | | | | | | | | |
| **Income** | | | | | | | | | |
| | **$70,000** | **$80,000** | **$90,000** | **$100,000** | **$125,000** | **$150,000** | **$175,000** | **$200,000** | **$225,000** |
| Single | 55.4% | 52.5% | 51.1% | 49.7% | 47.0% | 44.4% | 41.8% | 37.5% | 33.3% |
| Single, 1 dependent child | 15.7% | 14.9% | 14.5% | 14.1% | 13.4% | 12.8% | 12.3% | 10.6% | 8.9% |
| Married, no children | 19.4% | 17.6% | 16.7% | 15.8% | 14.7% | 13.5% | 12.3% | 10.4% | 8.5% |
| Married , 1 dependent child | 12.9% | 11.8% | 11.2% | 10.7% | 9.9% | 9.3% | 8.6% | 7.2% | 5.9% |
| Married , 2 dependent children | 9.6% | 8.9% | 8.5% | 8.1% | 7.5% | 7.0% | 6.6% | 5.6% | 4.5% |

In determining household size for claims for decedents, the Special Master will assume that children will remain in the household through age 23. Consumption rates calculated using alternative techniques were considered but found to produce higher personal consumption rates and were not ultimately used to determine the decedent's household consumption adjustment.[7] Although the consumption rates determined from BLS data actually represent household expenditures as a percent of before-tax household income, the actual consumption reduction used to determine the decedent's personal expenditures was calculated as a percent of lower after-tax income, which significantly lowers the resulting adjustment. In addition, the victim's consumption is determined as a share of the victim's own earnings only, rather than the standard share of total household earnings. This further lessens the resulting subtraction, compared to personal consumption rates typically applied in litigation, if there are other earners in the household.

8. Application of statutory limitation on annual gross income: In accordance with the VCF Act, for each year of loss, the methodology limits the annual loss of earnings and other benefits related to employment that fall under the definition of gross income in section 61 of the Internal Revenue Code of 1986 to $255,610. The methodology computes the loss in each year (including pensions) and caps the loss at $255,610 in each year. The methodology applies adjustments for taxation, risk of unemployment, employee contributions, and personal consumption for deceased victim claims before applying the annual limit. The methodology accounts for the loss of employer-provided health plans after application of the limit because such costs are exempted from gross income.

9. Present value: Calculate the present value of projected earnings and fringe benefits using discount rates based on a weighted average of

Cited in Setechy Interim Special Master Aug E. Flentje
1:25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

historical yields on mid- to long-term U.S. Treasury securities, adjusted for income taxes using a mid-range effective tax rate.[8] Because the period of presumed economic losses is either longer or shorter, depending on the victim's age, the present value calculations are performed using yields on a blend of securities with longer or shorter times to maturity. For computational efficiency, three blended after-tax discount rates were used, depending on the victim's age as of date of death or time the victim was unable to work, or had to reduce work, as a result of eligible conditions, and assumed to apply for all years forward. These rates are shown in Table 5 below.[9] The present value adjustments will be based on the period of presumed economic loss (which is in turn based on the age of the victim).

**Table 5**
**Assumed Before-Tax and After-Tax Discount Rates**

| Age of Victim | Before-Tax Discount Rate | After-Tax Discount Rate |
|---|---|---|
| 35 & Under | 3.2% | 2.7% |
| 36 - 54 | 3.0% | 2.5% |
| 55 & Over | 2.6% | 2.2% |

Note: The present value of presumed economic loss is calculated by applying the after-tax discount rate corresponding to the victim's age at death to all future periods. For example, projected earnings and benefits for a victim who was 30 years old at the time of death will be discounted to present value at 2.7% per year for all future years and projected earnings and benefits for a 45-year old victim will be discounted to present value at 2.5% per year for all future years.

Cited in Settlecy Interim Special Master Aug E. Flentje 1-25-cv-0560 Decided 8/11/26 Archived on 8/12/26
This document is protected by copyright. Further reproduction is prohibited without permission.

10. Assumptions: The computation methodology adopts a number of assumptions implemented to facilitate analysis on a large scale. When viewed in total, these assumptions are designed to benefit the victim and are more favorable than the standard assumptions typically applied in litigation. For example, the Special Master considered that over the course of their projected careers, younger victims could expect to cross into higher income brackets, and be subject to corresponding higher income tax rates, on account of experience-based real lifetime earnings growth in excess of economy-wide national wage increases. To calculate economic losses, however, whatever income tax rate corresponded to the victim's determined compensable income bracket as of the date of death, or time the victim was unable to work or had to reduce work as a result of eligible conditions, was assumed to apply for the remainder of the victim's career, without increase. Likewise, the calculations of economic losses also assume that the personal consumption percentage corresponding to the victim's determined compensable income bracket as of the date of death, or time the victim was unable to work or had to reduce work as a result of eligible conditions, applies for the remainder of the victim's career, without decrease (assuming that no children are leaving the household

and the household size remains the same). It was determined that the net effect of these and other facilitating assumptions was to increase the potential amount of presumed economic loss to the benefit of the victim.

Back to top

## 2.3.1 Compensation for VCF1 Claimants Who Were Paid in VCF1

If you received an award in VCF1, you can amend your claim and qualify for additional compensation if:

a. Your VCF1-eligible injury or condition has substantially worsened;

**OR**

b. You have a new physical injury or condition that you had not suffered at the time of the VCF1 claim filing or that was not compensable at the time of VCF1;

**AND**

c. You have not already been fully compensated for your losses.

When evaluating whether additional compensation should be awarded, the VCF considers the types of conditions compensated, the type, nature, and amount of compensation awarded, and the basis and timing of any lost earnings awarded in VCF1. A claimant will be considered to have been fully compensated if the compensation s/he received in VCF1 exceeds the amount of compensation s/he is eligible to receive in VCF2 based on his/her eligible conditions and the circumstances of the claim. For that reason, even if a claimant's eligible condition has worsened since VCF1, s/he may not qualify for additional losses. Moreover, the VCF will not reconsider or recalculate any component of the VCF1 award or change any assumptions made in the VCF1 calculation. Below are some illustrative examples of how VCF1 awards are considered:

- If you received $125,000 of non-economic loss in VCF1 for asthma, and you amend in VCF2 for additional non-economic loss for newly certified interstitial lung disease and emphysema that have progressively worsened, the VCF will consider you to be fully compensated for your eligible conditions and will not award additional non-economic loss. The VCF is required to consider your non-economic loss in the context of the current statutory caps. Because your VCF1 non-economic loss exceeds the maximum amount allowed by law for those conditions ($90,000), no additional losses will be awarded.
- If you were found to be partially disabled due to an eligible condition in VCF1 based on an FDNY disability determination, and the Social Security Administration subsequently determined that you became fully disabled due to the same condition after your VCF1 award was issued, you may be eligible for additional compensation. The VCF considers the fact that you became more (fully) disabled after your VCF1 award was issued as evidence that your same, eligible condition has worsened and that you suffered losses that were not previously fully compensated. Note that

Cited in Setlech v Interim Special Master Aug E. Flentje 1:25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

proof of exacerbation is required to support an additional award for economic loss in VCF2 if economic loss was awarded in VCF1. Thus, a determination by SSA that you were already fully disabled at the time that the VCF1 award was issued will not support additional loss, even if the SSA does not make that determination until after your VCF1 award was issued, and even if the VCF1 did not consider you to be fully disabled, because that new determination does not establish that your disability has actually worsened since the time VCF1 considered your conditions.

Back to top

# 2.4 Other Types of Economic Loss

## a. Past out-of-pocket medical expenses

Back to top

As part of the economic loss component of your claim, you can request reimbursement for past out-of-pocket medical expenses you have paid as a result of your eligible condition(s). Your claim for reimbursement of past out-of-pocket medical expenses will **only** be considered if the criteria outlined below are met:

- The expenses were paid prior to the date the WTC Health Program certified the applicable condition as eligible for treatment ("applicable condition" refers to the specific condition for which the expenses were incurred). Because you are eligible for treatment and medications once your condition is certified, the VCF will not reimburse for expenses you incur after your condition is certified if you decide to be treated by a non-WTC Health Program physician, or to have your prescriptions filled by an unaffiliated pharmacy.
- The expenses are related to an eligible condition that was verified through the VCF Private Physician Process. Expenses related to these conditions may be eligible for reimbursement before and after the date the VCF verified the condition as eligible, since the treatment of the conditions is not covered by the WTC Health Program.
- The total amount of the claimed medical expenses incurred due to eligible conditions exceeds $5,000, and the VCF is able to verify at least $5,000 of the claimed out-of-pocket expenses based on the submitted documentation.
- The expenses are acceptable expenses as outlined in Acceptable Medical Expenses Claims below.
- The claim is submitted with the required documentation and in the required format, as explained in Documentation Required to Support a Medical Expenses Claim below.

The Special Master may exercise discretion to waive one or more of these requirements as appropriate based on individual claimant circumstances. If you wish to seek a waiver, please contact the VCF Helpline.

Because claims for reimbursement of out-of-pocket medical expenses require the submission and review of significant documentation establishing that the claimed medical expense was related to your eligible condition, that you personally paid for the expense out of pocket, and that

Cited in Setleh v Inteim Special Master Aug E. Flentje
1:25-cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

the expense was incurred prior to your WTC Health Program certification for the applicable condition, processing these claims takes time and can delay your award. As a result, the VCF has established specific criteria about **when and how** you should submit your claim for medical expenses. Please review the details below specific to personal injury and deceased victim claims.

### When to File a Medical Expenses Claim

- **Personal Injury Claims:** Claims for medical expenses must be submitted as a compensation amendment to your claim only **after** you have received your initial award determination. This allows the VCF to issue your initial award determination more quickly, since we are not spending time during our initial review to verify each claimed medical expense. You may also amend your claim to seek reimbursement for medical expenses after receiving a revised award decision. Instructions for how to amend your claim can be found under “Forms and Resources."

The amendment may be filed at any time following receipt of your initial award determination, but no later than October 1, 2090.

- **Deceased Victim Claims:** Claims for medical expenses may be submitted as part of your initial claim. This is because for deceased claims, the expenses should be known at the time the claim is filed as they were incurred prior to the victim’s death. The VCF will also consider the claims on amendment, but changes to an award on amendment may require you to return to the court to have them lift any limitations on your Letters of Administration, Letters Testamentary, or other Court Order.

- **Pending Claims and Amendments:**

Personal Injury Claims: If you have already filed a claim for medical expenses as part of your personal injury claim form submission, *the VCF will not review the expenses as part of our initial review of your claim*.

Once you receive your award determination, you will need to determine if the out-of-pocket medical expenses you incurred meet the $5,000 minimum threshold and other criteria noted above and are acceptable expenses as described in Acceptable Medical Expenses Claims below. You are not required to amend your claim if you decide you no longer want to seek reimbursement for medical expenses. If the paid medical expenses you incurred meet the VCF criteria, and you want to seek reimbursement of the expenses, you must submit an amendment to reactivate your request. You do not need to resubmit documents in support of your medical expenses claim if you already submitted them with your claim form, although you may submit additional documentation. You must be certain any documentation you provide meets the requirements outlined in Documentation Required to Support a Medical Expenses Claim below.

*If you have already filed an amendment to seek medical expenses reimbursement*, the VCF will review the expenses as part of our review of

Cited in Setlech v Interim Special Master Aug E. Flentje 1-25-cv-02581 Decided 8/11/26 Archived on 8/12/26 This document is protected by copyright. Further reproduction is prohibited without permission.

your amendment, provided the expenses meet the established criteria. You do not need to resubmit documents you have already submitted in support of your amendment, but you must be certain the documentation you provided meets the requirements outlined in Documentation Required to Support a Medical Expenses Claim below.

Deceased Victim Claims: If you filed an amendment for medical expenses on a deceased claim, we will review the amendment.

### Acceptable Medical Expenses Claims

**Types of Expenses Covered**

Under the VCF Act, the VCF does not compensate for potential or anticipated future medical expenses.

Compensable expenses include costs you have paid out-of-pocket for prescription medication, prescribed medical equipment, doctor visits, diagnostic tests, surgeries, or other medical procedures relating to your eligible condition(s). The VCF will not compensate for any travel expenses you incurred while seeking medical treatment, including the cost of gas, public transportation, hotels, and meals, except in extraordinary circumstances. Other expenses that are not eligible for reimbursement include insurance premiums, expenses related to replacement services, investigational and holistic treatment, home health care or in-home aides, nursing home/live-in rehabilitation facilities, wigs, household items such as vacuum cleaners, air filters, and water filters, or home modifications.

Compensable expenses do not include any costs for which you have been, or will be, reimbursed by your insurance company, a secondary payer (like Medicaid, Medicare, or a second insurance provider), or any other collateral source.

- If you have insurance, the VCF will not compensate for any expenses that have not yet been evaluated by your insurance company or any applicable secondary payer.
- If the service or medication is provided to you by the WTC Health Program, it is not eligible for reimbursement from the VCF and you should not include it with your claim.
- Treatment expenses covered by private health insurance, Workers' Compensation, or other programs will not be reimbursed. If you receive a benefit intended to cover medical expenses from a workers' compensation program or any other collateral source, please include information regarding that payment, so that it can be appropriately offset from your medical expenses award.
- Treatment expenses billed to you as a co-payment, after denial of insurance coverage, or that you pay because they fall within your insurance deductible, may be reimbursed if appropriate documentation is submitted.

**Timing of Reimbursable Expenses**

Cited in Sedech v. Interim Special Master Aug E. Flentje
1:25cv02587 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

Under the VCF Act, the VCF does not compensate for potential or anticipated future medical expenses. The VCF will consider reimbursement of out-of-pocket medical expenses that you incurred up until the date of WTC Health Program certification of the applicable condition(s). Expenses you incurred after the date of certification are not eligible for reimbursement. If you are claiming medical expenses relating to conditions with different certification dates, you can claim reimbursement for applicable expenses up to the certification date for each individual condition. If you have already filed a claim for reimbursement of expenses that you incurred after your certification date for the applicable condition, the VCF will not reimburse for these expenses. We will still review your claim to see if it includes reimbursable expenses that you incurred before the applicable condition was certified.

If you are claiming reimbursement for expenses related to conditions that are verified as eligible through the VCF Private Physician Process, we will consider reimbursement for expenses you incurred at any time before you filed your medical expenses claim, subject to the specific circumstances of your individual claim. This means you may file multiple claims for medical expense reimbursement over time as you incur additional out-of-pocket costs, as long as each claim meets the $5,000 threshold and all other criteria for reimbursement are met.

Cited in Setech, Interim Special Master Aug E. Flentje
1-25cv02381 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

**The Minimum Monetary Threshold**

The VCF will consider claims for medical expenses only if the total amount legitimately claimed in your amendment exceeds $5,000. The “total amount legitimately claimed” means that the claimed expenses are reasonably related to your eligible conditions (as identified in your most recent eligibility determination letter) and that you have documentation demonstrating that you paid the expense out-of-pocket. The VCF will only reimburse the expenses, however, if a minimum of $5,000 can be verified as valid expenses. This means even if you claim $5,000 or more in expenses, we will only reimburse the expenses if we can validate at least $5,000 of the claimed expenses.

## Documentation Required to Support a Medical Expenses Claim

If your medical expenses claim does not meet the documentation requirements described in this section, the VCF reserves the right to deny the claim. For the VCF to consider your claim for medical expenses, you must submit the following documents in support of your claim:

- VCF Medical Expense Worksheet The worksheet must be completed following the **specific instructions** provided with the Worksheet; and
- A **Medical Expense Supporting Documentation Packet** that verifies: (a) the relationship of each claimed expense to one of your eligible conditions; and (b) the amount of each claimed expense that you have paid out-of-pocket. For each discrete medical expense entered on the Medical Expense Worksheet, the Supporting Documentation Packet must include the following:

(1) A document that demonstrates that the expense is related to one of your eligible conditions as explained below, ***unless*** the expense is on the list of **Presumptively Compensable Expenses** (see Table 6 below); **and**

(2) A document that demonstrates the amount of the expense that you have paid out- of-pocket, as explained below.

When uploading the Supporting Documentation Packet to your claim, **select the document type "Medical Expense Supporting Documentation Packet." If you fail to include the required supporting documentation, your claim for medical expenses will be denied.**

If the VCF, with reasonable effort, cannot clearly identify the required documentation necessary to support each claimed medical expense, the VCF reserves the right to deny your medical expenses claim.

### Table 6: Presumptively Compensable Expenses

*This chart may change over time.*

Cited in Setlech v. Interim Special Master Aug E. Flentje
1:25-cv-0258 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

| **Condition Category** | **Includes** | **Presumptively Compensable Medications**<br><br>(generic name is listed first, followed by brand name) | **Presumptively Compensable Procedures** |
|---|---|---|---|
| **Obstructive Airway Disease** | ▪ Asthma<br>▪ Bronchiectasis<br>▪ Chronic airway obstruction<br>▪ Chronic bronchitis<br>▪ Chronic obstructive pulmonary disease (COPD)<br>▪ Emphysema<br>▪ Reactive airways disease<br>▪ Reactive airways dysfunction<br>▪ Respiratory conditions due to fumes and vapors | ▪ Albuterol (ProAir, Proventil, Ventolin)<br>▪ Atrovent (ipratropium)<br>▪ Beclomethasone (Qvar)<br>▪ Benzonatate (Tessalon Perles)<br>▪ Budesonide (Pulmicort, Symbicort)<br>▪ Ciclesonide (Alvesco)<br>▪ Fluticasone propionate (Advair, Flovent)<br>▪ Formoterol (Dulera, Foradil, Symbicort)<br>▪ Ipratropium (Atrovent)<br>▪ Levalbuterol (Xopenex)<br>▪ Metaproterenol (Alupent)<br>▪ Mometasone (Asmanex, Dulera)<br>▪ Montelukast (Singulair)<br>▪ N-acetylcysteine (Mucomyst)<br>▪ Oxygen<br>▪ Pirbuterol (Maxair)<br>▪ Salmeterol (Advair, Serevent)<br>▪ Terbutaline (Brethine)<br>▪ Tiotropium (Spiriva)<br>▪ Zafirlukast (Accolate)<br>▪ Zileuton (Zyflo)<br>▪ Expectorants | ▪ Bronchoscopy<br>▪ CAT Scan Chest/Thorax (CT)(CT Scan)<br>▪ PET Scan Chest/Thorax<br>▪ Chest X-ray (CXR)<br>▪ MRI Chest<br>▪ Pathology – lung specimens<br>▪ Sputum Cultures<br>▪ Thoracoscopy/ Thoracotomy<br>▪ Video-Assisted Thoracotomy (VAT)<br>▪ Wedge resection of the lung<br>▪ Lung transplantation |

| | | | |
|---|---|---|---|
| | | ▪ All Bronchodilators<br>▪ Antibiotics<br>▪ Oral corticosteroids | |
| **Interstitial Lung Disease** | ▪ Asbestosis<br>▪ Granulomatosis<br>▪ Interstitial pneumonia<br>▪ Pneumonitis<br>▪ Pulmonary fibrosis<br>▪ Sarcoidosis<br>▪ Pneumoconioses | ▪ Azathioprine (AZA, Imuran)<br>▪ Cyclophosphamide (Cytoxan)<br>▪ Cyclosporine (Restasis, Sandimmune, Neoral, Gengraf, Apo-Cyclosporine)<br>▪ Methotrexate (Trexall, Rheeumatrex, Rasuvo, Otrexup)<br>▪ N-acetylcysteine (Mucomyst)<br>▪ Guaifenesin (Mucinex)<br>▪ Oxygen<br>▪ Oral corticosteroids<br>▪ Antibiotics<br>▪ Expectorants | ▪ Bronchoscopy<br>▪ CAT Scan Chest/Thorax (CT)(CT Scan)<br>▪ Chest X-ray (CXR)<br>▪ PET Scan Chest/Thorax<br>▪ MRI Chest<br>▪ Pathology – lung specimens<br>▪ Sputum Cultures<br>▪ Thoracoscopy/ Thoracotomy<br>▪ Video-Assisted Thoracotomy (VAT)<br>▪ Wedge resection of the lung<br>▪ Lung transplantation |
| **Gastroesophageal Reflux** | | ▪ Esomeprazole (Nexium)<br>▪ Famotidine (Pepcid)<br>▪ Lansoprazole (Prevacid)<br>▪ Omeprazole (Prilosec)<br>▪ Pantoprazole (Protonix)<br>▪ Ranitidine (Zantac)<br>▪ Proton pump inhibitors | ▪ Barium Swallow<br>▪ Esophagogastroduodenoscopy (EGD)<br>▪ Laryngopharyngeal Endoscopy<br>▪ Pathology – Esophagus, gastric, duodenum specimens<br>▪ Upper GI Series |
| **Upper Respiratory Disease** | ▪ Rhinitis<br>▪ Sinusitis<br>▪ Rhinosinusitis<br>▪ Tracheitis<br>▪ Laryngotracheitis<br>▪ Laryngitis<br>▪ Nasopharyngitis<br>▪ Pharyngitis | ▪ Azelastine (Astelin, Astepro)<br>▪ Budesonide (Rhinocort)<br>▪ Fluticasone propionate (Flonase)<br>▪ Ipratropium bromide (Atrovent)<br>▪ Mometasone (Nasonex, Asmanex)<br>▪ Oxymetazoline (Afrin)<br>▪ Oral corticosteroids<br>▪ Antibiotics<br>▪ Decongestants | ▪ CAT Scan Head/Sinuses<br>▪ PET Scan sinuses<br>▪ Endoscopy of Nasal and Sinus Cavities<br>▪ Laryngopharyngeal Endoscopy<br>▪ Pathology – Nasal and Sinus specimens<br>▪ Septoplasty<br>▪ Cultures - Nasal, Mastoid, Sputum |
| **Prostate Cancer** | | Erectile Dysfunction:<br>▪ Sildenafil (Viagra)<br>▪ Tadalafil (Cialis)<br><br>Urinary Incontinence:<br>▪ Tamsulosin (Flomax)<br>▪ Oxybutynin (Ditropan XL)<br>▪ Tolterodine (Detrol)<br>▪ Darifenacin (Enablex)<br>▪ Fesoterodine (Toviaz) | ▪ MRI prostate<br>▪ Prostate Biopsy<br>▪ Radical Prostatectomy<br>▪ Radiation Seed Implants<br>▪ External beam radiation<br>▪ Cryotherapy ( also known as cryoabalation, cryosurgery) |

Cited in Setlech v. Interim Special Master Aug E. Flentje
1-25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

| | | | |
|---|---|---|---|
| | | ▪ Solifenacin (Vesicare)<br>▪ Trospium (Sanctura)<br>▪ Mirabegron (Myrbetriq)<br><br>Chemotherapy:<br>▪ Docetaxel(Taxotere)<br>▪ Cabazitaxel(Jevtana)<br>▪ Mitoxantrone(Novantrone)<br>▪ Estramustine (Emcyt)<br><br>Immunotherapy:<br>▪ Pembrolizumab (Keytruda)<br>▪ Provenge vaccine | ▪ Orchiectomy (for hormone suppression)<br>▪ PSA levels (for active surveillance) |

Back to top

## b. Replacement Services Loss

"Replacement services loss" is the value of tasks the victim used to do around the house but now cannot do because of an eligible condition. The tasks that the VCF will count as part of replacement services loss are:

- Indoor chores like cleaning and cooking;
- Grocery shopping;
- Childcare, if the victim was a primary caregiver for the children. See Section 1 below for more information on who qualifies as a primary caregiver;
- Home repairs like roof repair, gutter cleaning, and house painting;
- Auto maintenance like oil changes, repairs, and/or cleaning performed by the victim and not by an automobile repair shop; and
- Outdoor chores like snow removal and lawn mowing.

The above services must have been performed at the victim's primary residence. We will calculate replacement services loss only if the victim lived with at least one other person and that person benefitted from the household tasks the victim performed. We will not compensate for any services the victim performed for people who did not live with the victim.

The requirements for claiming replacement services loss are different depending on what type of claim you filed:

**Deceased Victim Claims**

**How to claim replacement services loss**

To claim replacement services loss, you must complete the Replacement Services section of the claim form, indicating the services the victim performed before they died. In addition, if the victim was a primary caregiver for any children who were under 18 when the victim died, and you have not already submitted the children's birthdates as part of your claim, you must submit a list of the birthdates of all the children who were under 18 when the victim died.

Cited in Setrach v. Interim Special Master Aug E. Flentje 1-25cv02581 Decided 8/11/26 Archived on 8/12/26 This document is protected by copyright. Further reproduction is prohibited without permission.

**Who qualifies as primary caregiver:** For the purposes of a replacement services award, a "primary caregiver" is any adult who is raising a child in a parental capacity. Examples include parents, stepparents, other relatives, and legal guardians. The adult must live in the same home with the child at least some of the time.

**How we will calculate the award**

We will review your claim form responses and decide whether the victim performed the type of household tasks that we will count as part of replacement services loss. If they did, we will then calculate the amount of the award, taking into account the victim's age when they died, and the ages of the children for whom they were a primary caregiver. We will calculate the award using the following three steps:

- First, we will determine the base award amount, using this table (Table 7).

**Table 7**

| Victim's Age at Death | Base Amount |
|---|---|
| Up to 34 | $160,000 |
| 35-39 | $145,000 |
| 40-44 | $130,000 |
| 45-49 | $115,000 |
| 50-54 | $100,000 |
| 55-59 | $85,000 |
| 60-64 | $70,000 |
| 65-69 | $55,000 |
| 70-74 | $40,000 |
| 75-79 | $25,000 |
| 80 and up | $10,000 |

Cited in Setlech v Interim Special Master Aug E. Flentje
1-25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

- Next, we will determine the childcare add-on, using one of the tables below. **Note:** If the victim was a primary caregiver for one or more children with special needs, see section titled "**How we will calculate the replacement services award in claims where the victim took care of a household member with special needs**."

If the victim had **one child** who was under 18 when the victim died (Table 8):

**Table 8**

| Age of Child at time of Victim's Death | Childcare Add-On |
|---|---|
| 0 | $90,000 |

| | |
|---|---|
| 1 | $85,000 |
| 2 | $80,000 |
| 3 | $75,000 |
| 4 | $70,000 |
| 5 | $65,000 |
| 6 | $60,000 |
| 7 | $55,000 |
| 8 | $50,000 |
| 9 | $45,000 |
| 10 | $40,000 |
| 11 | $35,000 |
| 12 | $30,000 |
| 13 | $25,000 |
| 14 | $20,000 |
| 15 | $15,000 |
| 16 | $10,000 |
| 17 | $5,000 |

Cited in Setlechy Interim Special Master Aug E. Flentje
1-25-002581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

If the victim had **two or more** children who were under 18 when the victim died (Table 9):

**Table 9**

| Age of Youngest Child at time of Victim's Death | Childcare Add-On |
|---|---|
| 0 | $117,000 |
| 1 | $110,500 |
| 2 | $104,000 |
| 3 | $97,500 |
| 4 | $91,000 |
| 5 | $84,500 |
| 6 | $78,000 |
| 7 | $71,500 |
| 8 | $65,000 |

| | |
|---|---|
| 9 | $58,500 |
| 10 | $52,000 |
| 11 | $45,500 |
| 12 | $39,000 |
| 13 | $32,500 |
| 14 | $26,000 |
| 15 | $19,500 |
| 16 | $13,000 |
| 17 | $6,500 |

- After we determine the base amount and the childcare add-on, we will add those two numbers together to calculate the total replacement services award.

Cited in Setlech v. Interim Special Master Aug E. Flentje 1-25cv02381 Decided 8/11/26 Archived on 8/12/26
This document is protected by copyright. Further reproduction is prohibited without permission.

**Examples of calculations:**

**Example 1. Victim with no children:** Victim died at age 56 and had no children. The base amount will be $85,000, which is the base amount that corresponds with a victim between the ages of 55 and 59, as shown in Table 7 above. The childcare add-on will be $0 because the victim had no children. The total award will be $85,000, the sum of the base amount and childcare add-on.

**Example 2. Victim with children aged 18 and older:** Victim died at age 56 and had two children, ages 18 and 23. The base amount, childcare add-on, and total award will be the same as in Example 1 above. The childcare add-on remains $0 because neither child was under 18 when the victim died.

**Example 3. Victim with one child under 18:** Victim died at age 56 and had one child, age 17 when the victim died. The base amount will be $85,000, the same as in Example 1. The childcare add-on will be $5,000. This is the add-on that corresponds with childcare add-on for a 17-year-old child, as shown in Table 8 above. The total award will be $90,000, the sum of the base amount and the childcare add-on.

**Example 4. Victim with two children under 18:** Victim died at age 56 and had two children, aged 17 and 13 when the victim died. The base amount will be $85,000, as in Example 1 above. The childcare add-on will be $32,500. This is the add-on that corresponds with the childcare add-on for more than one child with a youngest child aged 13, as shown in Table 9 above. The total award will be $117,500, the sum of the base amount and the childcare add-on.

**Example 5. Victim with three children under 18:** Victim died at age 56 and had three children, ages 13, 15, and 17. The base amount, childcare add-on, and total award will be the same as in Example 4 above.

**Household members with special needs**

If the victim took care of a household member with special needs before the victim died, we may calculate a higher value for the loss of the victim's ability to perform household tasks. A household member with special needs can be anyone who lived with the victim on a permanent basis. By "special needs," we mean that the household member has a physical or mental health condition that causes the household member to need help with daily household activities.

**How to claim compensation for the loss of the victim's ability to care for household members with special needs:**

To claim compensation for the loss of the victim's ability to care for household members with special needs, you must submit all of the following (in addition to completing the Replacement Services section of the claim form):

- A statement describing: (a) the types of tasks the victim performed for the household member before the victim died; and (b) the amount of time the victim spent on those tasks (per week or month); and

  Proof that the household member has a physical or mental condition that causes the household member to need help with daily household activities. You can submit medical records, a disability determination from a government agency, or any other documents that explain the household member's condition(s) and limitations. An Individualized Education Plan (IEP) alone will not be enough to demonstrate special needs for the purposes of a replacement services award.
- A Social Security Administration Consent Form (Exhibit 1 of the Claim Form) for the household member. We will use this form to get information from the SSA about any SSA disability determination your household member might have. We will consider the SSA determination in combination with any other documents you submit.

Cited in Selecky v Interim Special Master Aug E. Flentje
1:25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

**How we will calculate the replacement services award in claims where the victim took care of a household member with special needs:**

We will review the documents you submit and the information we get from the SSA and decide whether there is enough evidence that the victim took care of a household member with special needs, warranting an award higher than what is contemplated by the values listed in Tables 8 and 9 above.

If there is, we will calculate the award using two steps:

1. First, we will determine the base award amount, using Table 7 above.

2. Next, we will award an additional $150,000 for care of each special needs child or adult.

**Personal Injury Claims**

In general, we do not compensate for the loss of ability to perform household services in a personal injury claim, with three exceptions: "household manager" exception, "special needs" exception, and "basic activities of daily living exception."

1. *The first exception ("Household Manager" exception):* If your primary role in the household during your working years (before age 70) was childcare or household tasks, and you can no longer perform those tasks because of an eligible condition, we may make a replacement services award. This exception applies to individuals who spent more of their time on childcare and household tasks than on earning money through employment, during the years when they might otherwise have been working (i.e., before they reached typical retirement age).

**How to claim replacement services loss**

To claim replacement services loss under the first exception, you must submit all of the following (in addition to completing the Replacement Services section of the claim form):

- A statement describing: (a) the types of household tasks you did before your eligible condition began to affect your ability to do those tasks; (b) the amount of time you spent on those tasks (per week or month); (c) the amount of time you are able to spend on those services now (i.e., with the eligible condition(s));
- Medical records that show that the reason you cannot perform the tasks is because of your eligible condition(s); and
- A Social Security Administration Consent Form (Exhibit 1 of the Claim Form). We will use this form to get information from the SSA about any past earnings you may have had from working outside the home.

Cited in Settech, Interim Special Master Aug E. Flentje 1-25cv02501 Decided 8/11/26 Archived on 8/12/26 This document is protected by copyright. Further reproduction is prohibited without permission.

**How we will calculate the replacement services award**

We will review the documents you submit and the information we get from the SSA and decide whether there is enough evidence that (a) your primary role in the household during your working years was childcare or household tasks and (b) your eligible condition(s) permanently interfere with your ability to do those tasks.

If we find that you meet these criteria, we will calculate the amount of your award using the same methodology we use to calculate future lost earnings, as described in Section 2.3 above. We will use the minimum hourly wage applicable to large employers in New York City ($35,360 annually) as your compensable income at the time your eligible condition began to affect your ability to do household tasks.

2. *The second exception ("Special Needs" exception):* If you are unable to care for a special needs household member because of an eligible condition, we may award replacement services. A household member with special needs can be anyone who lived with you on a permanent basis. By "special needs," we mean that the household member has a physical or mental health condition that causes the household member to need help with daily household activities.

**How to claim replacement services loss**

To claim replacement services loss under this second exception, you must submit all of the following (in addition to completing the Replacement Services section of the claim form):

- A statement describing: (a) the types of tasks you used to perform for the special needs child or adult; and (b) the amount of time you spent on those tasks (per week or month).
- Medical records that show that the reason you cannot perform services for a special needs household member is because of your eligible condition.
- Proof that the household member has a physical or mental condition that causes the household member to need help with daily household activities. You can submit be medical records, a disability determination from a government agency, or any other documents that explain the household member's condition(s) and limitations. An Individualized Education Plan (IEP) alone will not be enough to demonstrate special needs for the purposes of a replacement services award.
- A Social Security Administration Consent Form (Exhibit 1 of the Claim Form) **for the household member**. We will use this form to get information from the SSA about any SSA disability determination your household member might have. We will consider the SSA determination in combination with any other documents you submit.

Cited in Setlech v. Interim Special Master Aug E. Flentje
1:25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

**How we will calculate the replacement services award**

We will review the documents you submit and the information we get from the SSA and decide whether there is enough evidence that (a) you took care of a household member with special needs and (b) your eligible condition(s) permanently interferes with your ability to provide care.

If we find that you meet these criteria, then we will award $150,000 for each special needs child or adult.

3. T*he third exception ("Basic Activities of Daily Living" exception):* If your eligible condition(s) interfere with your ability to perform basic activities of daily living, we may award replacement services.

**How to claim replacement services loss**

To claim replacement services loss under this third exception, you must:

- Complete the Replacement Services section of the claim form, indicating the services you used to perform.

- Submit medical records or other documents that show that you need help with basic activities of daily living, such as eating and bathing, and that your eligible condition(s) are the cause.
- If you were a primary caregiver for any children who were under 18 when your eligible conditions began to interfere with your ability to perform basic activities of daily living, submit a list of the birthdates of all the children who were under 18.

**How we will calculate the replacement services award**

We will review your claim form responses and your medical records and decide whether (a) you performed the types of household tasks that we will count as part of replacement services loss and (b) your eligible condition(s) permanently interfere with your ability to perform basic activities of daily living. If you meet these criteria, we will then calculate the amount of the award using Tables 7, 8, and 9 above.

Back to top

### c. Burial or Memorial Service Expenses

The VCF will compensate for documented out-of-pocket burial or memorial expenses for victims who died as a result of an eligible 9/11-related physical injury. You must submit any claim for burial or memorial service costs with the initial claim submission. The VCF will calculate such loss on a case-by-case basis using documentation submitted by the Personal Representative. If any part of these expenses was covered by life insurance or another source, you must provide documentation of that coverage. The VCF will not reimburse expenses that were covered by another entity, and will only reimburse that portion of the expenses that is directly related to the death of the victim or to memorializing his or her passing.

Cited in Settich v. Interim Special Master Aug E. Flentje
1-25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

Back to top

## 2.5 Collateral Source Offsets

The VCF is required by the VCF Act to offset (that is, subtract) from the calculated loss the amount of compensation that you have received, or are entitled to receive, from certain collateral sources as a result of a 9/11-related condition. This includes compensation paid to your dependents or to the beneficiaries of a deceased victim as a result of a 9/11-related condition, such as benefits that the Social Security Administration pays to dependents of a disabled or deceased wage earner. Collateral sources may include life insurance, pension funds, death benefit programs, settlement payments from September 11th-related lawsuits, and payments by federal, state, or local governments related to the terrorist-related aircraft crashes of September 11, 2001, or debris removal in the immediate aftermath. For example, the VCF will deduct from the award the amount that an FDNY victim receives under a WTC disability pension provided that the disability pension is for a 9/11-related condition.

Some categories of offsets apply only to certain categories of loss. See Table 10: Which Offsets Apply to Which Types of Loss. For example, the VCF will deduct from a lost earnings award the amount that an FDNY victim receives under a WTC disability pension provided that the disability pension is for an eligible condition, but will not deduct a disability pension from the non-economic loss award. We urge you (and your attorney, when applicable) to consider the collateral offsets that may be applicable to your claim before submission, and consider submitting a non-economic loss only claim in those cases where your earnings-related offsets are likely to exceed your economic loss. By doing this analysis before submitting your claim, the VCF will be able to more quickly process your claim because we do not need to take the time to calculate the economic loss in order to determine that only non-economic loss can be awarded.

The Special Master will exercise discretion in valuing the appropriate deductions for collateral offsets by determining the following:

- Whether the particular offsets fall within the definition of collateral sources;
- Whether the collateral source compensation is certain or can be computed with sufficient certainty to enable its offset while ensuring that beneficiaries receive the full amount of compensation that is appropriate; and
- The appropriate amount of the compensation that should be offset, taking into account the time value of money and contributions made by the injured victim or decedent in the nature of investment or savings.

Cited in Setlech v. Interim Special Master Aug E. Flentje
1-25cv02381 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

While it is not possible to define in advance every possible collateral source deduction, the following general illustrations should provide guidance:

- The Special Master has the discretion to exclude from consideration life insurance proceeds that are distributed to persons other than the beneficiaries of the VCF award.
- The Special Master has the discretion to adjust the amount of offsets to exclude premiums or assets that were accumulated by the victim through self-contributions paid into a life insurance program to build up a tax-deferred cash value.
- The Special Master may reduce the amount of the offset for a pension to take account of self-contributions to that plan over the injured victim's or decedent's lifetime.
- The collateral source offsets will not include monies or other investments in the injured victim's or decedent's 401(k) accounts.
- The Special Master is required under the VCF Act to offset Social Security survivor and dependent benefits as compensation paid to the surviving spouse or dependents of a disabled or deceased wage earner because of the eligible injury. For this reason, if any spouse or dependent (e.g., a minor or disabled child or an elderly parent) of the deceased victim is receiving these benefits, you must submit a separate Social Security

Administration Consent Form (Exhibit 1 of the Claim Form) for the surviving spouse and/or dependents when submitting the claim. Please do not submit another copy of the Exhibit 1 for the victim. The VCF will then obtain information regarding the benefits directly from the SSA.

- The Special Master is also required under the VCF Act to offset any survivor and death benefits paid by a defined benefit pension system. This includes benefits paid by the New York State and Local Retirement System (NYSLRS). If any spouse or beneficiary of the deceased victim is receiving survivor and/or death benefits from NYSLRS, you must submit a separate Authorization for Release of Pension and Health Information from HIPAA and non-HIPAA entities Form (Exhibit B1 of the Claim Form) for the surviving spouse and/or beneficiary. The VCF will then obtain information regarding these benefits directly from NYSLRS.

**The following are NOT considered collateral offsets:**

- Charitable gifts - the final regulations clarify that benefits from charities (privately-funded charitable entities) disbursing private donations will not be treated as collateral source compensation, even if such charities were created or managed by governmental entities.
- Tax benefits received from the Federal Government as a result of the enactment of the Victims of Terrorism Tax Relief Act of 2001 (Pub. Law No. 107).
- Payments made by the various State Victim of Crime Boards funded with federal funds.
- The cost NIOSH incurs in reimbursing treatment under the WTC Health Program.
- Deferred or vested compensation from employment. Compensation that would have been payable upon retirement or death regardless of when or why the victim retired or died is not payable "as a result of the terrorist-related aircraft crashes of September 11, 2001," and therefore is not collateral source compensation. Thus, if you retired on a disability pension due to an eligible condition, the VCF will only offset that pension to the extent it is greater than the amount you were entitled to receive as a service pension. Likewise, in a wrongful death claim, the VCF will only offset a survivor pension to the extent it is greater than the pension the victim was otherwise entitled to receive.

Cited in Setlech v Interim Special Master Aug E. Flentje
1:25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

### Table 10: Which Offsets Apply to Which Losses

*The Special Master has discretion to determine which offsets should be applied to which losses. It is not possible to define and categorize in advance every possible collateral source deduction.*

| Collateral sources | **Offsets Applied to Personal Injury Losses** *(including losses before death when the victim is deceased)* | | | | **Offsets Applied to Wrongful Death Losses** | | | | **Offsets Applied to the Total Award** **(PI and WD)** |
|---|---|---|---|---|---|---|---|---|---|
| | **Non-economic Loss** | **Medical Expenses** | **Replacement Services** | **Lost Earnings** | **Non-economic Loss** | **Burial Expenses** | **Replacement Services** | **Lost Earnings** | |
| **Lawsuit Settlements** | X | X | X | X | X | X | X | X | X |
| **PSOB or USVSST Awards** *(for Death or Disability)* | X | X | X | X | X | X | X | X | X |
| **Payment on prior PI claim** | X | X | X | X | X | X | X | X | X |
| **Disability Benefits**<br>▪ SSA<br>▪ Workers' Comp<br>▪ Disability pension<br>▪ Private long- or short-term disability insurance<br>▪ Dependent benefits for Claimant's disability | | | | X | | | | | |
| **Life insurance** | | | | | X | X | X | X | |
| **SSA death benefit of $255** | | | | | X | X | X | X | |
| **SSA survivor benefits for dependents** | | | | | | | | X | |
| **Workers' Compensation death benefits** | | | | | | | | X | |
| **Survivor Pension** | | | | | | | | X | |

Cited in Setlech v Interim Special Master Aug E. Flentje
1-25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

Back to top

## a. Collateral offsets that are paid periodically

The Special Master will only offset the present value of collateral source compensation. This has the effect of decreasing offsets and, thus, increasing the amount of VCF awards. As an example, in the case of Social Security children's benefits, the Special Master will determine the monthly benefit to the child, multiply that benefit by the number of months remaining until the child reaches age 18 (taking into account possible limits such as maximum family benefits available), include — if consistent with Social Security guidelines — a factor for inflation, and then discount the total to present value to determine the amount of the offset.

Back to top

## b. Benefits that may be subject to liens

Some Workers' Compensation laws, both domestic and foreign, contain provisions that would allow the insurance carrier to assert a lien against an award issued from the VCF. For those who receive Workers' Compensation benefits from New York State, New York amended its Workers' Compensation statute in 2002 to prohibit insurance carriers from asserting liens against awards from the VCF. Specifically, the NY Workers' Compensation law, Section 29(1-b) provides as follows:

"1-b. Notwithstanding any other provision of this chapter to the contrary, the state insurance fund, if compensation and/or medical benefits be payable therefrom, or otherwise the person, association, corporation, insurance carrier or statutory fund liable for the payment of such compensation and/or medical benefits: (a) shall not have a lien on the proceeds of any award from the September eleventh victim compensation fund of two thousand one established pursuant to title IV of the federal air transportation safety and system stabilization act, public law 107-42, as amended; and (b) shall not terminate or reduce such compensation and/or medical benefits based upon the submission of a claim for an award from such federal fund, and/or the waiver or compromise of any cause of action resulting from such submission."

Cited in Selechy Interim Special Master Aug E. Flentje
125c0281 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

As a result of this amendment, if a victim or family member of a decedent has received, or is entitled to receive, payments from the New York State Workers' Compensation Board related to an eligible condition, in general, the VCF will offset those payments.

Other state Workers' Compensation programs have not enacted similar legislation. Thus, there is a possibility in those states that payments to a victim or family member of a decedent might ultimately be subject to repayment from the VCF award. The VCF will review these benefits on a case-by-case basis. If you know that payments or benefits you have received are subject to a lien, you must notify the VCF. If you do not notify the VCF, we will assume that there are no liens.

Similarly, payments from other government or private entities that are subject to liens may not be offset from the VCF award if sufficient evidence of the lien is submitted. The VCF will evaluate these types of payments on a case-by-case basis.

Back to top

## c. Survivor benefits subject to adjustment or termination

Some survivors may be eligible for benefits or payments from certain programs that provide periodic payments subject to adjustment or termination depending on potential future events. Such payments will be assumed to continue and will be offset unless evidence is submitted that the benefits or payments in fact terminated.

Thus, for example, the Special Master has determined that Workers' Compensation benefits that are payable only if the spouse does not remarry will be offset throughout the period of compensated loss unless evidence is submitted that the spouse in fact remarried and the benefits in fact terminated. Likewise, Social Security and similar benefits payable to a surviving spouse only if the spouse does not remarry or does not earn income above a certain threshold will be offset absent evidence that they have terminated.

Where survivor benefits being paid to a disabled child may continue after age 18 but are subject to evaluation for continuing disability, the Special Master has discretion not to deduct them to extent they cannot be determined with reasonable certainty.

After your award is received, any changes in entitlement to survivor benefits, such as a determination of continuing disability at age 18, should be reported on the "**Collateral Offset Update Form**."

Cited in Setlech v Interim Special Master Aug E. Flentje
1-25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

Back to top

## d. Public Safety Officers' Benefits ("PSOB")

Congress amended the Public Safety Officers' Benefits Act (42 U.S.C. § 3796) to provide that the benefits paid under the Act "shall be in addition to any other benefit that may be due from any other source, except . . . payments under the September 11th Victim Compensation Fund of 2001 . . ." Therefore, if PSOB has paid a benefit to the eligible victim, then the VCF will offset this amount. As shown in Table 10, PSOB benefits are offset against the total award, including non-economic loss, whether they were awarded for death or disability.

If you have applied or plan to apply to PSOB Programs for a September 11th-related injury, you should note the PSOB application in the Collateral Offsets section of the claim form.

The VCF has an arrangement with the PSOB program to exchange information regarding the status of any claim, the amount of any award determination and payment, and the basis of the award determination. It may facilitate the processing of your claim, however, if you submit to the VCF any determination you have received from the PSOB program, or documentation of a payment from the PSOB program, when you submit your claim.

Back to top

## e. WTC Volunteer Fund administered by the New York State Workers' Compensation Board

If an individual is eligible for VCF compensation and is also receiving payments from the WTC Volunteer Fund, the VCF will offset certain payments made by the WTC Volunteer Fund.

While unpaid volunteers are normally ineligible for Workers' Compensation benefits, the New York Workers' Compensation Law was amended to provide a unique exception for certain volunteers who assisted with World Trade Center rescue, recovery, and clean-up efforts. WTC volunteers are eligible to receive benefits through the WTC Volunteer Fund, which is administered by the Workers' Compensation Board. The WTC Volunteer Fund provides medical and indemnity (cash) payments for volunteers who are disabled as a result of their efforts.

The Federal government originally provided funding for this program, but the $50 million congressional appropriation ($25 million in 2002, increased to $50 million in 2005) was exhausted in early 2016. An additional $9 million was provided by the State of New York in 2016. In the event these funds are also exhausted, the NY Workers' Compensation Law now provides that WTC volunteers may receive benefits directly from the Uninsured Employers Fund, which is funded by fines paid by employers who do not comply with insurance coverage requirements.

Cited in Setteducati v Interim Special Master Aug E. Flentje
1:25-cv-02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

Before these legal alterations were made in the program, it was the VCF's policy to offset only those WTC Volunteer Fund payments that a claimant had received as of the date his/her claim was filed because any future payments were considered to be uncertain and contingent on an additional infusion of funds and on the identification of a continuing funding mechanism. Given the statutorily designated backstop through the Uninsured Employers Fund, future funding for the WTC Volunteer Fund is now certain. As a result, and consistent with the statute and regulations governing the VCF, the VCF will offset any indemnity benefits a VCF claimant receives, or is entitled to receive in the future, from the WTC Volunteer Fund for an eligible condition. Claimants receiving benefits through the Workers' Compensation WTC Volunteer Fund should provide the VCF with their Workers' Compensation file number. The VCF may obtain information directly from the WTC Volunteer Fund regarding VCF claimants with WTC Volunteer Fund claims, which will allow the VCF to investigate the basis of any disability benefits, the amount of such

benefits, and any other information that may be relevant to the VCF's computation of loss.

Back to top

### f. Obligation to notify the VCF of additional offsets

If you receive, or become entitled to receive, any additional payment that constitutes a collateral offset at any time after you submit your claim – including after any award has been determined and paid – until the VCF closes on October 1, 2090, you are required to notify the VCF in writing within 90 days by completing and submitting the "**Collateral Offset Update Form**" found under "Forms and Resources" on the VCF website. A significant increase (more than a cost of living adjustment) in the amount of a previously reported collateral offset may constitute an additional payment that should be reported.

Do not use this form if you have had a decrease in a collateral source payment and would like to request that the VCF review your award. To request a review in the case of a decrease in a collateral source payment when the higher payment was used in the calculation of your award, you must file an amendment.

Cited in Sotlech v Interim Special Master Aug E. Flentje
1:25-cv-02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

When determining when to notify the VCF, keep in mind the following general guidelines:

- If you notify the VCF within 90 days of the date you learned that you were entitled to receive a new or revised collateral source payment, your determined or paid award will not be adjusted to reflect the new or revised entitlement or payment.
- If you notify the VCF more than 90 days after the date you learned that you were entitled to receive a new or revised collateral source payment, the VCF may adjust your determined or paid award to reflect the new or revised entitlement or payment as an offset, which may result in a lower award.

The obligation to report collateral source payments is ongoing, until the VCF stops taking claims on October 1, 2090. If you become entitled to receive additional collateral source payments after an initial notification to the VCF, you will need to submit a new form to advise the VCF of this update.

Back to top

## 2.6 Withdrawing an Economic Loss Claim

If you filed a claim for economic loss and have since decided that you do not want the VCF to review your economic loss claim, you may withdraw that portion of your claim at any time by filing an amendment. Follow the instructions on "**How to File an Amendment**" to amend your claim.

When filing your amendment, you must identify the specific type(s) of economic loss claim(s) you are withdrawing: past lost earnings, future lost earnings, replacement services, and/or medical expenses. If you filed a claim for more than one type of economic loss, you may choose to withdraw some or all of your economic loss claims. If you withdraw all of your economic loss claims, the VCF will then review your claim for non-economic loss only.

[1] The regulations provide that the Special Master will identify the spouse of a victim by looking to the victim's Federal tax return. Prior to June 26, 2013, same-sex married couples were prohibited from identifying themselves as married on their Federal tax returns because Section 3 of the Defense of Marriage Act ("DOMA") prohibited the Federal Government from recognizing same-sex marriages. Following the decision of the Supreme Court in *United States v. Windsor,* 133 S. Ct. 2675 (2013) (finding Section 3 of DOMA unconstitutional) and pursuant to Department of Justice policy, all lawful same-sex marriages will be recognized if they were valid in the place where the marriage was celebrated. The Special Master will therefore recognize all same-sex marriages valid in the place where the marriage was celebrated notwithstanding that a victim's Federal tax return filed before June 26, 2013, could not identify a same-sex spouse.

[2] Average combined effective income tax rates by earnings bracket were calculated based on an analysis of IRS data for the most recent tax years available: 2020, 2021, and 2022.

[3] Real life-cycle increases are typically higher in the earlier stages of one's career, one reason being unrealized opportunities for advancement and promotion that individuals in later stages of their careers have already experienced. During the course of an individual's career, the rate of annual real life-cycle growth tends to gradually decline until a peak real earnings level is attained. Although CPS and other data used to study lifetime earnings profiles indicate that peak real earnings typically decline at some point, in calculating life-cycle earnings growth in excess of inflation and overall productivity adjustments for victims, the Special Master has assumed that peak earnings are maintained.

[4] Application of individualized unemployment rates by age or occupation was infeasible and determined to be unnecessary.

[5] For purposes of determining consumption rate and household size, the term "dependent" refers to an individual who was financially supported by the decedent and may include individuals who are not considered when calculating the wrongful death non-economic loss award, as the definition of "dependent" for purposes of awarding additional non-economic loss is more stringent.

[6] Other standard expenditure categories sometimes included in litigation, namely Reading, Cash Contributions, Alcoholic Beverages, and

Cited in Setlech v Interim Special Master Aug E. Flentje
1-25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

Tobacco Products, were excluded.

[7] These alternative techniques included an analysis of BLS data on household expenditures reported by household size, with expenditure categories allocated equally among household members or allocated according to the methodology suggested by authors Robert Patton & David Nelson in their 1991 Journal of Forensic Economics article, "Estimating Personal Consumption Costs in Wrongful Death Cases."

[8] The tax rate used to determine after-tax interest rates is the computed combined Federal, State and local income tax rate of 16.23% for New York for the $70,000 earnings bracket. Although it is recognized that a different after-tax interest rate could theoretically be calculated for each age, income, and state combination, such a computation was impracticable for the large-scale valuations to be undertaken here. It was determined that the benefit to the claimants of calculating the decedent's personal consumption offset as a percent of after-tax individual earnings more than outweighed the potential effect of discounting future amounts by income-specific after-tax discount rates. Moreover, computation of the after-tax discount rate using a relatively high combined New York income tax rate, compared to other states, results in a lower after-tax discount rate. The lower the after-tax discount rate, the higher the present value of presumed economic loss.

[9] The blended discount rates, before tax adjustment, shown in Table 5 imply real interest rates in excess of inflation of 0.9%, 0.7%, and 0.3%, depending on the average time to maturity consistent with the average duration of presumed losses.

Cited in Sellech v Interim Special Master Aug E. Flentje
1:25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.

## September 11th Victim Compensation Fund

VCF Helpline 1-855-885-1555

**Mailing Address:**
September 11th Victim Compensation Fund
P.O. Box 34500
Washington, D.C. 20043

**About The Fund**
**Contact Us**

**Stay Connected with the VCF:**

@Sept11VCF

## Department of Justice Links

Department of Justice Home Page
Legal Policies and Disclaimers
Privacy Policy

Accessibility
Civil Division Home Page
Civil Division Freedom of Information Act

Cited in Setlech v Interim Special Master Aug E. Flentje
1-25cv02581 Decided 8/11/26
Archived on 8/12/26
This document is protected by copyright.
Further reproduction is prohibited without permission.